1  HAROLD A. BARZA (Bar No. 80888)
   halbarza@quinnemanuel.com
2  WILLIAM C. PRICE (Bar No. 108542)
   williamprice@quinnemanuel.com
3  JON STEIGER (Bar No. 229814)
   jonsteiger@quinnemanuel.com
4  ROBERT J. BECHER (Bar No. 193431)
   robertbecher@quinnemanuel.com
5  **QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP**
   865 South Figueroa Street, 10th Floor
6  Los Angeles, California  90017–2543
   Telephone:  (213) 443–3000
7  Facsimile:  (213) 443–3100

8  MATTHEW D. POWERS (Bar No. 104795)
   matthew.powers@weil.com
9  JARED BOBROW (Bar No. 133712)
   jared.bobrow@weil.com
10 JOHN D. BEYNON (Bar No. 233581)
   john.beynon@weil.com
11 **WEIL, GOTSHAL & MANGES LLP**
   201 Redwood Shores Parkway
12 Redwood Shores, California  94065
   Telephone: (650) 802–3000
13 Facsimile: (650) 802–3100

14 Attorneys for Defendants/Counterclaim Plaintiffs
   MICRON TECHNOLOGY, INC., and
15 MICRON SEMICONDUCTOR PRODUCTS,
   INC.

16
                   UNITED STATES DISTRICT COURT
17
                 NORTHERN DISTRICT OF CALIFORNIA
18
                        SAN JOSE DIVISION
19

20 RAMBUS INC.,                          CASE NO. C 06–00244 RMW

21         Plaintiff/Counterclaim
           Defendant,                     **DEFENDANTS' FIRST AMENDED
                                          ANSWER AND COUNTERCLAIMS TO
22    vs.                                 PLAINTIFF'S CORRECTED FIRST
                                          AMENDED COMPLAINT**
23 MICRON TECHNOLOGY, INC., and
   MICRON SEMICONDUCTOR PRODUCTS,         **DEMAND FOR JURY TRIAL**
24 INC.,

25         Defendants/Counterclaim        Hon. Judge Ronald M. Whyte
           Plaintiffs.
26

27

28
                                          Case No. C 06-00244 RMW
                                          DEFENDANTS' FIRST AMENDED
                                          ANSWER AND COUNTERCLAIMS

1    Defendants/Counterclaim Plaintiffs, Micron Technology, Inc. and Micron

2    Semiconductor Products, Inc. (collectively "Micron" or "Defendants"), reply to the Corrected First

3    Amended Complaint ("Amended Complaint") of Plaintiff/Counterclaim Defendant, Rambus Inc.

4    ("Rambus"), by admitting, denying, and alleging as follows:

5                                                    **I.**

6                                                **REPLY**

7                                          **THE PARTIES**

8            1.      On information and belief, Micron admits that Rambus is incorporated

9    under the laws of Delaware with its principal place of business in Los Altos, California.  Except as

10   expressly so admitted, Micron is without sufficient knowledge or information to form a belief as

11   to the truth of the allegations contained in paragraph 1 of Rambus's Amended Complaint and, on

12   that basis, denies them.

13           2.      Micron Technology, Inc. ("Micron Technology") admits that it is a

14   corporation incorporated and existing under the laws of the state of Delaware.  Micron

15   Technology admits that its principal place of business is located at 8000 South Federal Way,

16   Boise, Idaho 83707–0006.  Micron Semiconductor Products, Inc. ("Micron Semiconductor")

17   admits that it is a corporation incorporated and existing under the laws of the state of Idaho.

18   Micron admits that Micron Semiconductor is a wholly owned subsidiary of Micron Technology,

19   and maintains an office at 2125 Onel Drive, San Jose, California 95131.  Micron admits that

20   Crucial Technology is a subsidiary of Micron Semiconductor and maintains an office at 3475 East

21   Commercial Court, Meridian, Idaho 83642.  Micron is without knowledge or information

22   sufficient to form a belief as to the truth of the remaining allegations in paragraph 2 of Rambus's

23   Amended Complaint and, on that basis, denies them.

24           3.      Micron denies the allegations in paragraph 3 of Rambus's Amended

25   Complaint.

26

27

28

**NATURE OF THE ACTION**

4.      Micron admits that Rambus's Amended Complaint purports to allege acts of infringement of United States Patents.  Except as expressly so admitted, Micron denies the allegations in paragraph 4 of Rambus's Amended Complaint.

5.      Micron denies the allegations in paragraph 5 of Rambus's Amended Complaint.

**JURISDICTION AND VENUE**

6.      Micron admits that paragraph 6 of Rambus's Amended Complaint purports to state a claim for patent infringement arising under the laws of the United States including 35 U.S.C. § 271.  Micron admits that this Court has subject matter jurisdiction over the asserted claims in the Amended Complaint arising under the patent laws of the United Sates, pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Except as expressly so admitted, Micron denies the allegations in paragraph 6 of Rambus's Amended Complaint.

7.      Micron does not contest that the Court has personal jurisdiction over it with respect to the matters asserted in Rambus's Amended Complaint.  Except as expressly so admitted, Micron denies the allegations in paragraph 7 of Rambus's Amended Complaint.

8.      Micron does not contest that venue is proper in this District.  Except as expressly so admitted, Micron denies the allegations in paragraph 8 of Rambus's Amended Complaint.

**FACTUAL BACKGROUND**

9.      Micron is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of Rambus's Amended Complaint and, on that basis, denies them.

10.      Micron Technology admits that it makes, uses and/or imports in the United States DDR2 SDRAM (Double Data Rate 2) and RLDRAM II (Reduced Latency DRAM II).  Micron Semiconductor admits that it uses, sells, and/or offers for sale in the United States DDR2 SDRAM, GDDR3 SDRAM (Graphics Double Data Rate 3), and RLDRAM II.  Except as

1  expressly so admitted, Micron denies the allegations in paragraph 10 of Rambus's Amended

2  Complaint.

3          11.     Micron Technology admits that it has made, used and/or imported in the

4  United States DDR2 SDRAM and RLDRAM II.  Micron Semiconductor admits that it has used,

5  sold, and/or offered for sale in the United States DDR2 SDRAM, GDDR3 SDRAM, and

6  RLDRAM II.  Except as expressly so admitted, Micron denies the allegations in paragraph 11 of

7  Rambus's Amended Complaint.

8          12.     Micron admits that U.S. Patent No. 6,182,184 ("the '184 Patent") is entitled

9  "Method of Operating a Memory Device Having a Variable Data Input Length" and states on its

10  face that it issued on January 30, 2001.  Micron also admits that Exhibit A appears to be a copy of

11  the '184 Patent.  Except as expressly so admitted, Micron denies the allegations in paragraph 12 of

12  Rambus's Amended Complaint.

13          13.     Micron admits that U.S. Patent No. 6,260,097 ("the '097 Patent") is entitled

14  "Method and Apparatus for Controlling a Synchronous Memory Device" and states on its face that

15  it issued on July 10, 2001.  Micron also admits that Exhibit B appears to be a copy of the '097

16  Patent.  Except as expressly so admitted, Micron denies the allegations in paragraph 13 of

17  Rambus's Amended Complaint.

18          14.     Micron admits that U.S. Patent No. 6,266,285 ("the '285 Patent") is entitled

19  "Method of Operating a Memory Device Having Write Latency" and states on its face that it

20  issued on July 24, 2001.  Micron also admits that Exhibit C appears to be a copy of the '285

21  Patent.  Except as expressly so admitted, Micron denies the allegations in paragraph 14 of

22  Rambus's Amended Complaint.

23          15.     Micron admits that U.S. Patent No. 6,314,051 ("the '051 Patent") is entitled

24  "Memory Device Having Write Latency" and states on its face that it issued on November 6,

25  2001.  Micron also admits that Exhibit D appears to be a copy of the '051 Patent.  Except as

26  expressly so admitted, Micron denies the allegations in paragraph 15 of Rambus's Amended

27  Complaint.

28

16.     Micron admits the U.S. Patent No. 6,493,789 ("the '789 Patent") is entitled "Memory Device Which Receives Write Masking and Automatic Precharge Information" and states on its face that it issued on December 10, 2002.  Micron also admits that Exhibit E appears to be a copy of the '789 Patent.  Except as expressly so admitted, Micron denies the allegations in paragraph 16 of Rambus's Amended Complaint.

17.     Micron admits that U.S. Patent No. 6,496,897 ("the '897 Patent") is entitled "Semiconductor Memory Device Which Receives Write Masking Information" and states on its face that it issued on December 17, 2002.  Micron also admits that Exhibit F appears to be a copy of the '897 Patent.  Except as expressly so admitted, Micron denies the allegations in paragraph 17 of Rambus's Amended Complaint.

18.     Micron admits that U.S. Patent No. 6,546,446 ("the '6,446 Patent") is entitled "Synchronous Memory Device Having Automatic Precharge" and states on its face that it issued on April 8, 2003.  Micron also admits that Exhibit G appears to be a copy of the '6,446 Patent.  Except as expressly so admitted, Micron denies the allegations in paragraph 18 of Rambus's Amended Complaint.

19.     Micron admits that U.S. Patent No. 6,564,281 ("the '281 Patent") is entitled "Synchronous Memory Device Having Automatic Precharge" and states on its face that it issued on May 13, 2003.  Micron also admits that Exhibit H appears to be a copy of the '281 Patent.  Except as expressly so admitted, Micron denies the allegations in paragraph 19 of Rambus's Amended Complaint.

20.     Micron admits that U.S. Patent No. 6,584,037 ("the '037 Patent") is entitled "Memory Device Which Samples Data After an Amount of Time Transpires" and states on its face that it issued on June 24, 2003.  Micron also admits that Exhibit I appears to be a copy of the '037 Patent.  Except as expressly so admitted, Micron denies the allegations in paragraph 20 of Rambus's Amended Complaint.

21.     Micron admits that U.S. Patent No. 6,697,295 ("the '295 Patent") is entitled "Memory Device Having a Programmable Register" and states on its face that it issued on February 24, 2004.  Micron also admits that Exhibit J appears to be a copy of the '295 Patent.

1  Except as expressly so admitted, Micron denies the allegations in paragraph 21 of Rambus's

2  Amended Complaint.

3          22.     Micron admits that U.S. Patent No. 6,701,446 ("the '1,446 Patent") is

4  entitled "Power Control System for Synchronous Memory Device" and states on its face that it

5  issued on March 2, 2004.  Micron also admits that Exhibit K appears to be a copy of the '1,446

6  Patent.  Except as expressly so admitted, Micron denies the allegations in paragraph 22 of

7  Rambus's Amended Complaint.

8          23.     Micron admits that U.S. Patent No. 6,715,020 ("the '020 Patent") is entitled

9  "Synchronous Integrated Circuit Device" and states on its face that it issued on March 30, 2004.

10 Micron also admits that Exhibit L appears to be a copy of the '020 Patent.  Except as expressly so

11 admitted, Micron denies the allegations in paragraph 23 of Rambus's Amended Complaint.

12         24.     Micron admits that U.S. Patent No. 6,751,696 ("the '696 Patent") is entitled

13 "Memory Device Having a Programmable Register" and states on its face that it issued on

14 June 15, 2004.  Micron also admits that Exhibit M appears to be a copy of the '696 Patent.  Except

15 as expressly so admitted, Micron denies the allegations in paragraph 24 of Rambus's Amended

16 Complaint.

17         25.     Micron admits that U.S. Patent No. 6,807,598 ("the '598 Patent") is entitled

18 "Integrated Circuit Device Having Double Data Rate Capability" and states on its face that it

19 issued on October 19, 2004.  Micron also admits that Exhibit N appears to be a copy of the '598

20 Patent.  Except as expressly so admitted, Micron denies the allegations in paragraph 25 of

21 Rambus's Amended Complaint.

22         26.     Micron denies that Rambus is the owner of the entire right, title, and interest

23 in the '184 Patent, the '097 Patent, the '285 Patent, the '051 Patent, the '6,446 Patent, the '281

24 Patent, the '037 Patent, the '295 Patent, the '020 Patent, the '696 Patent, and the '598 Patent.

25 Micron is without knowledge or information sufficient to form a belief as to whether Rambus is

26 the owner of the entire right, title, and interest in the '789 Patent, the '1,446 Patent, and the '897

27 Patent and, on that basis, denies Rambus's allegation of ownership.  Except as expressly so

28 denied, Micron denies the allegations in paragraph 26 of Rambus's Amended Complaint.

27.    Micron denies the allegations in paragraph 27 of Rambus's Amended Complaint.

28.    Micron denies the allegations in paragraph 28 of Rambus's Amended Complaint.

## COUNT ONE

### MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,182,184

29.    Micron's responses to paragraphs 1–28 above are incorporated by reference and realleged as if fully set forth herein.

30.    Micron denies the allegations in paragraph 30 of Rambus's Amended Complaint.

## COUNT TWO

### MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,260,097

31.    Micron's responses to paragraphs 1–30 above are incorporated by reference and realleged as if fully set forth herein.

32.    Micron denies the allegations in paragraph 32 of Rambus's Amended Complaint.

## COUNT THREE

### MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,266,285

33.    Micron's responses to paragraphs 1–32 above are incorporated by reference and realleged as if fully set forth herein.

