**E-FILED on**   6/19/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAMBUS INC.,<br><br>      Plaintiff,<br><br>      v.<br><br>MICRON TECHNOLOGY, INC., and MICRON SEMICONDUCTOR PRODUCTS, INC.,<br><br>      Defendants. | No. C-06-00244 RMW<br><br>ORDER DENYING RAMBUS'S MOTION TO DISMISS MICRON'S TWENTY-FIRST COUNTERCLAIM<br><br>**[Re Docket No. 60]** |

      Plaintiff Rambus Inc. ("Rambus") moves to dismiss defendant Micron Technology, Inc. and Micron Semiconductor Products, Inc.'s (collectively "Micron") twenty-first counterclaim for violation of Cal. Bus. & Prof. Code § 17200 as time-barred. Micron opposes the motion. The court has read the moving and opposing papers and considered the arguments of counsel. For the reasons set forth below, the court DENIES Rambus's motion to dismiss Micron's twenty-first counterclaim.

      In its counterclaims, Micron alleges improper conduct on Rambus's part with respect to patent claims and patent enforcement. In the 1990's, both Micron and Rambus participated in JEDEC, an open-industry standard-setting organization consisting of DRAM customers, suppliers, and other firms. Ans. & Countercl. ¶ 82. JEDEC was in the process of developing industry-wide technical standards for high-performance DRAMs, such as the SDRAM and DDR SDRAM. *Id.* ¶

96. Through its participation, Rambus received detailed and timely information about the standards under development. *Id.* ¶ 105. Micron alleges that Rambus joined JEDEC as part of its plan to dominate the DRAM and DRAM interface technology markets. *Id.* Without disclosing its amendment activity to JEDEC, Rambus amended its patent applications in order to target features of the standards under development or being discussed at JEDEC. *Id.* ¶¶ 106, 108, 112. It also later filed related applications to attempt to make its patent portfolio cover all products manufactured in accordance with JEDEC standards. *Id.* ¶ 115. According to Micron, Rambus deceived the U.S. Patent and Trademark Office by withholding information material to the patentability of its patents, including the patents-in-suit (which issued between January 30, 2001 and October 19, 2004). *Id.* ¶ 160. Micron further alleges that Rambus strategically waited until the standards had been adopted and the industry had invested billions of dollars in it before asserting its patent rights against DRAM manufacturers. *Id.* ¶ 118.

In alleging a continuing antitrust violation, "an overt act by the defendant is required to restart the statute of limitations." *Pace Indus. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987). An overt act has two elements: "1) [i]t must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff." *Id.* at 238. If an initial act or decision occurs outside the limitations period, "separate violations . . . not controlled by the previous act or decision" restart the statute of limitations, but mere continuing injury does not. *Id.*

Here, Micron argues that Rambus's perpetration of fraud on the patent office and the issuance of, *inter alia*, the patents-in-suit between January 30, 2001 and October 19, 2004, constitute overt acts within the statute of limitations. Specifically, Micron submits, ten of the fourteen patents-in-suit did not issue until after June 2, 2002. Such fraud, Micron alleges, was a part of Rambus's long-running antitrust scheme. Rambus's antitrust efforts are alleged to include the use of patent prosecution to achieve an improper monopoly. *See* Ans. & Countercl. ¶¶ 106, 108, 112, 115 (alleging Rambus later filed related applications to attempt to make its patent portfolio cover all products manufactured in accordance with JEDEC standards). Because the statute of limitations is measured from the last occurrence of an overt act in furtherance of the alleged antitrust scheme

underlying its § 17200 claim, Micron argues that these allegations places its § 17200 claim within the statute of limitations. The court agrees. The asserted prosecution of the patents-in-suit in furtherance of the alleged antitrust scheme (which is alleged to stem from, *inter alia*, the conduct at JEDEC and attempts to amend patents to cover JEDEC-complaint products), if accepted as true, brings the alleged course of conduct in violation of § 17200 within the four year statute of limitations. *See Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1300-02 (9th Cir. 1986) (Affirmative acts inflicting new injury will restart the statute of limitations, even when taken pursuant to an agreement or decision made prior to the limitations period.*)*; *Suh v. Yang*, 987 F. Supp. 783, 795-96 (N.D. Cal. 1997).

    Rambus argues that no dates are specified as to the allegations regarding prosecution of patents. However, the lack of dates does not render Micron's pleadings deficient. Where, as here, the allegations involve a continuous course of wrongful conduct in violation of § 17200, fact-specific pleading is not required. *See Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 46-47 (1998) (rejecting the requirement that a plaintiff make "specific factual allegations in addition to pleading the elements of the alleged unlawful act"); *People v. Superior Court (Jayhill Corp.)*, 9 Cal. 3d 283, 287-88 (1973). It is sufficient that Micron's pleadings indicate that ten of the patents-in-suit, alleged to constitute part of the wrongful course of conduct, issued between January 30, 2001 and October 19, 2004.[1] *See Jayhill*, 9 Cal. 3d at 288 (pleadings sufficient where the violations had been "alleged in sufficient detail to apprise defendants of the basis of the cause of action," and further details were properly the subject of discovery).

---

[1]   Citing *Abbott Laboratories v. Brennan*, 952 F.2d 1346, 1355 (Fed. Cir. 1991), Rambus further argues that Micron may not rely on a fraud on the patent office theory to support a state claim. In *Abbott*, the plaintiff sought to attack the patent office's unfavorable decision in an interference proceeding by filing a state suit claiming abuse of process. *Id.* at 1348. The Federal Circuit held that PTO proceedings are not subject to collateral attack under state law and therefore the plaintiff's state law abuse of process claim could not be sustained. *Id.* at 1355. However, *Abbott* is inapplicable because Micron does not seek by its allegations to attack any decision by the patent office. The *Abbott* court made clear that it only addressed "the narrow question of whether the state tort action for abuse of process can be invoked as a remedy for inequitable or other unsavory conduct of parties to proceedings in the Patent and Trademark Office." *Id.*

United States District Court
For the Northern District of California

### III. ORDER

For the foregoing reasons, the court DENIES Rambus's motion to dismiss.

DATED:     6/18/07

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

Gregory P. Stone      gregory.stone@mto.com
Steven McCall Perry      steven.perry@mto.com
Peter A. Detre      detrepa@mto.com
Carolyn Hoecker Luedtke      carolyn.luedtke@mto.com
Pierre J. Hubert      phubert@mckoolsmith.com
Craig N. Tolliver      ctolliver@mckoolsmith.com
Jeannine Y. Sano      sanoj@howrey.com
David C. Vondle      dvondle@akingump.com

**Counsel for Defendant(s):**

John D Beynon      john.beynon@weil.com
Jared Bobrow      jared.bobrow@weil.com
Leeron Kalay      leeron.kalay@weil.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      6/19/07                 SPT
                                                   **Chambers of Judge Whyte**