HAROLD A. BARZA (Bar No. 80888)
halbarza@quinnemanuel.com
WILLIAM C. PRICE (Bar No. 108542)
williamprice@quinnemanuel.com
ROBERT J. BECHER (Bar No. 193431)
robertbecher@quinnemanuel.com
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California  90017-2543
Telephone:     (213) 443-3000
Facsimile:     (213) 443-3100

JARED BOBROW (Bar No. 133712)
jared.bobrow@weil.com
JOHN D. BEYNON (Bar No. 233581)
john.beynon@weil.com
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Defendants and Counterclaim
Plaintiffs
MICRON TECHNOLOGY, INC., and
MICRON SEMICONDUCTOR PRODUCTS,
INC.

[*Complete Attorney List on Signature Page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC.; HYNIX SEMICONDUCTOR AMERICA, INC.; HYNIX SEMICONDUCTOR U.K. LTD.; and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH, <br><br> Plaintiffs, <br><br> vs. <br><br> RAMBUS INC., <br><br> Defendant. | CASE NO. C 00-20905 RMW <br><br> **MANUFACTURERS' JOINT OPPOSITION TO RAMBUS INC.'S MOTION TO STRIKE JURY DEMANDS WITH RESPECT TO JANUARY 22, 2008 TRIAL** <br><br> Date:        October 26, 2007 <br> Time:        9:00 a.m. <br> Judge:       Hon. Ronald M. Whyte <br> Location:    Courtroom 6, 4th Floor |

1    RAMBUS INC.,                                    CASE NO. C 05-00334 RMW

2              Plaintiff,

3         vs.

4    HYNIX SEMICONDUCTOR INC., HYNIX
     SEMICONDUCTOR AMERICA INC.,
5    HYNIX SEMICONDUCTOR
     MANUFACTURING AMERICA INC.,
6
     SAMSUNG ELECTRONICS CO., LTD.,
7    SAMSUNG ELECTRONICS AMERICA,
     INC., SAMSUNG SEMICONDUCTOR,
8    INC., SAMSUNG AUSTIN
     SEMICONDUCTOR, L.P.,
9
     NANYA TECHNOLOGY CORPORATION,
10   NANYA TECHNOLOGY CORPORATION
     U.S.A.,
11
               Defendants.
12
13   RAMBUS INC.,                                    CASE NO. C 05-02298 RMW

14             Plaintiff,

15        vs.

16   SAMSUNG ELECTRONICS CO., LTD.,
     SAMSUNG ELECTRONICS AMERICA,
17   INC., SAMSUNG SEMICONDUCTOR,
     INC., SAMSUNG AUSTIN
18   SEMICONDUCTOR, L.P.,

19             Defendants.

20
     RAMBUS INC.,                                    CASE NO. C 06-00244 RMW
21
               Plaintiff,
22
          vs.
23
24   MICRON TECHNOLOGY, INC., and
     MICRON SEMICONDUCTOR PRODUCTS,
25   INC.,

26             Defendants.

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.  ARGUMENT .................................................................................................................. 2

     A.   Rambus Misconstrues the Court's July 7, 2006 Ruling By Claiming It
          Means that the Manufacturers' Antitrust Claims May Not Be Tried to a Jury .......... 3

          1.   The Manufacturers' Fraud Claims Are Not Based Solely on
               Rambus's Filing of Patent Lawsuits .............................................................. 4

          2.   The Relevant Case Law Supports a Finding That Rambus Has
               Engaged in Actionable Conduct For Which Damages Are
               Recoverable ................................................................................................... 5

          3.   The Court's Prior Ruling on Rambus's Motion to Withdraw Supports
               a Finding That the Jury Should Decide the Antitrust Claims ......................... 6

     B.   Micron's Breach of Contract Claim Should Also Be Tried to the Jury .................... 7

     C.   The Manufacturers' Fraud Claims Should be Tried to the Jury With the
          Antitrust and Breach of Contract Claims .............................................................. 8

          1.   Attorneys' Fees Are Viable Compensatory Damages for the
               Manufacturers' Fraud Claims ........................................................................ 9

          2.   The Manufacturers Are Also Entitled to Nominal Damages for Their
               Fraud Claims ................................................................................................ 11

          3.   The Manufacturers Are Also Entitled to Punitive Damages ........................ 12

     D.   The Counterclaims and Affirmative Defenses Directly Related to the
          Antitrust, Contract, and Fraud Claims Should Be Presented to the Jury ............... 13

          1.   The Counterclaims and Affirmative Defenses At Issue In Rambus's
               Motion Are Inextricably Intertwined With the Legal Claims ..................... 13

          2.   The Right to a Jury Trial Attaches to All Factual Issues Associated
               with a Legal Claim ...................................................................................... 15

III. CONCLUSION ............................................................................................................ 16

# TABLE OF AUTHORITIES

Page

## Cases

*Beacon Theatres, Inc. v. Westover,*
  359 U.S. 500, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959) ................................................. 13, 15, 16

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.,*
  226 Cal. App. 3d 442 (Cal. Ct. App. 1990) ........................................................................... 8

*Brandt v. Superior Court,*
  37 Cal. 3d 813 (Cal. 1985) ................................................................................................. 9, 10

*Brewer v. Second Baptist Church,*
  32 Cal. 2d 791 (Cal. 1948) ..................................................................................................... 12

*Cabinet Vision v. Cabnetware,*
  129 F.3d 595 (Fed. Cir. 1997) ................................................................................................ 15

*Cassim v. Allstate Ins. Co.,*
  33 Cal. 4th 780 (Cal. 2004) ...................................................................................................... 9

*Cheung v. Daley,*
  35 Cal. App. 4th 1673 (Cal. Ct. App. 1995) ..................................................................... 9, 12

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,*
  690 F.2d 1240 (9th Cir. 1982) ............................................................................................. 5, 6

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Caf & Takeout III, Ltd.,*
  30 Cal. App. 4th 54 (Cal. Ct. App. 1994) ......................................................................... 13, 15

*Dairy Queen, Inc. v. Wood,*
  369 U.S. 469, 82 S. Ct. 894, 8 L. Ed. 2d 44 (1962) ......................................................... 12, 15