34.    Micron denies the allegations in paragraph 34 of Rambus's Amended Complaint.

## COUNT FOUR

### MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,314,051

35.    Micron's responses to paragraphs 1–34 above are incorporated by reference and realleged as if fully set forth herein.

36.    Micron denies the allegations in paragraph 36 of Rambus's Amended Complaint.

1

**COUNT FIVE**

2

**MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,493,789**

3       37.     Micron's responses to paragraphs 1–36 above are incorporated by reference

4   and realleged as if fully set forth herein.

5       38.     Micron denies the allegations in paragraph 38 of Rambus's Amended

6   Complaint.

7

**COUNT SIX**

8

**MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,496,897**

9       39.     Micron's responses to paragraphs 1–38 above are incorporated by reference

10   and realleged as if fully set forth herein.

11       40.     Micron denies the allegations in paragraph 40 of Rambus's Amended

12   Complaint.

13

**COUNT SEVEN**

14

**MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,546,446**

15       41.     Micron's responses to paragraphs 1–40 above are incorporated by reference

16   and realleged as if fully set forth herein.

17       42.     Micron denies the allegations in paragraph 42 of Rambus's Amended

18   Complaint.

19

**COUNT EIGHT**

20

**MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,564,281**

21       43.     Micron's responses to paragraphs 1–42 above are incorporated by reference

22   and realleged as if fully set forth herein.

23       44.     Micron denies the allegations in paragraph 44 of Rambus's Amended

24   Complaint.

25

**COUNT NINE**

26

**MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,584,037**

27       45.     Micron's responses to paragraphs 1–44 above are incorporated by reference

28   and realleged as if fully set forth herein.

1          46.      Micron denies the allegations in paragraph 46 of Rambus's Amended

2   Complaint.

3                          **COUNT TEN**

4          **MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,697,295**

5          47.      Micron's responses to paragraphs 1–46 above are incorporated by reference

6   and realleged as if fully set forth herein.

7          48.      Micron denies the allegations in paragraph 48 of Rambus's Amended

8   Complaint.

9                          **COUNT ELEVEN**

10         **MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,701,446**

11         49.      Micron's responses to paragraphs 1–48 above are incorporated by reference

12  and realleged as if fully set forth herein.

13         50.      Micron denies the allegations in paragraph 50 of Rambus's Amended

14  Complaint.

15                         **COUNT TWELVE**

16         **MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,715,020**

17         51.      Micron's responses to paragraphs 1–50 above are incorporated by reference

18  and realleged as if fully set forth herein.

19         52.      Micron denies the allegations in paragraph 52 of Rambus's Amended

20  Complaint.

21                         **COUNT THIRTEEN**

22         **MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,751,696**

23         53.      Micron's responses to paragraphs 1–52 above are incorporated by reference

24  and realleged as if fully set forth herein.

25         54.      Micron denies the allegations in paragraph 54 of Rambus's Amended

26  Complaint.

27

28

1

**COUNT FOURTEEN**

2

**MICRON'S NON–INFRINGEMENT OF U.S. PATENT NO. 6,807,598**

3

      55.     Micron's responses to paragraphs 1–54 above are incorporated by reference

4

and realleged as if fully set forth herein.

5

      56.     Micron denies the allegations in paragraph 56 of Rambus's Amended

6

Complaint.

7

**II.**

8

**DEFENSES**

9

      57.     Micron asserts the following defenses to Rambus's Amended Complaint:[1]

10

**A.    FIRST DEFENSE:  LACK OF STANDING**

11

      58.     Micron is informed and believes and thereupon alleges that Rambus is not

12

the rightful assignee or the legal owner of certain patents asserted by Rambus against Micron in its

13

Amended Complaint (U.S. Patent Nos. 6,182,184; 6,260,097; 6,266,285; 6,314,051; 6,546,446;

14

6,564,281; 6,584,037; 6,697,295; 6,715,020; 6,751,696; and 6,807,598), and that Rambus

15

therefore lacks standing to assert infringement of any of these patents.

16

**B.    SECOND DEFENSE:  NON–INFRINGEMENT**

17

      59.     Micron has not infringed, directly or indirectly, any valid claims of any of

18

the patents asserted by Rambus against Micron in its Amended Complaint (U.S. Patent

19

Nos. 6,182,184; 6,260,097; 6,266,285; 6,314,051; 6,493,789; 6,496,897; 6,546,446; 6,564,281;

20

6,584,037; 6,697,295; 6,701,446; 6,715,020; 6,751,696; and 6,807,598) (hereinafter "the Patents–

21

in–Suit").

22

**C.    THIRD DEFENSE:  INVALIDITY UNDER SECTIONS 102 AND 103**

23

      60.     Micron is informed and believes and thereupon alleges that each of the

24

Patents–in–Suit is invalid for failure to meet the conditions of patentability set forth in 35 U.S.C.

25

§§ 102 and 103, because the alleged inventions thereof are anticipated by, taught by, suggested by,

26

———————————————

27

    [1]  Micron's assertion of defenses does not constitute an admission or waiver by it concerning the parties' respective burdens of proof and/or persuasion of any element thereof.

28

1   and/or obvious in view of the prior art, and no claim of any of the Patents–in–Suit can be validly

2   construed to cover any Micron product or method.

3   **D.    FOURTH DEFENSE:  INVALIDITY UNDER SECTION 112**

4         61.    Micron is informed and believes and thereupon alleges that the Patents–in–

5   Suit are invalid for failure to comply with 35 U.S.C. § 112.

6   **E.    FIFTH DEFENSE:  INVALIDITY UNDER SECTION 116**

7         62.    Micron is informed and believes and thereupon alleges that each of the

8   Patents–in–Suit is invalid for failure to comply with 35 U.S.C. § 116.

9   **F.    SIXTH DEFENSE:  UNENFORCEABILITY**

10        63.    Micron is informed and believes and thereupon alleges that each of the

11  Patents–in–Suit is unenforceable based on, among other reasons, patent misuse, equitable

12  estoppel, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations

13  of the antitrust, and unfair competition laws.

14  **G.    SEVENTH DEFENSE:  INEQUITABLE CONDUCT**

15        64.    Micron is informed and believes and thereupon alleges that each of the

16  Patents–in–Suit is unenforceable because of Rambus's inequitable conduct before the United

17  States Patent and Trademark Office.  Specifically, Micron contends that the Patents–in–Suit are

18  unenforceable due to inequitable conduct because, prior to the issuance of one or more of the

19  Patents–in–Suit, Paul Michael Farmwald and/or Mark Horowitz, the named inventors of the

20  Patents–in–Suit and/or others substantively involved in prosecuting the applications leading to the

21  Patents–in–Suit (including, without limitation, one or more of the following individuals: Neil

22  Steinberg, Richard Crisp, Allen Roberts, Lester Vincent, and Anthony Diepenbrock) were aware

23  of information material to the patentability of the claims of the Patents–in–Suit, but withheld that

24  information from the U.S. Patent and Trademark Office ("PTO") during prosecution of one or

25  more of the Patents–in–Suit with the intention of deceiving the PTO, and made affirmative

26  representations to the PTO during the prosecution of one or more of the Patents–in–Suit with the

27  intention of deceiving the PTO, including without limitation, (i) failure to cite material prior art

28  patents and publications during the prosecution of one or more of the Patents–in–Suit, each of

1   which is material to the patentability of the claims of the patent in which it was not cited;

2   (ii) failure to disclose information and publications relating to the Scalable Coherent Interface

3   ("SCI"), and follow–on initiatives to SCI called RamLink and Synclink, during the prosecution of

4   one or more of the Rambus Patents–in–Suit; (iii) failure to disclose information relating to work

5   done at, and products developed by, MIPS during prosecution of one of more of the Patents–in–

6   Suit, which is material to the patentability of one or more of the claims in the Rambus Patents; and

7   (iv) misrepresentation, with the intent to deceive the PTO.  The specific prior art patents,

8   publications, and misrepresentations that form the basis of Micron's allegations are set forth below

9   in paragraphs 160 to 176, which are incorporated herein by reference.

10  **H.      EIGHTH DEFENSE:  LICENSE**

11          65.      Micron is licensed to practice the inventions claimed in the '184 Patent, the

12  '097 Patent, the '285 Patent, the '051 Patent, the '6,446 Patent, the '281 Patent, the '037 Patent,

13  the '295 Patent, the '020 Patent, the '696 Patent, and the '598 Patent.

14  **I.      NINTH DEFENSE:  IMPLIED LICENSE**

15          66.      Micron is informed and believes and thereupon alleges that, based upon

16  Rambus's conduct, including but not limited to its conduct at the JEDEC Solid State Technology

17  Association ("JEDEC"), as alleged in Micron's counterclaims, Micron has an implied license to

18  practice the claims of the Patents–in–Suit.

19  **J.      TENTH DEFENSE:  FAILURE TO MARK**

20          67.      Micron is informed and believes and thereupon alleges that Rambus is

21  precluded from recovering, in whole or in part, the damages sought in Rambus's Counterclaims

22  because of its failure to mark, and/or to require its licensees to mark products that practice the

23  Patents–in–Suit as required by 35 U.S.C. § 287.

24  **K.      ELEVENTH DEFENSE:  EXCEPTIONAL CASE OF MISCONDUCT**

25          68.      Micron is informed and believes and thereupon alleges that Rambus's

26  misconduct in procuring, maintaining and defending its patents makes this case exceptional,

27  entitling Micron to an award of attorneys' fees under 35 U.S.C. § 285.

28

**L.      TWELFTH DEFENSE:  LIMITATION ON DAMAGES AND COSTS**

69.      Rambus's claim for relief and prayer for damages are limited by 35 U.S.C. §§ 286, 287.  Rambus's recovery of costs is limited under 35 U.S.C. § 288.

**M.      THIRTEENTH DEFENSE:  EQUITABLE AND PROMISSORY ESTOPPEL**

70.      Rambus is estopped by its misleading, deceptive and/or unlawful conduct during the course of its membership in JEDEC and thereafter from asserting, among others, any of the patents that originate from the 1990 Farmwald application or the October 1995 Ware et al. application, including but not limited to U.S. Patents 6,182,184; 6,260,097; 6,266,285; 6,314,051; 6,493,789; 6,496,897; 6,546,446; 6,564,281; 6,584,037; 6,697,295; 6,715,020; 6,751,696; and/or 6,807,598 against Micron's products, including, without limitation, SDRAM, DDR SDRAM, DDR2 SDRAM, GDDR3 SDRAM, and RLDRAM II and other JEDEC–compliant SDRAM products.

**N.      FOURTEENTH DEFENSE:  WAIVER**

71.      Rambus has waived all rights, if any, to enforce any of the Patents–in–Suit , including those that originate from the 1990 Farmwald application, against Micron's products, including, without limitation, SDRAM, DDR SDRAM, DDR2 SDRAM, GDDR3 SDRAM, and RLDRAM II and other JEDEC–compliant SDRAM products.

**O.      FIFTEENTH DEFENSE:  UNCLEAN HANDS**

72.      Rambus comes into this Court with unclean hands, the facts and circumstances of which are generally described in Micron's Amended Counterclaims below.

**P.      SIXTEENTH DEFENSE:  LACHES**

73.      Rambus's claims are barred by the doctrine of laches.

**Q.      SEVENTEENTH DEFENSE:  COLLATERAL ESTOPPEL**

74.      Rambus is estopped from asserting, in whole or in part, any of the patents in suit against Micron.  Rambus's claims are barred, in whole or in part, because of the collateral estoppel effect of prior judgments or decisions, including without limitation the decisions and/or judgments rendered in:  *Rambus Inc. v. Infineon Technologies A.G., et al.*, U.S. District Court, E.D. Va. Civil Action No. 3:00CV524; *Samsung Electronics Co., Ltd. v. Rambus Inc.*, U.S.

1  District Court, E.D. Va. Civil Action No. 3:05CV406; and *In the Matter of Rambus Inc.*, Federal

2  Trade Commission Docket No. 9302.

3  **R.      EIGHTEENTH DEFENSE:  FAILURE TO STATE A CLAIM**

4          75.      Rambus's Amended Complaint fails to state a claim upon which any relief

5  may be granted against Micron.

6  **S.      NINETEENTH DEFENSE:  FAILURE TO PLEAD COMPULSORY
        COUNTERCLAIM(S)**

7

8          76.      Rambus's claims are barred, in whole or in part, on the grounds that such

   claims should have been brought as compulsory counterclaims in *Micron Technology, Inc. v.*

9  *Rambus, Inc.*, Civ. Action no. 00–792–JJF (D. Del. 2000).

10

11 **T.      TWENTIETH DEFENSE:  FAILURE TO DEMONSTRATE ACTUAL OR
        PROXIMATE CAUSATION OR DAMAGES**

12          77.      Rambus's claims are barred, in whole or in part, on the grounds that

13 Rambus cannot demonstrate actual or proximate causation between Micron's alleged conduct and

14 Rambus's purported injury or damage.

15 **U.      TWENTY–FIRST DEFENSE:  DAMAGES OFFSET**

16          78.      Rambus's claims are barred, in whole or in part, to the extent that Rambus,

17 its agents or affiliates caused Micron to suffer injury or damage.