*De La Hoya v. Slim's Gun Shop,*
  80 Cal. App. 3d Supp. 6, 10 (Cal. Ct. App. 1978) ................................................................. 8

*Esparza v. Specht,*
  55 Cal. App. 3d 1 (Cal. Ct. App. 1976) ................................................................................. 15

*Finney v. Lockhart,*
  35 Cal. 2d 161 (Cal. 1950) ..................................................................................................... 12

*Gray v. Don Miller & Assoc., Inc.,*
  35 Cal. 3d 498 (Cal. 1984) ....................................................................................................... 9

*Handgards, Inc. v. Ethicon, Inc.,*
  601 F.2d 986 (9th Cir. 1979) ................................................................................................. 5, 6

*Hartong v. Partake,*
  266 Cal. App. 2d 942 (Cal. Ct. App. 1968) ............................................................................ 9

*Kizer v. County of San Mateo*,
    53 Cal. 3d 139 (Cal. 1991) ........................................................................ 9, 12

*Kobe, Inc. v. Dempsey Pump Co.*,
    198 F.2d 416 (10th Cir. 1952) .................................................................... 5, 6

*McLaughlin v. National Union Fire Ins. Co.*,
    23 Cal. App. 4th 1132 (Cal. Ct. App. 1994) .................................................... 12

*Overgaard v. Johnson*,
    68 Cal. App. 3d 821 (Cal. Ct. App. 1977) ....................................................... 9

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
    352 F. Supp. 2d 1048 (N.D. Cal. 2004) .......................................................... 8

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (Cal. 1993) ......................................................................... 9

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993) ...................................... 6

*Rambus, Inc. v. Infineon Tech. AG*,
    164 F. Supp. 2d 743 (E.D. Va. 2001), (Fed. Cir. 2003) ................................ 10, 11

*Rex Chainbelt Inc. v. Harco Prods., Inc.*,
    512 F.2d 993 (9th Cir. 1975) ...................................................................... 5

*Shum v. Intel Corp.*,
    – F.3d – 2007 WL 2404718 (Fed. Cir. Aug. 24, 2007) ........................................ 16

*Sole Energy Co. v. Petrominerals Corp.*,
    128 Cal. App. 4th 212 (Cal. Ct. App. 2005) ..................................................... 9

*Standard Oil Co. of New Jersey v. United States*,
    221 U.S. 1, 60, 31 S.Ct. 502, 515, 55 L.Ed. 619 (1911) ..................................... 15

*U.S. v. Marlon*,
    173 F.3d 1213 (9th Cir. 1999) .................................................................... 12

## **Statutes**

Cal. Bus. & Prof. Code § 17200 ....................................................................... 3

Cal. Civ. Code § 3333 ................................................................................. 9

Cal. Civ. Code § 1021 ............................................................................. 9, 10

Cal. Civ. Code § 3333 ................................................................................. 9

Fed. R. Civ. P. 39(c) ............................................................................... 16

## I.       INTRODUCTION AND SUMMARY OF ARGUMENT

In its Motion to Strike Jury Demands, Rambus asks the Court to rule that Hynix, Micron, and Nanya (collectively, "Manufacturers") are not entitled to a jury trial on their antitrust, breach of contract, and fraud claims and related counterclaims and defenses because they are seeking to recover the attorneys' fees they incurred defending against Rambus's legal claims.  Relying on this Court's July 7, 2006 Order on Rambus's motion for summary adjudication, Rambus argues that its filing of patent lawsuits is immunized from liability under *Noerr-Pennington*.  As a consequence, it contends that the attorneys' fees incurred defending against those lawsuits are not recoverable as damages.  Rambus then asserts that, because the Manufacturers are unable to recover monetary damages, they are not entitled to a jury trial.

The fatal flaw in Rambus's entire argument is that it treats the Manufacturers' claims as premised solely on the filing of the patent lawsuits.  This is not the case.  For example, the Manufacturers' antitrust claims are based on the assertion that Rambus has engaged in a pervasive and illicit scheme to acquire and maintain control of the market for DRAM interface technology through anticompetitive conduct both inside and outside of JEDEC.  Nor is Micron's breach of contact claim based on Rambus's filing of a lawsuit.  Rather, it is predicated on Rambus's failure to honor the agreements and obligations of JEDEC members.

Because the Manufacturers' claims are based on an overall anticompetitive course of conduct, they are not barred by *Noerr-Pennington*.  As a result, the Manufacturers are entitled to monetary damages, including attorneys' fees, to compensate them for the harm they incurred due to Rambus's anticompetitive activities.  Indeed, when the Court denied Rambus's prior Motion to Withdraw Jury Demand on August 2, 2006, it held that Hynix's request for attorneys' fees proximately caused by Rambus's conduct was a legally viable damages claim that entitled Hynix to a jury trial.  This holding remains valid and applies equally to Micron and Nanya.

With respect to the Manufacturers' fraud claims, they have asserted multiple theories of monetary recovery that entitle them to a jury trial under California law.  In particular, the Manufacturers are seeking nominal damages, attorneys' fees, and punitive damages to compensate them for the harm caused by Rambus's fraud.  Attorneys' fees are also recoverable for Micron's

1  breach of contract claim under California law.  Because they are seeking legal relief in the form of

2  damages, the Manufacturers are entitled to try their fraud and breach of contract claims to the jury.

3       Rambus also asserts that Micron's counterclaims for declaratory judgment for

4  unenforceability based on violations of the antitrust laws and waiver, Micron and Nanya's

5  affirmative defense of waiver, Micron's "damages offset" defense, and Micron's defense of

6  unenforceability based on violation of the antitrust laws and waiver should all be tried to the

7  Court.  But Rambus ignores Supreme Court precedent holding that the jury should make factual

8  findings regarding any claims or defenses that are factually intertwined with causes of action that

9  will be tried to the jury.  There is dramatic factual overlap between each of these counterclaims

10  and defenses and the antitrust, fraud and breach of contact claims.  For example, unenforceability

11  based on violations of the antitrust laws will require factual findings regarding whether Rambus's

12  conduct related to JEDEC was anticompetitive.  Rambus's conduct at JEDEC also forms the basis

13  for the parties' fraud and antitrust claims.  As a result, the jury should decide all overlapping

14  factual issues related to each of these claims and defenses.