18              **RESERVATION OF ADDITIONAL DEFENSES**

19          79.      Discovery in this case has not been completed, and Micron continues to

20 investigate the allegations set forth in the Amended Complaint and to ascertain the full extent of

21 Rambus's destruction of evidence and other claims.  Micron specifically gives notice that it

22 intends to rely upon such other defenses as may become available by law, or pursuant to statute, or

23 discovery proceedings in this case, and hereby reserves the right to amend its Answer and assert

24 such defenses.

25 / / /

26 / / /

27 / / /

28 / / /

# III.

# COUNTERCLAIMS

80.     In further response to Rambus's Amended Complaint, Defendants/Counterclaim Plaintiffs Micron Technology, Inc. ("Micron Technology") and Micron Semiconductor Products, Inc. ("Micron Semiconductor") (collectively "Micron") assert the following counterclaims against Plaintiff/Counterclaim Defendant Rambus Inc. ("Rambus") and alleges as follows on the basis of personal knowledge and/or information and belief:

81.     As alleged herein, Rambus has engaged in a multi–faceted strategy to illegally acquire and maintain control over the relevant market(s), as defined below, for dynamic random access memory ("DRAM") interface technology while attempting to coerce enormous royalties from DRAM manufacturers and suppliers of other semiconductor products.

82.     Rambus engaged in at least two specific inter–woven schemes to destroy competition and solidify its monopoly position.

83.     First, Rambus unlawfully and fraudulently subverted the open-industry standards process (*i.e.*, JEDEC) by engaging in a misleading course of conduct calculated to gain and maintain monopolistic control over the relevant market(s).

84.     Second, Rambus engaged in a corrupt scheme to assert its unenforceable patents, to obtain massive royalties from DRAM manufacturers and others.  As part of its scheme, in an effort to eliminate problems with its ability to collect royalties or obtain infringement damages, Rambus conspired to destroy or suppress material evidence and submit false testimony.

85.     By virtue of such conduct, Rambus has caused substantial injury to Micron and to the market as a whole.  In addition, Rambus's unlawful actions should be held to preclude it from asserting patents, issued or pending, that claim priority to an application pending, while Rambus committed these acts, specifically including at least the following patents:  United States Patent Nos. 6,182,184; 6,260,097; 6,266,285; 6,314,051; 6,493,789; 6,496,897; 6,546,446; 6,564,281; 6,584,037; 6,697,295; 6,701,446; 6,715,020; 6,751,696; and 6,807,598 (herein the "Patents–in–Suit").  All of the patents or patent applications implicated by Rambus's misconduct, whether filed or issued in the United States or elsewhere, shall be referred to as "Rambus Patents."

1   Alternatively, Micron is entitled to an implied, royalty–free license to the Rambus Patents as well

2   as any pending or future applications claiming priority through the Rambus Patents.  In addition,

3   the Patents–in–Suit are not infringed, are invalid, and/or are unenforceable.

4   **A.      THE PARTIES**

5            86.      Micron Technology is a corporation incorporated and existing under the

6   laws of Delaware.  Micron Technology's principal place of business is in Boise, Idaho.  Micron

7   Technology is a semiconductor company that, among other things, develops and manufactures

8   computer memory products in the United States and abroad, including DRAM, a common type of

9   computer memory in a variety of different computing and electronics applications.  Micron

10  Semiconductor is a corporation incorporated and existing under the laws of the state of Idaho.

11  Micron Semiconductor is a wholly owned subsidiary of Micron Technology.

12           87.      Micron is one of the world's leading developers of DRAM technology.

13  Micron has invested billions of dollars into the research and development of DRAM products.  As

14  a result of its innovation, Micron Technology has been awarded over 13,000 U.S. patents and has

15  over 5,000 additional patents pending at the U.S. Patent Office.  Micron Technology also has

16  thousands of issued or pending foreign patents.  Micron Technology was one of the top 10

17  recipients of U.S. patents in the world for each of the past six years.

18           88.      Rambus is a corporation incorporated and existing under the laws of

19  Delaware.  Rambus's principal place of business is in Los Altos, California.  Rambus asserts

20  patent rights to certain DRAM interface technology.  Rambus's proprietary DRAM interfaces are

21  generally known as "RDRAM" technology.  Rambus does not manufacture any products itself, but

22  relies on licensing, negotiating, and litigating over its patent portfolio for revenue.  From its

23  founding, Rambus's business plan has been to obtain patents and either (1) extract

24  supracompetitive licensing fees from, or (2) bring suit against, the DRAM manufacturers and

25  producers of related products.  Rambus's improper assertion of patent rights and litigation conduct

26  is and has been a key component of Rambus's business plan and strategy.

27

28

1   **B.     JURISDICTION AND VENUE**

2        89.     This Court has subject matter jurisdiction over Micron's federal antitrust

3   and patent claims pursuant to: 15 U.S.C. §§ 4, 15, 16, and 26; 28 U.S.C. §§ 1337 and 1338; and 28

4   U.S.C. §§ 2201 and 2202.  This Court has supplemental jurisdiction over Micron's state law

5   claims pursuant to 28 U.S.C. § 1367.

6        90.     This Court has personal jurisdiction over Rambus, at least because Rambus

7   filed its claim for patent infringement in this Court, in response to which these counterclaims are

8   filed.

9        91.     Venue properly lies in this Court under 15 U.S.C. § 22 and under 28 U.S.C.

10   §§ 1391, 1392, and 1400.

11   **C.     RAMBUS'S ANTICOMPETITIVE, UNLAWFUL AND UNFAIR CONDUCT**

12        **1.     The Technology**

13        92.     The semiconductor industry comprises firms that manufacture component

14   computer parts, including memory chips, logic chips (such as microprocessors), and devices or

15   systems utilizing such chips.  Those components must be compatible with one another.

16        93.     Memory chips store data.  Logic chips process the data.  One type of logic

17   chip is the microprocessor chip that controls the operation of computers and other systems.

18   Memory chips serve as a "holding place" for data that the microprocessor chips use.  To function,

19   memory chips must interact with the microprocessor.  Interface technology provides the means by

20   which data is transferred between memory chips and logic chips.

21        94.     Memory chips are critical to a broad spectrum of computing devices,

22   including personal computers, workstations, servers, and telecommunications equipment.

23        95.     DRAM is the most widely–used form of memory chip.  The performance of

24   computing systems and microprocessors sold today require the use of a specific subset of DRAM

25   chips known as "high–performance DRAMs."  This category of DRAMs is also sometimes

26   referred to as "high–speed DRAMs" or "high–bandwidth DRAMs."

27        96.     High–performance DRAM interface technology facilitates communication

28   between high–performance DRAM chips and logic chips.  This communication is essential for the

1   retrieval and storage of information in the memory chips.  Without the necessary interface

2   technologies, high–performance DRAMs are not commercially viable.

3          97.     "DRAM interface technology" includes (1) those portions of a DRAM

4   product that dictate how the DRAM physically and electrically attaches to, and interoperates with,

5   complementary products in a computer system (such as memory controllers, chipsets, or

6   microprocessors), (2) those portions of these complementary products that dictate how the

7   complementary products physically and electrically attach to, and interoperate with, the DRAM,

8   and (3) the physical and electrical communication path in between (1) and (2).  The DRAM

9   interface involves only a small fraction of a full DRAM product, whether measured in terms of

10  physical area or technological contribution.

11         98.     There are three principal types of high–performance DRAMs:

12  (1) "synchronous DRAM," or "SDRAM"; (2) "double data rate SDRAM," or "DDR SDRAM"

13  (such as DDR2 SDRAM, GDDR2 SDRAM, GDDR3 SDRAM, RLDRAM II and other DDR

14  standards); and/or (3) RDRAM, which is promoted by, and employs proprietary technology

15  licensed by, Rambus.  In contrast to the proprietary RDRAM, both SDRAM and DDR SDRAM

16  are industry standard devices, conforming to standards established by the JEDEC Solid State

17  Technology Association ("JEDEC"), an open–industry standard–setting organization consisting of

18  DRAM customers, suppliers, and other firms.

19         99.     Various types of DDR DRAM interface technologies are in use today, such

20  as "DDR SDRAM," "DDR2 SDRAM," "GDDR2 SDRAM," "GDDR3 SDRAM," "RLDRAM II"

21  and other DDR standards (collectively referred to herein for convenience as "DDR SDRAM").

22  DDR2 SDRAM and GDDR2 SDRAM and GDDR3 SDRAM technology were all developed by

23  JEDEC.  RLDRAM II is an open standard based upon a JEDEC standardized design.

24         100.    Micron Technology makes, uses, and/or imports in the United States the

25  following DDR SDRAM memory devices that are accused of infringement in this lawsuit:  DDR2

26  SDRAM, and RLDRAM II, GDDR3 SDRAM.  Micron Semiconductor uses, sells, and/or offers

27  for sale in the United States the following DDR SDRAM memory devices that are accused of

28  infringement in this lawsuit:  DDR2 SDRAM, GDDR3 SDRAM, and RLDRAM II.  In addition,

Case No. C 06-00244 RMW
DEFENDANTS' FIRST AMENDED
ANSWER AND COUNTERCLAIMS

1   Micron has licensed RDRAM technology from Rambus and developed one or more RDRAM

2   products based on that technology.

3       **2.      The Relevant Market(s)**

4           101.    DRAM sales in the United States are currently expected to be more than

5   $7.2 billion for this year, and nearly all of these of these sales (more than 95%) are expected to be

6   of high–performance DRAM chips.

7           102.    Because of the need to use DRAM chips that match the performance

8   demands of the latest high–speed microprocessors and that are compatible with those

9   microprocessors, there are currently no commercially viable alternatives to high–performance

10  DRAM chips for most applications.

11          103.    The relevant markets negatively affected by Rambus's anticompetitive

12  misconduct are the markets for interface technologies for high performance DRAMs (either

13  generally or for computer main memory).  The Federal Trade Commission ("FTC") in *In the*

14  *Matter of Rambus Inc.*, Federal Trade Commission Docket No. 9302, found that four such markets

15  had been affected by Rambus's misconduct: (1) the market for latency technology; (2) the market

16  for burst length technology; (3) the market for data acceleration technology; and (4) the market for

17  clock synchronization technology.  A fifth market exists for precharge technologies and was

18  negatively affected by Rambus's misconduct, as the FTC found in its *Opinion on Remedy*.  As an

19  alternative to these markets, another relevant market negatively affected by Rambus's

20  anticompetitive misconduct can be defined as the market for interface technologies for high–

21  performance DRAMs (either generally or for computer main memory).  As another alternative, the

22  relevant markets are the technology markets that are compliant with the adopted standards.

23          104.    The relevant geographic market for these technologies is the world or,

24  alternatively, the United States of America.  The technologies are used worldwide, and relevant

25  industry standards apply to products manufactured around the world.  In the alternative, the

26  relevant geographic market for high–performance DRAM technology is the United States.

27

28

Case No. C 06-00244 RMW
DEFENDANTS' FIRST AMENDED
ANSWER AND COUNTERCLAIMS

### 3.    Rambus's Unlawful and Anticompetitive Efforts to Abuse and Subvert the JEDEC Standard Setting Process

#### (a)    JEDEC and the Development of High–Performance DRAM Standards

105.    In the 1990s, both Micron and Rambus participated in a semiconductor industry association, JEDEC, that was developing industry–wide technical standards for high–performance DRAMs.

106.    JEDEC is an association of semiconductor manufacturers and designers that works to develop industry–wide technical standards for semiconductor products.  JEDEC was formed years before the events at issue here.

107.    In 1991, JEDEC began developing open industry standards for SDRAM devices to ensure that SDRAM devices from different suppliers would be compatible with one another, as well as with the logic chips, such as microprocessors, that use such memory.  The development of these standards was designed to foster competition and technological innovation.  Such standardization allows for interchangeability among SDRAM devices made by the various manufacturers, which, in turn, promotes efficiency and lowers prices.  Eventually, JEDEC developed standards for high–performance DRAMs, including JESD 21–C, for DRAM chips known as "SDRAM," and JESD–79, for "DDR SDRAM."

108.    Rambus was founded in 1990 and in its early years was known principally for developing memory interfaces for use in computer games.

109.    By December 1991, Rambus began attending JEDEC meetings.  In 1992, Rambus officially joined and became a JEDEC member.

110.    All JEDEC members, including those participating on committees establishing standards, were obliged and expected by other members to disclose any knowledge of patents or pending patent applications that might be involved in the work JEDEC was undertaking.  (This disclosure obligation is referred to herein as the "JEDEC Disclosure Policy.")  Holders of such patents or patent applications were further expected to license their patents to all manufacturers as to products made in accordance with the JEDEC standards, either without charge or under reasonable and non–discriminatory terms.  (This licensing obligation is referred to herein

as the "EIA Licensing Policy.")  The JEDEC Disclosure Policy is, and is considered by its members to be, a continuing obligation whereby the members are obliged to disclose any patent or pending patent application that may relate to the work being performed by JEDEC, whenever they become aware of it, including after the adoption of any open standard which may be affected by it. JEDEC members are required and expected by other JEDEC members to carry out their membership and participation in standardization programs in "good faith."