15  **II.    ARGUMENT**

16       In its Motion to Strike Jury Demands, Rambus asserts the following arguments: (1) that the

17  Manufacturers are not entitled to a jury trial on their antitrust claims because they have no viable

18  damages claims following this Court's ruling on *Noerr-Pennington* immunity; (2) that Micron's

19  breach of contract claim must be tried to the bench because the damages sought are similarly

20  barred from recovery under *Noerr-Pennington*; (3) that a bench trial is required for the

21  Manufacturers' intentional fraud and negligent misrepresentation claims because the

22  Manufacturers are not entitled to any compensatory, nominal, or punitive damages as a matter of

23  California law; and (4) that Micron's counterclaim for declaratory judgment of unenforceability

24  based on antitrust laws and waiver, Micron and Nanya's affirmative defenses of waiver, and

25  Micron's defenses of unenforceability and damages offset may not be resolved by a jury.  As set

26  forth in greater detail below, Rambus's arguments are flawed and unsupported by the relevant

27  federal and state authorities.

28

**A.    Rambus Misconstrues the Court's July 7, 2006 Ruling By Claiming It Means that the Manufacturers' Antitrust Claims May Not Be Tried to a Jury**

Relying in large part on this Court's decision on Rambus's motion for summary adjudication in the '905 case between Hynix and Rambus, Rambus argues that *Noerr-Pennington* prohibits the Manufacturers from recovering damages and hence obtaining a jury trial.[1]  In that motion, Rambus asked the Court to find that Hynix could not support a finding of liability under the antitrust laws or California Business & Professions Code § 17200 because Rambus was immune under *Noerr-Pennington*.  Order Granting Rambus's Motion for Summary Adjudication of *Noerr-Pennington* Immunity, dated July 7, 2006 ("July 7, 2006 Order"), at 3:20-24.  On July 7, 2006, the Court granted Rambus's motion.  However, the Court expressly stated that its holding was limited to the issue of whether the *Noerr-Pennington* doctrine immunized Rambus from antitrust liability or liability under California Business & Professions Code § 17200 "if and to the extent that any such liability is sought based *solely* on Rambus's litigation related activities."  July 7, 2006 Order at 3:23-24 (emphasis added).  The Court stated that it was not reaching the issue of whether Rambus's filing of lawsuits could be used as evidence to support a finding that it violated antitrust laws by engaging in an overall scheme to monopolize.  July 7, 2006 Order at 4:5-5:1.  The Court also stated that it made "no ruling . . . as to whether any damages can be recovered for litigation related activities if Hynix were to show some anti-competitive course of conduct by Rambus."  July 7, 2006 Order at 5:1-3.

Rambus argues that the July 7, 2006 Order compels the conclusion that none of the Manufacturers can recover attorneys' fees relating to their defense against Rambus's patent infringement suits.  This argument fails for several reasons.  First, it is predicated on the assumption that the Manufacturers' antitrust claims are premised solely on Rambus's filing of the

---

[1]    Rambus's *Noerr-Pennington* motion for summary adjudication was not directed against Micron or Nanya, and they have not had the opportunity to address the issues presented by a *Noerr-Pennington* defense.  Micron and Nanya reserve the right to oppose any *Noerr-Pennington* arguments made by Rambus, and they additionally reserve the right to advocate matters not addressed by the Court's July 6, 2006 Order.  Among other things, the Court's July 6, 2006 Order
(footnote continued)

patent infringement lawsuits; they are not.  Second, it ignores the long line of established authority holding that an antitrust claim can be predicated on a scheme to unlawfully monopolize a market even if litigation is one element of the scheme.  Finally, this Court has already held in its August 2, 2006 Order that Hynix's antitrust claims – which are similar to Micron and Nanya's antitrust claims –  were actionable and that Hynix was entitled to seek attorneys' fees as damages and to have its claims tried to a jury.

### 1.    The Manufacturers' Fraud Claims Are Not Based Solely on Rambus's Filing of Patent Lawsuits

As Rambus must concede, the Court's July 7, 2006 Order only addressed antitrust liability based solely on the filing of litigation.  But the Manufacturers' antitrust claims allege a fraudulent scheme of anticompetitive conduct that is not solely dependent on Rambus's litigation.  Specifically, they assert that Rambus has engaged in a subversive scheme to defraud the open-industry standards setting process with the intent to establish an illegal monopoly over the market for DRAM interface technology.  *See, e.g.,* Micron's First Amended Answer and Counterclaims ("Micron's Answer") ¶¶ 83, 115-16, 266-69; Hynix's Answer to Rambus's Reply to Hynix's First Amended Answer and Counterclaims ("Hynix's Answer") ¶ 167; Nanya's First Amended Answer and Counterclaims ("Nanya's Answer") ¶ 187-88.  This scheme was carried out by Rambus when it joined JEDEC and then manipulated its members by making numerous affirmative misrepresentations regarding its patents and patent applications and by failing to disclose critical information relating to the patents, applications, and intended applications it believed related to the work of JEDEC.  Micron's Answer ¶¶ 115-120, 288-91; Hynix's Answer ¶ 68.108, 202-203; Nanya's Answer ¶ 189.  Rambus's manipulation of JEDEC and its fraudulent conduct caused the Manufacturers to adopt high-performance DRAM interface technologies compatible with the very technologies Rambus now claims to own.  Micron's Answer ¶ 269; Hynix's Answer ¶ 205; Nanya's Answer ¶¶ 190, 216.  Rambus strategically waited until the standards had been adopted

did not address *Handgards* liability.  This opposition brief explains why the Manufacturers are entitled to a jury trial based on the Court's August 2, 2006 Order.

1    and the industry had spent billions of dollars in reliance on the standards before asserting its

2    patents against the Manufacturers.  Micron's Answer ¶ 136; Hynix's Answer ¶ 195.72; Nanya's

3    Answer ¶¶ 215-16.  Thus, as a direct result of Rambus's deceptive and fraudulent conduct, the

4    Manufacturers have been embroiled in patent litigation against Rambus for years, in multiple fora,

5    and at considerable expense.  Micron's Answer ¶ 170; Hynix's Answer ¶ 212; Nanya's Answer ¶

6    195.