111.    A primary purpose of the JEDEC Disclosure Policy was to prevent any single company from secretly capturing the industry standard and to prevent an unscrupulous member from manipulating the standards–setting process to its advantage.  Collectively, the JEDEC Disclosure Policy and the EIA Licensing Policy serve two important purposes:  (1) they provide the industry an opportunity to develop standards free from potential blocking patents; and (2) they ensure that licenses to patent rights that do exist are offered to members of JEDEC for free or for a reasonable and non–discriminatory royalty.  The JEDEC Disclosure Policy also allows JEDEC and its members to design the industry standard around such potential or actual patent rights if JEDEC members are unable to obtain a license under satisfactory terms.  In fact, the general EIA regulation specifically provides that standardization programs "shall not be proposed or indirectly result in . . . restricting competition, giving a competitive advantage to any manufacturer, excluding competitors from the market . . . except where required to meet one or more of the" enumerated "legitimate public interest" objectives.

112.    When Rambus joined JEDEC, the association's disclosure requirement was well known.  Indeed, it was already the subject of well–publicized litigation between two JEDEC members, Wang Laboratories, Inc. ("Wang") and Mitsubishi.  *See Wang Labs., Inc. v. Mitsubishi Elecs. Am. Inc.*, No. CV 92–4698 JGD (C.D. Cal. 1993).  In that case, Mitsubishi raised equitable estoppel and antitrust claims against Wang, based on Wang's failure to disclose pending patent applications relating to standard–setting work undertaken by JEDEC and Wang's subsequent assertion of resulting patents against products compliant with the standard.  The district court rejected Wang's summary judgment challenge to the equitable estoppel claim, and Mitsubishi eventually prevailed at trial, without the court resolving the antitrust claims.

113.     Shortly after the *Wang* decision, JEDEC forcefully reiterated its policy. The October 1993 JEDEC Manual of Organization and Procedure instructs the Chairperson of any JEDEC committee, sub–committee or working group to:

> [C]all attention to the obligation of all participants to inform the meeting of any knowledge they may have of any patents, or pending patents, that might be involved in the work they are undertaking.

(JEDEC Manual of Organization and Procedure JEP 21–I (Revision of 21–H) October 1993) (emphasis added).  Consistent with the JEDEC Disclosure Policy and the EIA Licensing Policy, JEDEC called for "viewgraphs" to be posted at committee meetings.  The recommended viewgraphs stated:

> Standards that call for use of a patented item or process may not be considered by a JEDEC committee unless all of the relevant technical information covered by the patent or pending patent is known to the committee, subcommittee, or working group.  In addition, the committee Chairperson must have received written notice from the patent holder or applicant that one of the following conditions prevails:
>
> •     A license shall be made available without charge to applicants desiring to utilize the patent for the purpose of implementing the standard(s),
>
> or
>
> •     A license shall be made available to applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination.

(EIA/JEDEC Patent Policy Summary, JEDEC Manual No. 21–I at 23).  Viewgraphs of that nature were regularly posted at JEDEC meetings, including those attended by Rambus.  Rambus was fully aware of the JEDEC Disclosure Policy Requirements as well as the express obligations of good faith and fair dealing set forth in the JEDEC EIA Manual, which states:  "[a]ll EIA standardization programs . . . shall be carried on in good faith under policies and procedures which will assure fairness and unrestricted participation . . . ."

114.     Members of JEDEC benefit in many ways from participation in JEDEC and from the existence of the disclosure obligations imposed on all members.  Rambus benefited directly from its membership in JEDEC, including receiving detailed and timely information about the direction of standards under development and the product plans of JEDEC members.  Rather

-22-

1   than share in the spirit of information and idea exchange, Rambus joined JEDEC as part of a plan

2   to dominate the relevant market(s).

3                    **(b)**      **Rambus's Misleading Conduct to JEDEC and its Members**

4               115.   Rambus's subversive and misleading conduct toward JEDEC, JEDEC

5   members, and Micron falls into three broad categories:  affirmative misrepresentations regarding

6   patents held by Rambus, its planned and pending patent applications, and its underlying intentions

7   regarding such patents and applications; failures to disclose patents and patent applications where

8   overall circumstances demanded the same; and partial disclosures of patents, applications, and

9   intended applications while suppressing material facts regarding patents, applications, and

10  intended applications that Rambus believed would capture the standards adopted by JEDEC.

11              116.   As set forth below, Rambus subverted the open standards process so that it

12  could gain monopoly control over the relevant market(s).  Rambus surreptitiously applied for

13  patents that purported to cover the subject matter of the standards under development.  Rambus

14  did not disclose any knowledge it had of such patents or patent applications.  Instead, Rambus

15  kept its patents and applications secret, while participating in the open standards meetings of the

16  association.  Having participated in the standards–development discussions of JEDEC, Rambus

17  added, amended, and/or revised claims in its patent applications in an attempt to target certain

18  features of the standards then under development which Rambus now contends its patents cover.

19              117.   On April 18, 1990, Rambus filed patent application No. 07/510,898 ("the

20  '898 Application") in the United States Patent and Trademark Office.  From its inception,

21  Rambus's business model was to collect royalties based on its patent portfolio − a portfolio based

22  primarily on patents stemming from its first patent application, the '898 Application.  Rambus

23  filed dozens of applications based on the '898 Application ("the '898 Family"), including

24  international and European patent applications, and it subsequently asserted patent infringement

25  claims based on patents from the '898 Family against Micron and other manufacturers in various

26  jurisdictions in the U.S. and Europe.

27              118.   As early as 1992, Rambus knew and intended that it had patent applications

28  on file that purported to cover features of the standards being discussed in JEDEC.

Case No. C 06-00244 RMW
DEFENDANTS' FIRST AMENDED
ANSWER AND COUNTERCLAIMS

119.     Rambus also specifically and intentionally amended or revised its patent claims in an attempt to cover features being discussed in JEDEC—each time without disclosing such conduct to JEDEC or its members.

120.     Notwithstanding its disclosure obligations as a member of JEDEC and its awareness of those obligations, during the period that Rambus was a JEDEC member it failed to disclose that patent applications it was prosecuting included claims that might be involved in the work of JEDEC, that it intended to read directly on JEDEC standards, and that it intended to read on features proposed for incorporation into the standards.

121.     In addition to its failure to disclose pursuant to JEDEC rules and members' expectations, Rambus also made affirmatively misleading statements and partial disclosures that were intended to induce, and did in fact induce, JEDEC members to believe that Rambus had no claims to the technology reflected in the JEDEC SDRAM and DDR SDRAM standards.  To the contrary, Rambus described these products as competitors and espoused the benefits of "Rambus technology" over them.  Such statements and partial disclosures add a critical layer of misrepresentations to Rambus's violation of JEDEC rules and members' expectations, further inducing Micron and others to believe that Rambus did not have and would not assert intellectual–property claims to SDRAM and DDR SDRAM technology.

122.     For example, during meetings in June and July 1992, members of the JEDEC 42.3 subcommittee, including Rambus, voted on whether the SDRAM standard under consideration should adopt a programmable mode register to set CAS latency and burst length. The ballot asked representatives whether they were aware of relevant patents.  The ballot specifically asked members voting against the proposal to explain their reasons and to address patent issues.  IBM voted against the proposal, and identified a concern about patents as its reason. Rambus, on the other hand, failed to disclose the existence of pending or issued patents, even though it was at the time working on claims relating to mode register, programmable latency, and burst length.  Rambus, like IBM, voted against the proposal.  Unlike IBM, Rambus cited as its reason an affirmative misrepresentation: an inadequate number of power pins.  The FTC cited this

1  failure to disclose in support of its finding that Rambus unlawfully monopolized the relevant

2  market(s).

3        123.    Rambus disclosed its U.S. Patent 5,243,703 ("the '703 Patent") to JEDEC

4  in September 1993.  Since the '703 Patent was unrelated to the issues being considered at the time,

5  Rambus created the impression that it was taking a broad good faith approach to the disclosure

6  rule.  Rambus did not, however, disclose to JEDEC or its individual members any of its pending

7  or planned patent applications.

8        124.    On October 30, 1995, Rambus received from JEDEC a roadmap on the

9  development of JEDEC's next generation of DRAM – DDR SDRAM.  Rambus received a JEDEC

10 Committee Survey Ballot on "Future Synchronous DRAM (SDRAM) Features" which asked

11 committee members the extent of their interest, if any, in certain contemplated improvements to

12 SDRAM.  Among the proposed features were the use of an on–chip PLL or DLL and the use of

13 both edges of the clock.  Rambus made no disclosure of any connection between these features

14 and its patents, its patent application, or its intended patent revisions.  These features were later

15 made a part of the DDR SDRAM standard.  Only after adoption and industry penetration did

16 Rambus disclose that it believes these features to be covered by its patents.

17       125.    Rambus made a deceptive and misleading disclosure on September 11,

18 1995.  In May 1995, Rambus's representative Crisp noted that JEDEC requested "to have us

19 [Rambus] state whether or not Rambus knows of any patents especially ones we have that may

20 read on Synchlink."

21       126.    In response to JEDEC's request, Rambus intentionally misled the

22 organization by narrowing its response and deliberately excluding disclosure of patents that might

23 affect other JEDEC standards.  Thus, Rambus was able to create the impression in the minds of

24 other JEDEC members that it was forthcoming about its patent portfolio, while secretly plotting to

25 establish patent rights over the developing technology.  The FTC held that such conduct was

26 intentionally "evasive" and "misleading" under the circumstances.

27

28

Case No. C 06-00244 RMW
DEFENDANTS' FIRST AMENDED
ANSWER AND COUNTERCLAIMS

127.    In addition, during license negotiations in 1997 between Micron and Rambus, Rambus never once disclosed any connection between its patents or applications and SDRAM or DDR SDRAM.

128.    Although Rambus eventually abandoned the '898 Application, it filed at least one continuation and various divisional applications in 1992, and then filed numerous additional continuation and divisional applications in subsequent years, each claiming the benefit of the April 18, 1990 filing date of the '898 Application.  Some of these subsequent applications specifically targeted features being discussed in JEDEC.  To date, over 56 United States and foreign patents have issued claiming priority to the '898 Application.

129.    On October 19, 1995, Rambus filed patent application No. 08/545,294 ("'294 application") in the United States Patent and Trademark Office.  Subsequent applications claiming priority to this application also targeted features being discussed in JEDEC.

130.    Given its previous disclosures and statements to JEDEC, Rambus misled the members of JEDEC and violated disclosure rules by failing to inform JEDEC and its members of these patent applications.  Rambus did this with the intent to lull and defraud JEDEC and its members into believing that Rambus did not have and would not assert any actual or potential patent rights related to the standards being developed by JEDEC.  This conduct deprived JEDEC of the opportunity to develop standards that would have avoided Rambus's potentially standards–blocking claims.

131.    On May 20, 1996, the FTC issued an antitrust complaint against Dell Computer Corporation ("Dell") based on Dell's failure to disclose patents relating to a standard–setting organization akin to JEDEC.  The FTC simultaneously issued a consent decree and order resolving the matter, which prohibited Dell from enforcing the patents it improperly failed to disclose. *In re Dell Computer Corp.*, 121 F.T.C. 616 (May 20, 1996).  Less than one month after the announcement of the Dell consent order, Rambus announced it was leaving JEDEC.

132.    Rambus made the announcement it was leaving in a letter listing certain issued Rambus patents and stating that "Rambus has also applied for a number of additional patents in order to protect Rambus technology."  The letter failed to disclose any information

1    about Rambus's pending applications claiming priority to the '898 Application.  Rambus

2    specifically failed to disclose a patent which had issued prior to the date of the letter and related to

3    dual edge clock operation, which functionally had been discussed as part of the work undertaken

4    by JEDEC and which became a part of the DDR SDRAM standard.  Rambus intended this partial

5    disclosure to mislead and induce reliance within JEDEC so that it would not design around

6    Rambus's patents.  Rambus also intended this partial disclosure to mislead DRAM manufacturers

7    into believing that continual investment in the SDRAM and DDR SDRAM standards would not

8    face any patent claims.

9          133.    By participating in the JEDEC standards–development process without

10   disclosing its patents, applications, and intended claims relating to features that it now claims its

11   patents cover; by revising its applications and later filing related applications to attempt to make

12   its patent portfolio cover all products manufactured in accordance with the JEDEC standards; and

13   by making misleading partial disclosures regarding these surreptitious revisions and applications,

14   Rambus intentionally misled JEDEC members, who promulgated standards that Rambus now

15   claims are covered by its patents.

16         134.    Rambus's misleading conduct, described above, in fact misled JEDEC

17   members, including Micron, into believing that products compatible with the open JEDEC

18   standards for high–performance DRAMs would not be subject to any undisclosed claim of patent

19   rights by Rambus.

20         135.    Micron and other high–performance DRAM manufacturers relied heavily

21   on Rambus's misleading conduct by continuing to invest in the development of certain JEDEC

22   standards—and the manufacture of products embodying the same—while believing those

23   standards to be open and not subject to a royalty, instead of exploring alternative standards.

24         136.    Instead of offering a royalty–free or other reasonable license when it was

25   expected to do so (i.e. at a time before the JEDEC standards had been developed, while JEDEC

26   could have designed around Rambus's patent rights), Rambus strategically waited until the

27   standards had been adopted and the industry had spent billions of dollars in reliance on the

28   standards before asserting its patents against manufacturers of high–performance DRAMs.  As the

1  FTC found: "Rambus was able to conceal its patents and patent applications until after the

2  standards were adopted and the market was locked in."