7                    **2.      The Relevant Case Law Supports a Finding That Rambus Has
                             Engaged in Actionable Conduct For Which Damages Are Recoverable**

8            Rambus's argument that attorneys' fees are not recoverable as damages for its antitrust

9    violations also is not supported by the law.  It is well-recognized that a party can recover monetary

10   damages for an antitrust claim based on a scheme to violate the antitrust laws, even if litigation is

11   part of the scheme.  *Rex Chainbelt Inc. v. Harco Prods., Inc.*, 512 F.2d 993, 1004 (9th Cir. 1975);

12   *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 994-95 (9th Cir. 1979).

13          In *Handgards,* the Ninth Circuit recognized that "antitrust liability based on patent

14   enforcement conduct" may be imposed based on allegations of an "overall scheme to monopolize

15   independent of the mere commencement of an infringement suit." *Id.* at 996.  In *Rex Chainbelt*,

16   the court was presented with the question of whether an accused infringer could recover attorneys'

17   fees incurred in its defense of a patent infringement suit as damages resulting from an antitrust

18   violation.  *Rex Chainbelt*, 512 F.3d at 1005-06.  The Ninth Circuit held that the fees would be

19   recoverable if "the patent infringement suit was brought in furtherance and as [an] integral part of

20   a plan to violate the antitrust laws." *Id.* In *Clipper Exxpress v. Rocky Mountain Motor Tariff

21   Bureau, Inc.*, 690 F.2d 1240, 1264 (9th Cir. 1982), the Ninth Circuit affirmed its prior holdings

22   and stated that *Noerr-Pennington* immunity does not apply to a scheme to violate the antitrust

23   laws where the petitioning activity is only one part of the scheme.  *Id.*  Specifically, the Ninth

24   Circuit stated: "If Clipper can prove that the defendants engaged in activities which violated the

25   antitrust laws, those violations do not become immune simply because the defendants used legal

26   means – protests before the ICC – as means to enforce the violations." *Id.*  In *Kobe, Inc. v.

27   Dempsey Pump Co.*, 198 F.2d 416, 425 (10th Cir. 1952), the Tenth Circuit acknowledged that an

28

antitrust action is proper when it is based on more than the plaintiff's bringing of an infringement action. *Id.* The court held:

> The infringement action and the related activities, of course, in themselves were not unlawful, and standing alone would not be sufficient to sustain a claim for damages which they may have caused, but when considered with the entire monopolistic scheme which preceded them we think, as the trial court did, that they may be considered as having been done to give effect to the unlawful scheme.

*Id.* These authorities demonstrate that, because the Manufacturers are alleging an illegal scheme, they may recover damages.

### 3. The Court's Prior Ruling on Rambus's Motion to Withdraw Supports a Finding That the Jury Should Decide the Antitrust Claims

In addition, this Court has already recognized that the conduct alleged by the Manufacturers in their antitrust claims constitutes an "overall course of conduct" that is actionable under *Rex Chainbelt* and its progeny. In its August 2, 2006 Order denying Rambus's Motion to Withdraw Jury Demand, the Court extensively analyzed the issue of whether Hynix could recover attorneys' fees as compensatory damages for injuries caused by Rambus's scheme of anticompetitive conduct, including its fraudulent activities at JEDEC. The Court ruled in Hynix's favor, noting that Hynix was asserting antitrust claims encompassing much more than the mere procurement and enforcement of Rambus's patents. Order Denying Rambus's Motion to Withdraw Jury Demand with Respect to Phase III Trial, dated August 2, 2006 ("August 2, 2006 Order"), at fn. 2. As a result, the Court held that Hynix was entitled to a jury trial. *Id.* at 10:7. The Court relied on the same authorities cited in Section I.A.2., *supra* – *Rex Chainbelt, Handgards, Clipper Exxpress*, and *Kobe* – to support its position. *See* August 2, 2006 Order at 4:19-9:15.

Although Rambus argued in its prior motion, as it does here, that *Clipper Exxpress, Rex Chainbelt,* and *Kobe,* had been overruled by *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993), the Court rejected this argument in its Order. August 2, 2006 Order at 9:3-15. The Court distinguished

1  *Prof'l Real Estate Advisors* on the ground that it "was not dealing with a situation where the

2  institution of the suit was part of an overall scheme to monopolize." *Id.*

3      Rambus has presented no reason why the Court's August 2, 2006 ruling should be

4  disturbed at this late date. Because the logic underlying the Court's ruling applies with equal force

5  to Micron and Nanya, Rambus's request to strike the jury demands relating to Micron and Nanya's

6  antitrust claims should be denied with prejudice.

7      **B.    Micron's Breach of Contract Claim Should Also Be Tried to the Jury**

8      Rambus also has failed to provide any basis for this Court to deny Micron its right to a jury

9  trial on its breach of contract claim, a claim that is inherently legal in nature. Indeed, Rambus

10  concedes the weakness of this argument by relegating it to a footnote. Rambus states:

11          Micron also asserts that its contract claim should be tried to a jury. As
           discussed above, the Court's order granting Rambus's *Noerr-Pennington*
12          motion precludes the Manufacturers from seeking attorneys' fees as
           damages on their contract claim.

13  *See* Rambus's Motion to Strike Jury Demands at 9 n.4. This argument misstates the Court's ruling.

14  The July 7, 2006 Order Granting Rambus's Motion for Summary Adjudication of *Noerr-*

15  *Pennington* Immunity did not hold that attorneys' fees were not recoverable for breach of contract.

16  Rather, the Court stated that it made "no ruling . . . as to whether any damages can be recovered

17  for litigation related activities if Hynix were to show some anti-competitive course of conduct by

18  Rambus." *See* July 7, 2006 Order at 5:1-3. Tellingly, Rambus's argument regarding Micron's

19  contract claim makes no reference to the August 2, 2006 Order on Rambus's Motion to Withdraw

20  Jury Demand which held that attorneys' fees are recoverable damages.

21      In addition, as explained above, a *Noerr-Pennington* immunity ruling does not shield

22  Rambus from liability for breaching its contractual duties to JEDEC and Micron. Micron's breach

23  of contract claim, like its antitrust claim, is not exclusively based on Rambus's filing of lawsuits.