3        137.   Rambus's misleading conduct—its affirmative misrepresentations, failures

4  to disclose, and partial representations—prevented the other association members from

5  (1) negotiating reasonable license terms at the time, before Rambus gained the enormous leverage

6  it now claims to have because of the billions of dollars the industry has invested in reliance on

7  Rambus's fraud concerning its patent claims, and/or (2) developing standards that avoided the

8  asserted scope of Rambus's patents.

9        138.   Rambus's misleading conduct in connection with JEDEC, and its

10  subsequent exploitation of the information it learned from JEDEC, has given it monopoly power,

11  or a dangerous probability of obtaining such power, in the relevant market(s). If Rambus's patent

12  assertions are upheld, Rambus will control one or more of the relevant market(s) as defined above.

13        139.   Rambus is pursuing a strategy of demanding exorbitant license fees from all

14  of the world's leading makers of high–performance DRAMs. Rambus has admitted that one

15  purpose of charging discriminatory royalties is to eliminate competitive alternatives to Rambus's

16  RDRAM. If Rambus's strategy is successful, the cost of high–performance DRAMs and the

17  products that use them is likely to increase.

18        140.   Manufacturers of high–performance DRAMs will have no alternative but to

19  license Rambus technologies or risk an injunction that would put them out of business if Rambus's

20  patent assertions are upheld.

21        141.   Had Rambus complied with its disclosure obligations or refrained from its

22  misleading conduct, JEDEC would have had the opportunity and been able to develop alternative

23  high–performance DRAM standards that would have avoided Rambus's patent claims. Upon

24  information and belief, had Rambus then wrongly refused to license its patent rights to the JEDEC

25  members for free or upon reasonable terms acceptable to the members, as it was expected to do, or

26  had Rambus not disclosed the specific terms under which it was willing to license or had those

27  terms been unreasonable, JEDEC would have developed such alternative standards and/or

28  alternative standards would have prevailed.

142.     Instead, as a result of Rambus's illegal scheme described above, Rambus now asserts that it holds patents covering standardized high–performance DRAM technology. Such assertions, if upheld, would allow Rambus to control the relevant market(s).

143.     Rambus's conduct during the relevant period establishes that it was aware of the disclosure policy and expectation, and that it knowingly violated its obligations.

144.     Rambus's anticompetitive behavior constitutes the willful acquisition and maintenance of monopoly power or attempted acquisition of monopoly power, in violation of Section 2 of the Sherman Antitrust Act, making Rambus liable for treble damages and entitling Micron to injunctive relief pursuant to 15 U.S.C. § 16.  Moreover, Rambus has (1) breached its contractual obligations to disclose its relevant patent applications, (2) defrauded Micron and other JEDEC members by its misleading conduct, and (3) engaged in unfair competition, negligent misrepresentation, and conduct warranting application of equitable estoppel.  In addition, during its prosecution of the relevant patent applications, Rambus failed to cite to the United States Patent and Trademark Office information that is and was relevant to the patentability of these applications.

**(c)     Rambus's Anticompetitive Attempts to Utilize Its Asserted Monopoly Power to Control the Relevant Market(s) Through Threats and Intimidation**

145.     If Rambus's patent scheme to establish absolute and exclusive control over technology for high–performance DRAMs is not enjoined, Rambus has and will have achieved monopoly power in the relevant market(s).

146.     Rambus has asserted exclusive patent rights with respect to all existing high–performance DRAMs, including all chips that are manufactured pursuant to the JEDEC standards.  Therefore, even though Rambus does not manufacture or sell any high–performance DRAMs (or any other memory chips), by achieving monopoly control over essential high–performance DRAM interface technology, Rambus has asserted the power to control and exclude entry into the relevant market(s).

147.     Rambus's entire course of conduct has been and is being undertaken with the purpose of controlling and manipulating the relevant market(s) with an anticompetitive intent

Case No. C 06-00244 RMW
DEFENDANTS' FIRST AMENDED
ANSWER AND COUNTERCLAIMS

1   and purpose, including creating a monopoly for Rambus, excluding manufacturers who refuse to

2   pay Rambus royalties and raising the prices of high–performance DRAMs.

3          148.   Rambus has publicly acknowledged its anticompetitive intent.  It has

4   admitted that it intends to charge more for licenses to high–performance DRAM products that it

5   views as threats to its own RDRAM interface technology.

6          149.   In addition to monopolization of the relevant market(s), Rambus's

7   anticompetitive conduct has had and will have adverse effects on products that utilize high–

8   performance DRAMs.  For example, the additional costs incurred by high–performance DRAM

9   manufacturers and sellers may yield higher prices for personal computers and the other products,

10  such as workstations and servers, that utilize those DRAMs.  Rambus's anticompetitive conduct

11  includes attempting to extract higher royalty rates on high–performance DRAMs utilizing the

12  JEDEC standards as a means to induce manufacturers of personal computers and other products to

13  design their products to utilize RDRAMs, rather than alternative, more cost–effective high–

14  performance DRAMs.

15         150.   Rambus has used lawsuits, public statements, negotiations, license

16  demands, and requests for investigations as means of publicizing its assertion that products

17  compatible with the JEDEC standards infringe Rambus's patents.  These lawsuits and requests for

18  investigations are part of Rambus's attempt to control the relevant market(s).

19         151.   Rambus has attempted to (i) coerce essentially non–negotiable licenses

20  bearing exorbitant royalties from all semiconductor memory manufacturers for sales of SDRAMs

21  and DDR SDRAMs, and (ii) file lawsuits against those manufacturers who did not agree to

22  Rambus's non–negotiable license terms.

23         152.   In January and February 2000, Rambus initiated two lawsuits in the District

24  of Delaware against Hitachi Ltd. and Hitachi Semiconductor (America), Inc. (collectively

25  "Hitachi") (the "Hitachi Actions").  In these lawsuits, Rambus alleged that Hitachi's SDRAM and

26  DDR SDRAM high–performance DRAM memory products infringed at least six of the Rambus

27  Patents.  After filing the Hitachi Actions, Rambus publicly asserted that all high–performance

28  DRAM manufacturers are subject to the same allegations as those asserted against Hitachi.

153.     In March 2000, Rambus initiated proceedings before the United States International Trade Commission ("ITC") in which Rambus requested an investigation of the alleged "unlawful importation . . . of articles covered by" Rambus patents.  In the ITC Action, Rambus named Hitachi, Sega Enterprises, Ltd., and Sega of America, Inc. as proposed respondents.  Rambus claimed that the '195 Patent broadly covers any product which incorporates high–performance DRAM interface technology (such as a microprocessor or video game console).  In the complaint that initiated the ITC Action, Rambus stated its intent to investigate yet another semiconductor memory manufacturer (a joint venture between Hitachi and NEC) for possible "involvement with the accused products."

154.     The lawsuits and the press releases and statements issued along with their filing were for the purpose of coercing the defendants in those suits and the other high–performance DRAM manufacturers into capitulating to Rambus's unlawful demands.

155.     Since the filings of the Hitachi Actions and the ITC Action, Rambus has heightened its public campaign against all companies that manufacture memory products utilizing high–performance DRAMs.

156.     For example, Rambus's former CEO, Geoff Tate, has been quoted numerous times as stating that the Rambus Patents are "fundamental" and that most high–performance DRAM manufacturers and their customers "will violate these patents."  Other articles report that Rambus believes the Rambus Patents "entitle it to royalties on virtually all memory products and controllers using a synchronous memory interface."  Additionally, Avo Kanadjian, then a vice president of Rambus, has claimed that the likelihood of any synchronous DRAM product, such as SDRAMs and DDR SDRAMs, incorporating the Rambus patented features is high.  Other reports echo the reality that "Rambus's aggressive strategy stems from its assertion that any Synchronous DRAM manufacturer using technology that either provides or is designed to accept a connection based on Synchronous DRAM technology is crossing into an intellectual–property hot zone."

157.     Upon information and belief, Rambus has engaged in a pattern of conduct in which it has (1) contacted high–performance DRAM manufacturers to schedule meetings under

Case No. C 06-00244 RMW
DEFENDANTS' FIRST AMENDED
ANSWER AND COUNTERCLAIMS

1   the pretense of negotiating licenses under the Rambus Patents, including the Patents–in–Suit,

2   (2) demanded from the manufacturers unreasonable and non–negotiable licenses, (3) set short

3   deadlines for the manufacturers to accept Rambus's non–negotiable licenses, and (4) filed one or

4   more patent infringement lawsuits against the manufacturers when Rambus's "take–it–or–leave–

5   it" licenses were not accepted.

6           158.    Upon information and belief, in 2000 Rambus contacted Infineon

7   Technologies AG and Infineon Technologies North America Corp. (collectively "Infineon") to

8   schedule a meeting under the pretense of negotiating a license agreement with respect to the

9   Rambus Patents, including the Patents–in–Suit.

10          159.    At the time, Infineon was a major manufacturer of SDRAMs and DDR

11  SDRAMs.

12          160.    Upon information and belief, after the initial contact by Rambus, a meeting

13  took place between Infineon and Rambus at which Rambus told Infineon that its SDRAMs and

14  DDR SDRAMs are covered by the Rambus Patents, that Infineon needed a license from Rambus

15  to sell SDRAMs and DDR SDRAMs; and that Rambus's license terms were non–negotiable.

16  Rambus then gave Infineon a short deadline within which to accept or reject Rambus's license

17  terms.

18          161.    Upon information and belief, Infineon did not accept the non–negotiable

19  license terms demanded by Rambus.  Immediately thereafter, Rambus filed an action in the United

20  States District Court for the Eastern District of Virginia (Richmond Division) against Infineon (the

21  "Infineon Action").  In the *Infineon* Action, Rambus alleged that Infineon's sale of SDRAMs and

22  DDR SDRAMs infringes the Rambus Patents.

23          162.    On August 18, 2000, just days after Rambus filed suit against Infineon,

24  Micron's CEO received an e–mail from Rambus requesting a "meeting" in September 2000 to

25  discuss the Rambus Patents.  Based on information and belief, this "notice" is similar to the notice

26  that Rambus sent to Infineon and other high–performance DRAM manufacturers to set up a

27  meeting at which Rambus would present non–negotiable license terms for the Rambus Patents,

28  including the Patents–in–Suit.

163.     Rambus asserted a number of its patents against Micron in the District of Delaware in 2000 based on Micron's sale of SDRAMs and certain DDR SDRAMs.  In addition, shortly after that action commenced, Rambus brought infringement actions against Micron in Germany, Italy, France and the United Kingdom.  These actions reflected Rambus's scheme to exclude competitors from the relevant market(s).  Several Rambus patents have been revoked across Europe.

164.     In further support of this scheme and Rambus's improper motive, Rambus developed and then carried out a plan to destroy evidence as a precursor to implementing its litigation strategy.  Rambus intentionally destroyed a massive amount of relevant and/or potentially relevant information contained in millions of pages of documents and electronic storage, including e–mail both when it was anticipating litigation and when it was actually involved in litigation.  Rambus even went so far as to instruct its outside counsel to sanitize their files of discoverable material, and its outside counsel obliged.

165.     On January 25, 2005, Rambus sued Hynix, Samsung, Nanya, and Inotera, alleging infringement by certain DDR2 SDRAM and GDDR3 SDRAM devices.

166.     On January 13, 2006, Rambus filed its Complaint for Patent Infringement against Micron in this action, accusing certain DDR2 SDRAM, GDDR3 SDRAM, and RLDRAM II products.

167.     Upon information and belief, Rambus perceives Micron to be a high–performance DRAM manufacturer that poses a significant competitive, business, and/or financial threat to Rambus.  Micron makes and sells a variety of DDR SDRAM memory products.  Rambus has indicated that it viewed DDR SDRAMs as a competitive threat to its RDRAM interface technology.  Rambus has stated that it would not dispute that it had sought to charge higher royalties for DDR SDRAMs to head off a potential rival to RDRAM.

168.     Micron continues to make, use, sell, and/or offer for sale DDR SDRAMs including DDR2 SDRAM.  Rambus contends that DDR SDRAMs are covered by the Rambus Patents.

**(d)    The Effects of Rambus's Unlawful and Anticompetitive Efforts to Abuse the JEDEC Standard Setting Process and Mislead its Members**

169.    If Rambus is correct that its patents are required to produce SDRAMs and DDR SDRAMs, high–performance DRAM manufacturers must now license Rambus's patents or be driven from the relevant market(s).  There currently are no viable alternatives available in the market over which Rambus does not assert control through its patents.  If Rambus's patents are valid and enforceable and have the scope Rambus asserts, Rambus will have the complete ability to exclude any chipmaker from producing any current high–performance DRAMs.

170.    Rambus's misconduct has caused injury to Micron, and Micron will continue to be injured in the future if the relief requested herein is not granted.  Micron's injuries include incurring costs in developing and promoting technology that is subject to claims by Rambus which Micron reasonably believed would be free of such claims and incurring research and development costs in investigating designs to avoid any patent claims of Rambus in amounts far greater than would have been incurred had Rambus made the disclosures it was required to make from the beginning.  Micron has also suffered harm because it has been forced to incur legal fees and investigation costs in order to respond to the numerous efforts to enforce the Rambus Patents and/or Patents–in–Suit, including but not limited to responding to demands, negotiations, and litigating the actions.