24  Micron's Answer ¶¶ 284-86. Micron alleges that Rambus, as a member of JEDEC, was

25  contractually obligated to disclose its patents and patent applications to JEDEC. *Id.* ¶ 282. It

26  further alleges that, because Rambus failed to make the required disclosures, Micron invested in

27  the development of DRAM technology that is now accused of infringement. *Id.* ¶ 170. Micron

28

1   has incurred considerable fees defending against these infringement suits that it would not have

2   incurred if the patents and patent applications had been properly disclosed. *Id.*

3       Micron's attorneys' fees defending against Rambus's claims are recoverable as damages.

4   The proper measure of damages in California "is to place the injured party in the same position he

5   would have held were it not for the breach." *Brandon & Tibbs v. George Kevorkian Accountancy*

6   *Corp.*, 226 Cal. App. 3d 442, 458 (Cal. Ct. App. 1990).  It is commonly recognized that "a party

7   may recover attorney fees not only on a statutory/contractual fee-shifting basis, but also as

8   consequential damages in breach of contract actions when those fees are foreseeable and

9   proximately caused by the breach."  *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048,

10  1057 (N.D. Cal. 2004) (Walker, J.) (citing *De La Hoya v. Slim's Gun Shop*, 80 Cal. App. 3d Supp.

11  6, 10 (Cal. Ct. App. 1978)).

12      Rambus's request to remove Micron's contract claim from the jury is therefore

13  unsupported, and should be denied with prejudice.

14      **C.    The Manufacturers' Fraud Claims Should be Tried to the Jury With the**
        **Antitrust and Breach of Contract Claims**

15

16      Rambus also contends that the Manufacturers' intentional fraud and negligent

17  misrepresentation claims must be tried to the bench because the Manufacturers are not entitled to

    compensatory, nominal, or punitive damages.[2]  Specifically, Rambus argues that the
18

19  Manufacturers' fraud claims sound in equity because: (1) attorneys' fees cannot be awarded as

20  compensatory damages; and (2) nominal and punitive damages are unavailable.  Again, Rambus's

21  argument lacks merit.  The law is clear that the Manufacturers will be entitled to nominal

22  damages, *at minimum*, as well as compensatory and punitive damages, provided they can show

23  that Rambus's deceitful and negligent misrepresentations and omissions harmed them.  Even the

24

25      [2]  Rambus made this same argument against Hynix in its Motion to Confirm Withdrawal of
    Jury Demand With Respect to Fraud Claim filed January 5, 2007.  The Court heard oral argument
    on this motion on February 16, 2007 but has not yet issued a ruling.  Hynix incorporates by
26  reference the arguments it made in its Opposition to Rambus's Motion filed January 19, 2007 and
    its arguments at the oral argument hearing on February 16, 2007.  Courtesy copies of the prior
27      (footnote continued)

28

authorities that Rambus cites in its Motion are in accord with this basic principle. For example, *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1004 (Cal. 1993), *Kizer v. County of San Mateo*, 53 Cal.3d 139, 147 (Cal. 1991), *Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 238 (Cal. Ct. App. 2005), and *Cheung v. Daley*, 35 Cal. App. 4th 1673, 1676-77 (Cal. Ct. App. 1995), all merely stand for the proposition that a party must show actual harm or injuries to recover damages for a fraud claim.

> **1.   Attorneys' Fees Are Viable Compensatory Damages for the Manufacturers' Fraud Claims**

The Manufacturers have stated a viable claim for compensatory damages for their intentional fraud and negligent misrepresentation claims. Under California law, the Manufacturers may recover in tort *all* damages proximately caused by Rambus's fraudulent conduct, including fees incurred while defending against the patent infringement suits filed by Rambus. *See* Cal. Civ. Code § 3333 ("For the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby."). The California Court of Appeal has expressly noted that the "concept behind Civil Code section 3333" is merely "to make the successful plaintiff whole." *Overgaard v. Johnson*, 68 Cal. App. 3d 821, 824 (Cal. Ct. App. 1977). The California Court of Appeal also has stated that § 3333 is to be liberally construed. *Hartong v. Partake*, 266 Cal. App. 2d 942, 969 (Cal. Ct. App. 1968). In keeping with this principle, California courts have expanded the "American Rule," codified by California Civil Code § 1021, to allow for the recovery of attorneys' fees, so long as the fees were proximately caused by the tort. *See Brandt v. Superior Court*, 37 Cal.3d 813, 817 (Cal. 1985); *Cassim v. Allstate Ins. Co.*, 33 Cal.4th 780, 806 (Cal. 2004) (noting that attorneys' fees are recoverable as damages in cases of false arrest and malicious prosecution).[3]   It is irrelevant

---

briefing and a rough transcript of the February 16, 2007 are attached as Exhibits F-I to the Declaration of Linda Brewer.

[3]   Rambus narrowly reads *Gray v. Don Miller & Assoc., Inc.*, 35 Cal.3d 498, 505-508 (Cal. 1984), and its progeny as standing for the proposition that the 'tort of another' doctrine prohibits the recovery of attorneys' fees under the present circumstances. In fact, the general principle espoused in *Gray* is that attorneys' fees are recoverable when a party incurs fees in order to protect

   (footnote continued)

1   whether the fees were incurred in a prior action or in the action at bar.  *Brandt*, 37 Cal.3d at 818

2   ("The fact that . . . the fees claimed as damages are incurred in the very lawsuit in which their

3   recovery is sought, does not in itself violate [California Civil Code § 1021]").