171.    On information and belief, Micron also has suffered harm due to reduced DRAM sales, lower prices, and/or lower margins due to Rambus's conduct in the relevant market(s) and/or allegations that its SDRAM and DDR SDRAM products infringe Rambus's patents.

172.    Rambus's conduct threatens to thwart the development of any non–Rambus standard.  Rambus's anticompetitive actions threaten to suppress industry acceptance of anything but Rambus's proprietary technology.  The uncertainty created by Rambus over alternatives to its own technology poses the potential for raising the costs of rival standards and reducing the likelihood that those standards will be adopted.

173.     Rambus's abuse of the JEDEC standards–setting process harms competition by discouraging participation in industry standards–setting procedures that otherwise would foster competition.  Competition results in lower costs.  Competition would lower the cost of manufacturing and selling high–performance DRAMs, allowing manufacturers to engage in fair and aggressive competition based on the merits of their technologies.  If Rambus's patent assertions are successful, Rambus will have succeeded in converting the JEDEC standards–setting process from a pro–competitive process to one that will serve anticompetitive ends.

174.     If Rambus's patent rights cover JEDEC's SDRAM and DDR SDRAM standards, Rambus's subversion of the industry standards–setting process will result in higher costs to high–performance DRAM manufacturers, and ultimately higher prices to consumers.

175.     The injuries described above are injuries of the type that the antitrust laws were designed to prevent.

176.     Micron is one of the companies that has been targeted by Rambus's exclusionary conduct.

**4.     Rambus's Inequitable Conduct and Fraud On the PTO**

177.     In addition to Rambus's unlawful and anticompetitive schemes involving the private–sector and standardization processes set forth above, Rambus also perpetrated a systematic fraud on the U.S. Patent and Trademark Office ("PTO").  On information and belief, prior to the issuance of the Patents–in–Suit, the named inventors of the Patents–in–Suit and/or others substantively involved in prosecuting the applications leading to the Patents–in–Suit were aware of information material to the patentability of the claims of the Patents–in–Suit, but withheld that information from the PTO with the intention of deceiving the PTO, and made affirmative representations to the PTO during the prosecution of the Rambus Patents–in–Suit, or patents related to the Rambus Patents–in–Suit, with the intention of deceiving the PTO, including without limitation, the conduct described below.

**(a)     Failure to Cite Material Prior Art Patents and Publications**

178.     Rambus failed to disclose U.S. Patent Nos. 5,361,277 ("the '277 Grover Patent") (filed March 30, 1989, foreign application priority date April 27, 1988) during the

1   prosecution of the Rambus '789, '897, and '1,446 Patents.  On information and belief, the '277

2   Grover Patent is material to the patentability of one or more of the Rambus '789 Patent, '897

3   Patent, and '1,446 Patent, was known to the named inventors, and/or those substantively involved

4   in the prosecution of the Rambus '789 Patent, '897 Patent, and '1,446 Patent, prior to the issuance

5   of those patents, and was withheld from the PTO with intent to deceive the PTO.  The '277 Grover

6   Patent was not cited during the prosecution of the Rambus '789 Patent, '897 Patent, and '1,446

7   Patent, but was cited during the prosecution of other Rambus patents, including those issued to the

8   named inventors, before the issuance of the Rambus '789 Patent, '897 Patent, and '1,446 Patent.

9          179.    Rambus failed to disclose U.S. Patent No. 5,140,688 ("the '688 White

10   Patent") (filed January 3, 1989, continuation of Ser. No. 929,690, filed November 10, 1986)

11   during the prosecution of the Rambus '789 Patent, '897 Patent, and '1,446 Patent.  On information

12   and belief, the '688 White Patent is material to the patentability of one or more of the Rambus's

13   '789 Patent, '897 Patent, and '1,446 Patent, was known to the named inventors, and/or those

14   substantively involved in the prosecution of the Rambus '789 Patent, '897 Patent, and '1,446

15   Patent, prior to the issuance of those patents, and was withheld from the PTO with intent to

16   deceive the PTO.  The '688 White Patent was not cited during the prosecution of the Rambus '789

17   Patent, '897 Patent, or '1,446 Patent, but was cited by Rambus during the prosecution of other

18   patents, including patents issued to the named inventors, before the issuance of the '789 Patent,

19   '897 Patent, and '446 Patent.

20          180.    Rambus failed to disclose U.S. Patent No. 4,998,262 ("the '262 Wiggers

21   Patent") (filed October 10, 1989) during the prosecution of the Rambus '789 Patent, '897 Patent,

22   and '1,446 Patent.  On information and belief, the '262 Wiggers Patent is material to the

23   patentability of one or more of the Rambus '789 Patent, '897 Patent, and '1,446 Patent, was

24   known to the named inventors, and/or those substantively involved in the prosecution of the

25   Rambus '789 Patent, '897 Patent, and '1,446 Patent, prior to the issuance of those patents, and was

26   withheld from the PTO with intent to deceive the PTO.  The '262 Patent was not cited during the

27   prosecution of the Rambus '789 Patent, '897 Patent, or '1,446 Patent, but was cited by Rambus

28

1    during the prosecution of other patents, including patents issued to the named inventors, before the

2    issuance of the '789 Patent, '897 Patent, and '1,446 Patent.

3            181.    Rambus failed to disclose U.S. Patent No. 5,021,985 ("the '985 Hu Patent")

4    during the prosecution of the Rambus '184 Patent, '097 Patent, '285 Patent, '051 Patent, '789

5    Patent, '897 Patent, '281 Patent, '037 Patent, '6,446 Patent, '1,446 Patent, and '020 Patent.  On

6    information and belief, the '985 Hu Patent is material to the patentability of one or more of the

7    Rambus '184 Patent, '097 Patent, '285 Patent, '051 Patent, '789 Patent, '897 Patent, '281 Patent,

8    '037 Patent, '6,446 Patent, '1,446 Patent, and '020 Patent, was known to those substantively

9    involved in the prosecution of the Rambus '184 Patent, '097 Patent, '285 Patent, '051 Patent, '789

10   Patent, '897 Patent, '281 Patent, '037 Patent, '6,446 Patent, '1,446 Patent, and '020 Patent prior to

11   the issuance of those patents, and was withheld from the PTO with intent to deceive the PTO.  The

12   '985 Hu Patent was not cited during the prosecution of the Rambus '184, '097 Patent, '285 Patent,

13   '051 Patent, '789 Patent, '897 Patent, '281 Patent, '037 Patent, '6,446 Patent, '1,446 Patent, or

14   '020 Patent.  The '985 Hu Patent was cited in U.S. Patent No. 5,838,990, assigned to Samsung

15   Electronics Co., Ltd., which issued on November 17, 1998, and on which Neil A. Steinberg is

16   listed as the responsible prosecuting attorney.  Mr. Steinberg was substantively involved in the

17   prosecution of the Rambus Patents–in–Suit.

18           182.    Rambus failed to disclose Mark Johnson et al., A Variable Delay Line PLL

19   for CPU–Coprocessor Synchronization, IEEE J. Solid State Circuits, Vol. 22, No. 5, Oct. 1988

20   ("Johnson et al."), during prosecution of each of the Rambus Patents–in–Suit.  On information and

21   belief, Johnson et al. is material to the patentability of the Rambus Patents–in–Suit, was known to

22   the named inventors, and/or those substantively involved in the Rambus Patents–in–Suit, prior to

23   the issuance of those patents, and was withheld from the PTO with intent to deceive the PTO.  The

24   issue of the IEEE Journal of Solid State Circuits in which Johnson et al. was published was co–

25   guest–edited by Mark Horowitz.  Mr. Horowitz and his co–guest editor wrote a forward to the

26   issue, describing each of the articles in the issue, including Johnson et al.  Johnson et al. was also

27   cited by Rambus in other pending patent applications prior to the issuance of one or more of the

28   Patents–in–Suit.

183.     Rambus failed to disclose D.K. Morgan, "the CVAX CMCTL – A CMOS Memory Controller Chip.," Digital Technical Journal, No. 7, August 1988, pp. 139–143 ("the Morgan reference") during prosecution of the '295 Patent, '020 Patent, and '696 Patent.  On information and belief, the Morgan reference is material to the patentability of one or more of the Rambus Patents–in–Suit, was known to the named inventors, and/or those substantively involved in the Rambus Patents–in–Suit, prior to the issuance of those patents, and was withheld from the PTO with intent to deceive the PTO.  The Morgan reference and a detailed discussion of its materiality was submitted to Rambus and the European Patent Office ("EPO"), in relation to an infringement suit brought by Rambus in September 2000 asserting European Patent No. 0 525 068 ("the EU '068 Patent").  The EU '068 patent claimed priority to the '898 Application and shares substantially the same specification and drawings.  The '295 Patent, '020 Patent, and '696 Patent also derive priority from the '898 Application.

184.     On November 6, 2003, the EPO issued a summons to Micron, Infineon and Hynix to attend oral proceedings regarding their appeal of the EPO's decision upholding the validity of the EU '068 Patent.  Additionally, the parties were served with an "Annex to the summons to attend oral proceedings," stating the EPO's preliminary view that the Morgan reference was considered to be highly material to the claims of the EU '068 Patent.  At a hearing before the EPO Technical Board of Appeals on February 11–12, 2004, Rambus representatives attended and argued on behalf of the validity of the EU '068 Patent.  At the conclusion of the hearing the EPO Technical Board of Appeals revoked the EU '068 Patent.  On May 13, 2004 the EPO Technical Board of Appeals issued a written opinion that the claims of the EU '068 patent were invalid in light of the Morgan reference.

185.     Rambus failed to disclose U.S. Patent No. 4,480,307 ("the '307 Budde Patent") during the prosecution of the Rambus '037 Patent, '295 Patent, '020 Patent, and '696 Patent.  On information and belief, the '307 Budde Patent is material to the patentability of one or more of the Rambus '037 Patent, '295 Patent, '020 Patent, and '696 Patent, was known to the named inventors, and/or those substantively involved in the prosecution of the Rambus '037 Patent, '295 Patent, '020 Patent, and '696 Patent, prior to the issuance of those patents, and was

-38-

1  withheld from the PTO with intent to deceive the PTO.  The '307 Budde Patent was not cited

2  during the prosecution of the Rambus '037 Patent, '295 Patent, '020 Patent, or '696  Patent.  As

3  part of a related litigation, the '307 Budde Patent was produced to Rambus by Hynix on or about

4  February 22, 2003, along with an explanation of why the '307 Budde Patent invalidated claims of

5  certain patents which claim priority to the '898 Application.  The '037 Patent, '295 Patent, '020

6  Patent, and '696 Patent also claim priority to the '898 Application and share the same

7  specification and drawings.  Upon information and belief, a more detailed explanation of the

8  relevance of the '307 Budde Patent to the related patents claiming priority to the '898 patent was

9  given to Rambus at least by July 14, 2003.  Further, on or about March 6, 2003, the '307 Budde

10 Patent was submitted to Rambus and the German Patent and Trademark Office as part of

11 proceeding seeking cancellation of German Utility Model Gbm 91 17 296, which has the same

12 disclosure as EU '068 and the '898 Application.

13         186.    Rambus failed to disclose the "Intel iAPX432 Interconnect Architecture

14 Reference Manual," published December 1982 (No. 172487–001), "Electrical Specifications for

15 iAPX 43204 Bus–Interface Unit (BIU) And iAPZ 43205 Memory Control Unit," published

16 December 1982 (No. 172867–001), "Intel iAPX 43203 VLSI Interface Processor Data Sheet,"

17 Rev. A 1981 (No. 171874–001), and "Intel iAPX 43201 VLSI General Data Processor Data

18 Sheet," Rev. A 1981 (No. 171873–001), collectively the "iAPX references."  On information and

19 belief, the iAPX references were material to the patentability of the '295, '020, and '696 Patents,

20 were known to the named inventors, and/or those substantively involved in the Rambus Patents,

21 prior to the issuance of those patents, and were withheld from the PTO with intent to deceive the

22 PTO.  Upon information and belief, the iAPX references were produced to Rambus by Hynix on

23 or about February 22, 2003, as part of a related litigation.  Upon information and belief, a more

24 detailed explanation of the relevance of the '307 Budde Patent to the related patents claiming

25 priority to the '898 patent was given to Rambus at least by July 14, 2003.

26         187.    Rambus failed to disclose U.S. Patent No. 5,251,178 ("the '178 Childers

27 Patent") during the prosecution of the '1,446 Patent.  On information and belief, the '178 Childers

28 Patent is material to the patentability of the '1,446 Patent, was known to the named inventors,

1  and/or those substantively involved in the prosecution of the '1,446 Patent, prior to the issuance of

2  that patent, and was withheld from the PTO with intent to deceive the PTO.

3          188.    Rambus failed to disclose either Japanese Patent publication JP 09 034580

4  ("the JP '580 Patent"), published February 2, 1997, or the corresponding U.S. Patent

5  No. 5,768,213 ("the '213 Jung Patent") during the prosecution of the '1,446 Patent.  On

6  information and belief, the JP '580 Patent and the '213 Jung Patent are material to the patentability

7  of the '1,446 Patent, was known to the named inventors, and/or those substantively involved in the

8  prosecution of the '1,446 Patent, prior to the issuance of that patent, and was withheld from the

9  PTO with intent to deceive the PTO.  Upon information and belief, on or about October 9, 1998,

10  Rambus filed an application for a patent under the terms of the Patent Cooperation Treaty, which

11  was published as WO 99/19874.  The application claimed priority to U.S. Patent Application

12  No. 60/061664, filed on October 10, 1997.  The '1,446 Patent also claims priority to U.S. Patent

13  Application No. 60/061664.  Upon information and belief, an International Search Report

14  regarding the patentability of WO 99/19874 was issued on May 15, 1999 ("the PCT Report").