4        Rambus's argument that the "American Rule" precludes recovery on a fraud claim for

5   attorneys' fees incurred as a result of the need to defend against Rambus' patent infringement

6   claims was exhaustively examined, and rejected, by Judge Payne in *Infineon*.  *See Rambus, Inc. v.*

7   *Infineon Tech. AG*, 164 F. Supp. 2d 743, 759-764 (E.D. Va. 2001), *rev'd on other grounds*, 318

8   F.3d 1081 (Fed. Cir. 2003).[4]  Judge Payne's thorough analysis of the relevant authorities pertaining

9   to this issue persuasively illustrates the weaknesses in Rambus's interpretation of the American

10  Rule.[5]  Specifically, in *Infineon*, after acknowledging that the American rule ordinarily prohibits

11  the recovery of attorneys' fees incurred in prior litigation against the same defendant, Judge Payne

12  noted that the rule differs "if the plaintiff has a cause of action for financial loss resulting directly

13  from the previous action."  *Id.* at 760 (quoting 22 Am. Jur. 2d Damages § 617 (1988)).  He further

14  noted that "an exception to the general rule exists if the wrongful action of the defendant has

15  placed the plaintiff in such a position that it is necessary to incur legal expenses to protect his

16  interest." As stated by Judge Payne:

17

_____

18  a property interest that has been threatened as a result of fraudulent conduct.  *Id.* at 507.  The
    Manufacturers respectfully submit that this underlying principle supports a finding that attorneys'
19  fees are recoverable here.  Were it not for Rambus's fraudulent misrepresentations and omissions
    regarding its patents and patent applications, the Manufacturers would have never adopted the
20  technologies purportedly covered by Rambus's patents and would not have incurred the substantial
    fees relating to the defense of the patent litigation that Rambus has initiated.
21
    [4]  Fraud claims nearly identical to the claims presented here were submitted to the jury in
22  *Infineon*, and Rambus **conceded** on appeal that this was proper.  *See Rambus, Inc. v. Infineon*
    *Tech. AG*, 318 F.3d 1081, 1086 (Fed. Cir. 2003) ("Infineon's fraud counterclaims were tried to a
23  jury . . . . [and on] appeal, neither party contests the district court's submission of this issue to the
    jury.").  Although the Federal Circuit ultimately concluded that the evidence Infineon presented at
24  trial was insufficient to sustain a finding of fraud, the Federal Circuit did not disapprove of the
    submission of the fraud claims to a jury.  *Id.* at 1105.
25
    [5]  Although Judge Payne analyzed Infineon's fraud claim under Virginia law, there are no
26  distinctions between Virginia and California law applicable here.  In fact, Judge Payne engages in
    an analysis of California law – as well as the law of other jurisdictions – before reaching his
27  ultimate conclusions.  *Inifineon Tech. AG,* 164 F. Supp. 2d at 759-63.

28

> [T]he fundamental premise upon which attorneys' fees were allowed in [the 'tort of another'] cases is closely akin to the rationale . . . for allowing attorneys' fees to be an element of damage or injury in certain intentional torts: when a party's intentionally tortious act forces the other party necessarily to incur attorneys' fees as a direct consequence of that act, the party should be able to recover the attorneys' fees consequentially expended.  Whether that underlying action was between the plaintiff and the tortfeasor or the plaintiff and a third party, the underlying rationale remains the same.

*Id.* at 760, 762.

Judge Payne's logic applies to the instant case.  As in *Infineon*, the Manufacturers would not be facing any liability for patent infringement had they not relied on Rambus's affirmative misrepresentations and omissions regarding its intellectual property rights.  Imposing an artificial restriction on the Manufacturers' right to fully recover for this injury – as Rambus seeks to do here – is untenable.  Accordingly, Rambus's argument that the Manufacturers do not have a viable compensatory damages claim should be rejected by the Court.

### 2. The Manufacturers Are Also Entitled to Nominal Damages for Their Fraud Claims

However, even if this Court were to find that the Manufacturers are not entitled to recover attorneys' fees as compensatory damages for their fraud claims under California law, the Manufacturers are nevertheless entitled to recover nominal damages because they have identified specific unquantifiable ways in which they have been damaged by Rambus's tortious conduct, such as the suppression of industry acceptance of alternatives to Rambus's proprietary technology.  *See, e.g.,* Micron's Answer ¶ 172; *see also* Hynix's Answer to Interrogatory No. 26 (erroneously numbered 11), dated Sept. 4, 2001, attached to Hynix's Opp. to Rambus' Motion to Withdraw Jury Demand With Respect to Phase III of Trial, Yost Decl., Ex. A at 65-71 (noting that Hynix's damages include a reduction in "the price of JEDEC-standard SDRAM . . . due to fear, uncertainty and doubt spawned by Rambus's patent threats").[6]

---

[6]   In the prior briefing on this issue, Rambus's primary argument – which, importantly, is the *sole* argument it asserts in the instant Motion – was that Hynix was precluded from recovering nominal damages because it did not specifically request an award of nominal damages in its
(footnote continued)

1    California law holds that nominal damages may be awarded upon a showing of

2    unquantifiable harm.  For example, in *McLaughlin v. National Union Fire Ins. Co.*, 23 Cal. App.

3    4th 1132,  1164 (Cal. Ct. App. 1994), the court held that nominal damages may be awarded when

4    there is difficulty in ascertaining the exact amount of damages.  *Id.*; *Finney v. Lockhart*, 35 Cal.2d

5    161, 164 (Cal. 1950) (noting that an award of nominal damages in the compensatory class does

6    not necessarily imply a finding that no more actual damage was sustained).  As a result, such

7    damages are warranted here.  Because the Manufacturers are entitled to nominal damages, and

8    nominal damages are a legal remedy, the Manufacturers' fraud claims remain decidedly legal and

9    must be tried to the jury.  *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479-80, 82 S. Ct. 894, 8 L.

10   Ed. 2d 44 (1962); *see Cheung v. Daley*, 35 Cal. App. 4th 1673, 1676-77 (Cal. Ct. App. 1995)

11   (noting that nominal damages are the "equivalent" of compensatory damages); *U.S. v. Marlon*, 173

12   F.3d 1213, 1219 n.5 (9th Cir. 1999) (noting that nominal damages are a "legal, not equitable

13   remedy").