15  The PCT Report cited the JP '580 Patent as being "of particular interest," noting that upon

16  combination of the JP '580 Patent with other cited references, "the claimed invention cannot be

17  considered to involve an inventive step."  The report also cited the corresponding '213 Jung

18  Patent.  During the prosecution of an intervening patent, U.S. Patent No. 6,263,448, the PCT

19  Report and an abstract of the JP '580 Patent were cited.  But neither the full JP '580 Patent nor the

20  '213 Jung Patent were disclosed to the Patent Examiner during the prosecution of the '1,446

21  Patent.

22          **(b)**      **Failure to Disclose Information Relating to SCI**

23          189.    Rambus failed to disclose information and publications relating to the

24  Scalable Coherent Interface ("SCI") during the prosecution of a number of the Rambus Patents–

25  in–Suit.  On information and belief, SCI is material to the patentability of the Rambus Patents–in–

26  Suit, was known to the named inventors and/or those substantively involved in the prosecution of

27  the Rambus Patents–in–Suit, and was withheld from the PTO with intent to deceive the PTO.  The

28  named inventors of the Rambus Patents–in–Suit were both on the SCI mailing list when SCI

publications material to the patentability of the Rambus Patents–in–Suit were distributed to those on the mailing list, received by those individuals, and, on information and belief, were aware of those SCI publications and their contents, including, without limitation, the following:

- David B. Gustavson et al., The Scalable Coherent Interface Project (Superbus), Aug. 22, 1988;

- David B. Gustavson, Scalable Coherent Interface, Nov. 1988;

- Knut Alnes, SCI: A Proposal For SCI Operation, Nov. 1988;

- Knut Alnes, SCI: A Proposal For SCI Operation, Jan. 1989;

- Bjorn O. Bakka et al., SCI: Logical Level Proposals, Jan. 1989.

- Ernst H. Kristiansen et al., Scalable Coherent Interface, Feb. 1989;

- Morten Schanke, Proposal For Clock Distribution in SCI, May 1989;

- Ernst H. Kristiansen et al., Scalable Coherent Interface, Eurobus, London, Sept. 1989; and

- Richard A. Volz et al., Position Paper on Global Clock For the FutureBus, 1989.

190.    On information and belief, the named inventors and/or others substantively involved in the prosecution of the Rambus Patents–in–Suit were aware of SCI, and SCI follow–on initiatives called RamLink and Synclink, before the issuance of the Rambus Patents–in–Suit as a result of their professional and publishing activities.  For example, Michael Farmwald published an article entitled, "A Fast Path To One Memory," in a Special Report on Memory in the October 1992 issue of IEEE Spectrum magazine.  An article entitled, "A RAM Link for High Speed," by Gjessing et al. that described the SCI and RamLink projects was published immediately following Mr. Farmwald's article in the same IEEE Spectrum Special Report.  Mr. Horowitz published several articles specifically referencing SCI and RamLink, including: Daniel Lenoski et al., "Design of the Stanford DASH Multiprocessor," Stanford Computer Systems Laboratory Technical Report No. CSL–TR–89–403, Dec. 1989, at 20; and Daniel Lenoski et al., "The Stanford Dash Multiprocessor," Computer, vol. 25, no. 3, p. 63–79, IEEE Computer Society, Mar. 1992, at 77–78.

1        **(c)      Failure to Disclose Information Regarding MIPS**

2        191.     Recently–discovered evidence demonstrates, for example, that Rambus is

3    not the rightful owner of the '898 Family.  Although Rambus and others listed above submitted

4    false testimony and sought to suppress material evidence about the ownership of the '898 Family,

5    evidence now demonstrates that Rambus's lead inventor and co–founder P. Michael Farmwald

6    ("Farmwald") had previously assigned the '898 Family and other inventions, pursuant to one or

7    more employee assignment agreements, to a prior employer:  MIPS Computer Systems, Inc.

8    ("MIPS").

9        192.     Rambus failed to disclose information relating to work done at, and

10   products developed by, MIPS prior to the conception of one or more of the inventions claimed in

11   the Rambus Patents–in–Suit, including work done by the named inventors themselves and others

12   who worked with them at MIPS and subsequently were employed by Rambus.  On information

13   and belief, prior to the issuance of the Patents–in–Suit, the named inventors and/or others

14   substantively involved in the prosecution of the Patents–in–Suit were aware, through their work at

15   and for MIPS, of MIPS developments and products that are material to the patentability of the

16   Patents–in–Suit, including, without limitation, the R2000, R2010, R3000, R3010, R4000, and

17   R6000 CPUs and FPUs, the R6020 System Bus Chip, and the RC6280 System.  On information

18   and belief, Michael Farmwald was employed at MIPS, and Mark Horowitz consulted for MIPS,

19   with respect to one or more of the above–referenced products prior to the April 18, 1990, filing

20   date of the '898 Application from which the Rambus Patents–in–Suit claim priority.  On

21   information and belief, the named inventors of the Patents–in–Suit, and/or others substantively

22   involved in the prosecution of the Patents–in–Suit, withheld information regarding these MIPS

23   products from the PTO with the intention of deceiving the PTO.

24       **(d)      Misrepresentations Regarding the Hoff and NuBus References**

25       193.     The named inventors and/or those substantively involved in the prosecution

26   of the Rambus Patents–in–Suit misrepresented the prior art in applications for the Rambus

27   Patents–in–Suit and in applications related to those patents.  These misrepresentations were made

28

with intent to deceive the PTO.  Without limitation, they include the characterization of U.S.

Patent No. 3,821,715 (Hoff et al.) and the NuBus as point–to–point systems.

## COUNT I

### (Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '184 Patent)

194.     Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

195.     Rambus has sued Micron for alleged infringement of the '184 Patent.

196.     The claims of the '184 Patent are not infringed by Micron, are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '184 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

197.     Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '184 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

198.     Micron seeks a declaration that the '184 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

## COUNT II

### (Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '097 Patent)

199.     Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

200.     Rambus has sued Micron for alleged infringement of the '097 Patent.

201.     The claims of the '097 Patent are not infringed by Micron, are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '097 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches,

laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

202.     Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '097 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

203.     Micron seeks a declaration that the '097 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

## COUNT III

### (Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '285 Patent)

204.     Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

205.     Rambus has sued Micron for alleged infringement of the '285 Patent.

206.     The claims of the '285 Patent are not infringed by Micron; are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '285 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

207.     Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '285 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

Micron seeks a declaration that the '285 Patent is not infringed by Micron, is invalid, and/or is unenforceable./ / /

/ / /

/ / /

/ / /

/ / /

**COUNT IV**

**(Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '051 Patent)**

208. Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

209. Rambus has sued Micron for alleged infringement of the '051 Patent.

210. The claims of the '051 Patent are not infringed by Micron; are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '051 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

211. Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '051 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

212. Micron seeks a declaration that the '051 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

**COUNT V**

**(Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '789 Patent)**

213. Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

214. Rambus has sued Micron for alleged infringement of the '789 Patent.

215. The claims of the '789 Patent are not infringed by Micron; are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '789 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

216.    Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '789 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

217.    Micron seeks a declaration that the '789 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

## COUNT VI

**(Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '897 Patent)**

218.    Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

219.    Rambus has sued Micron for alleged infringement of the '897 Patent.

220.    The claims of the '897 Patent are not infringed by Micron; are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '897 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

221.    Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '897 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

222.    Micron seeks a declaration that the '897 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

## COUNT VII

**(Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '6,446 Patent)**

223.    Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

224.    Rambus has sued Micron for alleged infringement of the '6,446 Patent.

225. The claims of the '6,446 Patent are not infringed by Micron; are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '6,446 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

226. Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '6,446 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

227. Micron seeks a declaration that the '6,446 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

## COUNT VIII

### (Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '281 Patent)

228. Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

229. Rambus has sued Micron for alleged infringement of the '281 Patent.

230. The claims of the '281 Patent are not infringed by Micron; are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '281 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

231. Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '281 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

232. Micron seeks a declaration that the '281 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

1

## COUNT IX

2

**(Declaratory Judgment of Invalidity, Unenforceability,
and Noninfringement of the '037 Patent)**

3

4

233.     Micron realleges and incorporates by reference the preceding allegations of

these counterclaims.

5

234.     Rambus has sued Micron for alleged infringement of the '037 Patent.

6

235.     The claims of the '037 Patent are not infringed by Micron; are invalid for

7

failure to meet the requirements of the patent laws of the United States, including 35 U.S.C.

8

§§ 102, 103, 112, and/or 116; and/or the '037 Patent is unenforceable based upon, among other

9

reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches,

10

laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition

11

laws.

12

236.     Accordingly, there exists an actual controversy between Micron and

13

Rambus concerning whether the claims of the '037 Patent are not infringed by Micron, are invalid,

14

and/or are unenforceable.

15

237.     Micron seeks a declaration that the '037 Patent is not infringed by Micron,

16

is invalid, and/or is unenforceable.

17

## COUNT X

18

**(Declaratory Judgment of Invalidity, Unenforceability,
and Noninfringement of the '295 Patent)**

19

20

238.     Micron realleges and incorporates by reference the preceding allegations of

21

these counterclaims.

22

239.     Rambus has sued Micron for alleged infringement of the '295 Patent.

23

240.     The claims of the '295 Patent are not infringed by Micron; are invalid for

24

failure to meet the requirements of the patent laws of the United States, including 35 U.S.C.

25

§§ 102, 103, 112, and/or 116; and/or the '295 Patent is unenforceable based upon, among other

26

reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches,

27

laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition

28

laws.

241.    Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '295 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

242.    Micron seeks a declaration that the '295 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

## COUNT XI

### (Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '1,446 Patent)

243.    Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

244.    Rambus has sued Micron for alleged infringement of the '1,446 Patent.

245.    The claims of the '1,446 Patent are not infringed by Micron; are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '1,446 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

246.    Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '1,446 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

247.    Micron seeks a declaration that the '1,446 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

## COUNT XII

### (Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '020 Patent)

248.    Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

249.    Rambus has sued Micron for alleged infringement of the '020 Patent.

250.     The claims of the '020 Patent are not infringed by Micron; are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '020 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

251.     Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '020 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

252.     Micron seeks a declaration that the '020 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

## COUNT XIII

**(Declaratory Judgment of Invalidity, Unenforceability, and Noninfringement of the '696 Patent)**

253.     Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

254.     Rambus has sued Micron for alleged infringement of the '696 Patent.

255.     The claims of the '696 Patent are not infringed by Micron; are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '696 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

256.     Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '696 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

257.     Micron seeks a declaration that the '696 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

## COUNT XIV

**(Declaratory Judgment of Invalidity, Unenforceability,
and Noninfringement of the '598 Patent)**

258.     Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

259.     Rambus has sued Micron for alleged infringement of the '598 Patent.

260.     The claims of the '598 Patent are not infringed by Micron; are invalid for failure to meet the requirements of the patent laws of the United States, including 35 U.S.C. §§ 102, 103, 112, and/or 116; and/or the '598 Patent is unenforceable based upon, among other reasons, patent misuse, equitable estoppel, inequitable conduct, unclean hands, waiver, laches, laches in the Patent and Trademark Office, and violations of the antitrust and unfair competition laws.

261.     Accordingly, there exists an actual controversy between Micron and Rambus concerning whether the claims of the '598 Patent are not infringed by Micron, are invalid, and/or are unenforceable.

262.     Micron seeks a declaration that the '598 Patent is not infringed by Micron, is invalid, and/or is unenforceable.

## COUNT XV

**(Monopolization and Attempted Monopolization Under 15 U.S.C. § 2)**

263.     Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

264.     This Count seeks damages and injunctive relief against Rambus by reason of Rambus's monopolization and attempted monopolization of the relevant market(s) in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

265.     As detailed herein, Rambus attempted to acquire and unlawfully exploit monopoly power.

266.     Rambus engaged in such predatory and anticompetitive conduct with the specific intent of monopolizing the relevant market(s).  Rambus has already succeeded in coercing certain high–performance DRAM manufacturers to enter into licensing agreements.

267.     At all times relevant hereto, Rambus acted with the specific intent of achieving monopoly power over the relevant market(s), and has made public statements indicating its intent to monopolize, control, and manipulate the market(s) for the benefit of Rambus.

268.     Rambus's conduct has achieved, or has a dangerous probability of achieving, monopoly power, in the relevant market(s), unless such conduct is restrained and enjoined.  If the conduct is not enjoined, the remaining manufacturers of high–performance DRAMs may be forced to enter into anticompetitive license agreements with Rambus, thereby giving Rambus control over 100% of the relevant market(s) and thereby increasing its monopoly power and monopoly control thereover.