14                    **3.        The Manufacturers Are Also Entitled to Punitive Damages**

15   Rambus's assertion that the "Manufacturers have no viable claim for punitive damages" is

16   incorrect.  Even the authorities Rambus cites in its own Motion provide that punitive damages can

17   be premised on either an award of nominal damages or compensatory damages.  *See, e.g., Kizer*,

18   53 Cal.3d at 147 (noting that nominal damages "can be used to support an award of punitive

19   damages"); *accord Brewer v. Second Baptist Church,* 32 Cal.2d 791, 801-802 (Cal. 1948) (noting

20   that "[t]he requirement of 'actual damages' imposed by section 3294 [of the California Civil Code]

21   is simply the requirement that a tortious act be proven if punitive damages are to be assessed.").

22   Here, the Manufacturers are seeking both compensatory and nominal damages. Because punitive

23   damages can be premised on either type of damage, they are recoverable.  The fact that the

24   _____

25   Answer and Counterclaims.  Rambus has never provided any authority for this proposition.
     Additionally, Rambus completely ignores the fact that Micron ***has*** specifically requested this

26   relief, and both Hynix and Nanya have requested "such other and further relief as the Court may
     deem appropriate."  *See* Micron's Answer at 60:2 (requesting an award of nominal damages);

27        (footnote continued)

28

1   Manufacturers are entitled to seek punitive damages further supports the conclusion that the fraud

2   claims must be tried by the jury.

3          Moreover, United States Supreme Court precedent dictates that the Court err on the side of

4   a jury trial. As this Court has previously observed, since "the right to jury trial is a constitutional

5   one[,]. . [the court's] discretion is very narrowly limited and must, wherever possible, be exercised

6   to preserve jury trial." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510, 79 S. Ct. 948, 3 L.

7   Ed. 2d 988 (1959).

8          **D.     The Counterclaims and Affirmative Defenses Directly Related to the
                Antitrust, Contract, and Fraud Claims Should Be Presented to the Jury**

9
10         Finally, in the conclusion of its Motion, Rambus contends that Micron and Nanya do not

11  have the right to a jury trial on certain counterclaims and affirmative defenses. Specifically,

12  Rambus maintains that the following claims and defenses should not be presented to the jury: (1)

13  Micron's counterclaim for declaratory judgment of unenforceability based on violations of

14  antitrust laws and waiver; (2) Micron and Nanya's affirmative defense of waiver;[7] (3) Micron's

15  "damages offset" defense;[8] and (4) Micron's defense of unenforceability based on violations of

16  antitrust laws and waiver. Rambus's argument ignores United States Supreme Court and Federal

17  Circuit law holding that the same finder of fact must resolve all factual issues relating to legal

18  claims, equitable claims, and affirmative defenses that share a common set of facts. *See Beacon*

19  *Theatres, Inc.*, 359 U.S. at 509.

20         **1.     The Counterclaims and Affirmative Defenses At Issue In Rambus's
                Motion Are Inextricably Intertwined With the Legal Claims**

21         It is beyond dispute that the fraud, antitrust, and breach of contract claims in this case all

22  arise out of the same facts and circumstances. They all relate to Rambus's deceptive and

23  _____

24  Nanya's Answer at 45:19 (requesting "such other and further relief as the Court may deem
    appropriate"); Hynix's Answer at 76:18 (same).

25         [7]   A waiver defense rests upon a showing that the opposing party intentionally relinquished "a

26  known right after knowledge of the facts." *DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café &
    Takeout III, Ltd.*, 30 Cal. App. 4th 54, 60 (Cal. Ct. App. 1994).

27

28

1   anticompetitive conduct.  For example, in the parties' July 31, 2007 Joint Case Management

2   Conference Statement, Micron's antitrust claims are described as arising out of "Rambus's

3   anticompetitive conduct at JEDEC, the continuing exercise of its unlawful monopoly and

4   deception outside of JEDEC, and Rambus's conduct during the course of its relationships with

5   Micron, other DRAM manufacturers, and others."  *See* July 31, 2007 Joint Case Management

6   Conference Statement at Ex. 2.[9]  Micron's breach of contract claim is similarly described as arising

7   out of "Rambus's failure to perform the agreements, understandings, duties, and obligations of

8   JEDEC members to each other and to JEDEC."  *Id.*   And the fraud and negligent

9   misrepresentation claims asserted by the Manufacturers are uniformly described as arising out of

10  Rambus's misrepresentations and omissions at JEDEC and throughout the course of Rambus's

11  relationships with the Manufacturers.  *Id.* at Ex. 1-3.

12       The issues of unenforceability, waiver, and "damages offset" are directly related to the

13  antitrust, breach of contract, and fraud claims.  Micron's counterclaim for declaratory judgment of

14  unenforceability based on violations of antitrust laws and its related affirmative defense require

15  resolution of the same factual issues underlying the antitrust claims.  Both will require a factual

16  determination that Rambus engaged in anticompetitive conduct.  Micron's Answer at ¶¶ 98-280.

17  Micron and Nanya's waiver defense, which is premised on their contention that Rambus has

18  waived its right to enforce any of the patents-in-suit, overlaps factually with their fraud claims.  To

19  determine whether waiver applies requires an analysis of Rambus's omissions and representations

20  made to JEDEC members.  *See, e.g.,* Micron's Answer at ¶ 71; July 31, 2007 Joint Case

21  Management Conference Statement at Ex. 2.  The questions of whether Rambus disclosed its

22

23       [8]  In Micron's Answer, Micron requests "damages offset" on the grounds that "Rambus's
    claims are barred, in whole or in part, to the extent that Rambus, its agents, or affiliates caused
24  Micron to suffer injury or damage."  Micron's Answer at ¶ 78.

25       [9]  The descriptions for Hynix and Nanya's antitrust and fraud claims are no different.  For
    instance, Hynix states that its antitrust claims are premised on "Rambus's anticompetitive conduct
26  at JEDEC; the continuing exercise of its unlawful monopoly and deception outside of JEDEC; and
    Rambus's conduct arising out of the Rambus/Hynix RDRAM relationship."  *Id.* at Ex. 1.  Nanya's
27  description is virtually the same, but notes that Rambus's anticompetitive conduct also
    "include[es] the enforcement of patents known to be invalid."  *Id.* at Ex. 3.