269.     Rambus's manipulation of JEDEC and its fraudulent conduct and multiple breaches of its contractual and other duties to JEDEC and the other participants in JEDEC led microprocessor manufacturers to adopt high–performance DRAM interface technology that is compatible only with the high–performance DRAM interface technology over which Rambus claims patents and exclusive control.  In particular, Rambus's numerous failures to disclose material information, its affirmative misrepresentations, and its partial disclosures amounted to an unlawful and fraudulent scheme to ensure its uncontested position as the holder of patents which attempted to capture an industry standard.  As a result, substantial barriers to entry have been created for anyone attempting to use high–performance DRAM interface technology in the manufacture of high–performance DRAMs other than the technology that Rambus claims to control.

270.     In fact, if Rambus's asserted positions are accepted, Rambus has already achieved monopoly power and monopoly control over the relevant market(s).

271.     Rambus's asserted monopoly power in the relevant market(s) has not been acquired or achieved as a result of business growth or development or legitimate acquisition and enforcement of patents, or as a consequence of a superior technology, business acumen, or historic

1  accident.  Rather, Rambus has achieved such asserted monopoly power through predatory and

2  exclusionary conduct, which it engaged in with the specific intent to obtain monopoly power.

3        272.    Rambus's conduct has had a substantial effect on interstate commerce and it

4  will continue to have such an effect.

5        273.    As a direct and proximate result of Rambus's unlawful monopolization

6  and/or attempted monopolization, Micron has been injured in its business and property in an

7  amount that has yet to be determined but will be established at trial.

8        274.    Unless Rambus is enjoined by a court of law, Rambus's unlawful conduct

9  will continue and Micron will continue to sustain injury and damages.

10  <u>**COUNT XVI**</u>

11  **(Monopolization and Attempted Monopolization Under 15 U.S.C. § 2—Walker Process)**

12        275.    Micron realleges and incorporates by reference the preceding allegations of

13  these counterclaims.

14        276.    Rambus failed to disclose material information to the PTO and made

15  material misrepresentations in prosecuting the applications leading to the Rambus Patents,

16  including the Patents–in–Suit.  If Rambus had done so, it would have been apparent to the patent

17  examiner that Rambus's applications should not issue.  Rambus thus violated its duty of candor

18  and committed fraud on the PTO.

19        277.    Rambus's fraud on the PTO is actionable under Section 2 of the Sherman

20  Antitrust Act.  Through this fraud Rambus has a dangerous probability of achieving monopoly

21  power in the relevant market(s).

22        278.    Rambus's conduct has had a substantial effect on interstate commerce and it

23  will continue to have such an effect.

24        279.    As a direct and proximate result of Rambus's unlawful monopolization

25  and/or attempted monopolization, Micron has been injured in its business and property in an

26  amount that has yet to be determined but will be established at trial.

27        280.    Unless Rambus is enjoined by a court of law, Rambus's unlawful conduct

28  will continue and Micron will continue to sustain injury and damages.

## COUNT XVII

### (Breach of Contract)

281.    Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

282.    JEDEC requires that its members disclose patents and patent applications involved in its work and imposes an express duty of good faith on its members.

283.    This policy protects JEDEC and its members from unscrupulous conduct by any member who seeks to unfairly benefit from, or to manipulate, the standards setting process to its advantage.

284.    By joining JEDEC, and in consideration for the receipt of the numerous benefits of being a member of JEDEC, each member of JEDEC, including Rambus, agreed to abide by the rules and policies governing the organization.  In addition, JEDEC members agree that if they fail to disclose relevant patents or patent applications, they will not enforce any such patent against JEDEC members.

285.    This agreement created a contract among each of the members and between each member and JEDEC.  In addition, Micron was a third–party beneficiary of the agreement between JEDEC and Rambus.

286.    Rambus breached its contractual obligations by violating this policy and/or the implied covenant of good faith and fair dealing, including at least by not disclosing its patent rights relating to high–performance DRAMs and/or after not disclosing its patent rights by asserting such patent rights and claiming entitlement to a royalty.
As a result, Micron has incurred damages, and will be further damaged in the future due to Rambus's breach of contract./ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# COUNT XVIII

## (Fraud)

287.    Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

288.    Rambus affirmatively misrepresented its patent prosecution activities to Micron and other JEDEC members.  In a June 17, 1996 letter to JEDEC, Rambus provided a list of its U.S. and foreign patents for the benefit of JEDEC members who were "interested in the patents of Rambus."  Rambus acknowledged in its letter that its patents had been the subject of discussion at JEDEC meetings and, therefore, knew that JEDEC members would rely on the disclosure.  Nevertheless, Rambus failed to disclose a patent that had issued prior to the date of the letter and which was related to the work of a committee of JEDEC.  Rambus's JEDEC representative also misled JEDEC members in September 1995 in connection with a discussion of Rambus patent rights.

289.    Rambus, as a member of JEDEC, had a duty to disclose its patents and patent applications, including applications underlying the Patents–in–Suit, to JEDEC and other JEDEC members including Micron.

290.    On numerous occasions, while Rambus attended JEDEC meetings or met individually with JEDEC members, including Micron, Rambus failed to disclose material information regarding its patent position and pending applications though Rambus was reasonably expected to do so.

291.    Rambus failed to make such disclosures, made partial disclosures, and engaged in affirmative misrepresentations and conduct despite knowing that it was required to disclose such information, and such information was material.  Rambus knew that JEDEC and its members would reasonably rely on its failure to disclose its patents and patent applications, in adopting standards.  Rambus further knew that JEDEC and its members would consider its failure to disclose patents and patent applications as a representation that it had no such patents or patent applications for which disclosure was required and/or that it would not assert claims to any such patents against JEDEC members in the future.

292.    Rambus intended to induce the other members of JEDEC, including Micron, to adopt standards allegedly covered by its patents and/or to keep such JEDEC members from adopting standards which would avoid Rambus's patent assertions.

293.    JEDEC and its members, including Micron, adopted standards in justifiable reliance on Rambus's silence, misleading conduct, partial representations and/or affirmative misrepresentations that high–performance DRAM manufactured pursuant to such standards did not and would not infringe any patents of Rambus, or any other members of JEDEC that did not disclose their patent portfolios, and/or that such patents would not be asserted against the members.

294.    Micron has suffered damages as a result of Rambus's failure to disclose its patents and patent applications, and Micron will be further damaged in the future due to Rambus's fraudulent conduct.

**COUNT XIX**

**(Equitable Estoppel)**

295.    Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

296.    By joining JEDEC, attending JEDEC meetings, and paying membership dues to JEDEC, Rambus impliedly consented to abide by the rules and policies governing the organization, and led other JEDEC members, including Micron, to believe that it would comply with those rules and policies.

297.    Rambus failed to disclose its relevant patents and patent applications to JEDEC and its members as required by JEDEC's rules and policies.

298.    Rambus also failed to disclose relevant Rambus Patents and patent applications to JEDEC and its members on numerous occasions where such disclosures were required by law.

299.    Rambus made partial representations or affirmative misrepresentations regarding its patents and patent applications.

Case No. C 06-00244 RMW
DEFENDANTS' FIRST AMENDED
ANSWER AND COUNTERCLAIMS

300.    JEDEC and its members relied upon Rambus's affirmative representations, partial disclosures, and failures to disclose relevant information.  JEDEC members at all times believed that Rambus was conducting itself pursuant to the policies and expectations of good faith, as laid out above.

301.    Micron detrimentally and justifiably relied on Rambus's acts and omissions by incurring costs in developing and promoting technology that is subject to assertions by Rambus which Micron would not have incurred if Rambus had disclosed its patents and patent applications and will incur additional damages in the future.

302.    Because of Rambus's omissions and Micron's detrimental reliance on them, Rambus should be estopped from asserting the Rambus Patents against Micron.

## COUNT XX

### (Negligent Misrepresentation)

303.    Micron realleges and incorporates by reference the preceding allegations of these counterclaims.

304.    As described above, Rambus failed to make disclosures it was required to make as a member of JEDEC, and it made false and misleading statements which reasonably led Micron, and the other members of JEDEC, to believe that Rambus had no intellectual–property rights as to products conforming to the SDRAM and DDR SDRAM standards.

305.    In addition, when Rambus purported to withdraw from JEDEC by letter on June 17, 1996, it provided a list of its U.S. and foreign patents for the benefit of JEDEC members who were "interested in the patents of Rambus."  Rambus acknowledged in its letter that its patents had been the subject of discussion at JEDEC meetings and, therefore, knew that JEDEC members would rely on the disclosure.  Nevertheless, Rambus failed to disclose a patent that had issued prior to the date of the letter and which was related to the work of a committee of JEDEC.

306.    This omission made Rambus's disclosure of its patents false, and this omission was material as it encompassed an area in which the committee had been working.

1        307.    Micron believed that Rambus had accurately and completely identified all

2  of its patents which it could or would assert, and justifiably relied on Rambus's statements and

3  omissions described above.

4        308.    Rambus negligently made these and other affirmative misrepresentations

5  and partial disclosures when it reasonably should have known and disclosed that, in fact, its

6  patents and pending patents were drafted in an attempt to capture the JEDEC DRAM standards.

7        309.    Micron has suffered damages as a result of Rambus's negligent

8  misrepresentations and will suffer additional damages in the future.

9                            **COUNT XXI**

10         **(Unfair Competition Under Cal. Bus. & Prof. C. § 17200 *et seq.*)**

11        310.    Micron realleges and incorporates by reference the preceding allegations of

12  these counterclaims.

13        311.    Micron asserts this claim of unfair competition under Cal. Bus. & Prof. C.

14  § 17200 *et seq.* in its own name only and does not act for the interest of any other person or entity

15  or for the general public.  Micron has suffered injury in fact and has lost money and property as a

16  result of Rambus's unfair business practices.

17        312.    Rambus's above–described conduct amounts to an unlawful business act or

18  practice under Cal. Bus. & Prof. C. § 17200 *et seq.* based, *inter alia*, on Cal. Code Civ. Proc.

19  § 2023.010, 18 U.S.C. §§ 1341 *et seq.*, 18 U.S.C. §§ 1503, 1512, Del. Code Ann., Title 11 § 1269,

20  exclusive dealing in violation of 15 U.S.C. §§ 1 and 14, misdemeanor spoliation of evidence in

21  violation of Cal. Pen. Code § 135, restraint of trade and monopolization and attempted

22  monopolization in violation of 15 U.S.C. § 2, obstruction of justice in violation of 18 U.S.C.

23  § 1505, failure to disclose relevant patents and patent applications at JEDEC which led Micron,

24  and other DRAM manufacturers, to adopt SDRAM and DDR SDRAM standards, common law

25  spoliation, common law fraud, and the other claims of unlawfulness in these counterclaims.

26  Rambus's further unfair conduct forces Micron to defend against Rambus's allegations of

27  infringement prejudiced by Rambus's destruction of relevant evidence and litigation misconduct.

28

313.     Rambus's unfair conduct threatens an incipient violation of an antitrust law, violates the policy or spirit of one or more of these laws because its effects are comparable to or the same as a violation of the law, and otherwise significantly threatens or harms competition.

314.     Rambus's conduct amounts to a fraudulent business act or practice under Cal. Bus. & Prof. C. § 17200 *et seq.* by creating a likelihood that Micron and the public would be misled as to the scope of Rambus's patents.

315.     As a result of Rambus's unfair competition, Micron and the public will be damaged.  Micron seeks an injunction and other equitable relief preventing further harm to itself and the public, and preventing Rambus from continuing its unlawful, harmful and anticompetitive conduct.  Micron further seeks restitution of all amounts that Rambus has received from Micron as a result of Rambus's wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Defendants/Counterclaim Plaintiffs Micron Technology, Inc., and Micron Semiconductor Products, Inc. respectfully request that this Court:

A.     Enter judgment in favor of Micron and against Rambus on Rambus's claims for patent infringement;

B.     Enter judgment in favor of Micron declaring that the Patents–in–Suit and/or Rambus Patents are not infringed, are invalid, and/or are unenforceable;

C.     Enter judgment in favor of Micron declaring that Rambus has attempted to monopolize and has monopolized the relevant market(s) in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

D.     Permanently enjoin Rambus from monopolizing and attempting to monopolize the relevant market(s) under Section 16 of the Clayton Act, 15 U.S.C. § 16;

E.     Permanently enjoin Rambus from enforcing the Rambus Patents against Micron;

F.     Award Micron restitution for any amounts that Rambus received from

1    Micron, or received at Micron's expense or detriment, as a result of Rambus's wrongful conduct;

2         G.    Award Micron compensatory damages (general, special, and nominal),

3    including investigation costs and legal fees and costs, trebled as provided by law;

4         H.    Award Micron punitive damages;

5

6         I.    Award Micron its attorneys' fees and costs expended in this action;

7         J.    Award Micron pre–judgment and post–judgment interest at the maximum

8    legal rate; and

9         K.    Award such other and further relief as this Court deems just and proper.

10                              **JURY DEMAND**

11        Micron demands a trial by jury as to all claims, defenses and counterclaims so

12   triable.

13

14   DATED:  May 30, 2007              QUINN EMANUEL URQUHART OLIVER &
                                       HEDGES, LLP
15

16
                                       By /s/ Hal Barza
17                                        Hal Barza
                                          William C. Price
18
                                       Attorneys for Defendants/Counterclaim Plaintiffs
19                                     MICRON TECHNOLOGY, INC., and
                                       MICRON SEMICONDUCTOR PRODUCTS, INC.
20

21

22

23

24

25

26

27

28

                                       DEFENDANTS' FIRST AMENDED
                                       ANSWER AND COUNTERCLAIMS