28

patents and patent applications to the members of JEDEC or made misleading statements or omissions are factual issues that are common to the fraud claim and waiver defense. *DRG/Beverly Hills, Ltd.*, 30 Cal. App. 4th at 60 (waiver defense rests upon a showing that the opposing party intentionally relinquished a known right). The "damages offset" defense and the fraud claims are also factually interrelated because the defense is premised on Micron's assertion that the damages Rambus is seeking should be negated or "offset" due to Rambus's fraudulent conduct. California courts acknowledge that offset is a proper remedy to fraud. *See, e.g., Esparza v. Specht,* 55 Cal.App.3d 1, 9 n.5 (Cal. Ct. App. 1976).

### 2. The Right to a Jury Trial Attaches to All Factual Issues Associated with a Legal Claim

Rambus's attempt to focus the Court on whether certain claims and defenses are "equitable" in nature is largely irrelevant. If an affirmative defense is related to, or factually intertwined with, a legal claim, the Court must present the common factual issues underlying the defense to the jury. *Dairy Queen, Inc.*, 369 U.S. at 479 (holding that a right to a jury trial attaches to factual issues associated with the legal claims in a case); *Beacon Theatres, Inc.*, 359 U.S. at 510-11.

Moreover, the United States Supreme Court in *Beacon Theatres* expressly cautioned against the fragmenting of claims and defenses relating to an antitrust cause of action into separate trials. *Id.*, 359 U.S. at 509. As noted by the Supreme Court, "[s]ince the issue of violation of the antitrust laws often turns on the reasonableness of a restraint on trade in the light of all the facts . . . it is particularly undesirable to have some of the relevant considerations tried by one factfinder and some by another." *Id.* (citing *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 60, 31 S.Ct. 502, 515, 55 L.Ed. 619 (1911)).

The Federal Circuit closely follows the holding of *Beacon Theatres*. In *Cabinet Vision v. Cabnetware*, 129 F.3d 595, 600 (Fed. Cir. 1997), the Federal Circuit considered whether a Walker process claim and an affirmative defense of inequitable conduct that shared common elements should be presented to a jury. The Federal Circuit concluded that the district court lacked discretion to deny a jury right as to the factual questions relevant to both the antitrust claim and

1   the unenforceability defense.  *Id.* (citing *Beacon Theatres, Inc.*, 359 U.S. at 501).  The Federal

2   Circuit very recently reaffirmed this basic principle with respect to a statutory claim for correction

3   of inventorship and overlapping state law claims of fraud, breach of fiduciary duty, and unjust

4   enrichment.  *See Shum v. Intel Corp.*, – F.3d –, 2007 WL 2404718 (Fed. Cir. Aug. 24, 2007)

5   ("Given the co-pendency of the asserted fraud claim, a jury should determine the facts regarding

6   inventorship").[10]

7   **III.    CONCLUSION**

8         For the foregoing reasons, the Manufacturers respectfully request that Rambus's Motion to

9   Strike Jury Demands be denied with prejudice.  A jury trial should proceed on January 22, 2008

10  on the Manufacturers' antitrust, breach of contract, fraud, and negligent misrepresentation claims,

11  as well as the factually related affirmative defenses and counterclaims of unenforceability based

12  on violations of antitrust laws, waiver, and damages offset.

13  DATED:  October 5, 2007              Respectfully submitted,

14                                       By  /s/
15                                          Harold A. Barza
                                            Robert Becher
16                                          QUINN EMANUEL URQUHART OLIVER & HEDGES

17                                          Jared Bobrow
                                            John Beynon
18                                          WEIL, GOTSHAL & MANGES LLP

                                            Attorneys for MICRON TECHNOLOGY, INC., and
19                                          MICRON SEMICONDUCTOR PRODUCTS, INC.

20

21

22

23

24

25

26  _____

[10]   However, if the Court finds that certain counterclaims or defenses do not share common
27  factual issues with the legal claims, the Court may submit the claim or defense to an advisory jury
    and does not need Rambus's consent to do so.  *See* Fed. R. Civ. P. 39(c).
28

1

2
                                       By _/s/_____
3
                                         Allen Ruby
                                         RUBY & SCHOFIELD
4

                                         Patrick Lynch
5
                                         Kenneth O'Rourke
                                         Wallace M. Allan
6
                                         WEIL, GOTSHAL & MANGES LLP

7
                                         Kenneth L. Nissly
8
                                         Susan van Keulen
                                         Geoffrey H. Yost
9
                                         THELEN REID BROWN RAYSMAN & STEINER, LLP

10
                                         Daniel J. Furniss
                                         Theodore G. Brown, III
11
                                         Jordan Trent Jones
                                         TOWNSEND and TOWNSEND and CREW LLP

12
                                         Attorneys for
                                         HYNIX SEMINCONDUCTOR INC., HYNIX
13
                                         SEMICONDUCTOR AMERICA INC., HYNIX
                                         SEMICONDUCTOR U.K. LTD., and HYNIX
14
                                         SEMICONDUCTOR DEUTSCHLAND GmbH

15

16
                                       By__/s/_____
17
                                         Robert E. Freitas
                                         Jan Ellard
                                         ORRICK, HERRINGTON & SUTCLIFFE LLP
18
                                         Menlo Park, CA  94025

19
                                         Attorneys for
                                         NANYA TECHNOLOGY CORPORATION and NANYA
20
                                         TECHNOLOGY CORPORATION U.S.A.

21

22

23

24

25

26

27

28

Case No. C 00-20905 RMW
MANUFACTURERS' OPPOSITION TO RAMBUS'S MOTION TO STRIKE JURY DEMANDS

1        Pursuant to General Order No. 45, Section X(B) regarding signatures, I attest under

2   penalty of perjury that concurrence in the filing of this document has been obtained from Allen

3   Ruby and Robert Freitas.

4   Dated: October 5, 2007

5                                                    By  /s/
                                                        Linda Brewer

6                                                    QUINN EMANUEL URQUHART OLIVER & HEDGES

7                                                    Attorneys for MICRON TECHNOLOGY, INC., and
                                                     MICRON SEMICONDUCTOR PRODUCTS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    -18-                          Case No. C 00-20905 RMW