Gregory P. Stone (State Bar No. 078329)
Steven M. Perry (State Bar No. 106154)
Sean Eskovitz (State Bar No. 241877)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702
Email: *gregory.stone@mto.com;*
*steven.perry@mto.com; sean.eskovitz@mto.com*

Rollin A. Ransom (State Bar No. 196126)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013-1010
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600
Email: *rransom@sidley.com*

Peter A. Detre (State Bar No. 182619)
Carolyn Hoecker Luedtke (State Bar
No. 207976)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California  94105-2907
Telephone:  (415) 512-4000
Facsimile:  (415) 512-4077
Email: *peter.detre@mto.com;*
*carolyn.luedtke@mto.com*

Pierre J. Hubert (Pro Hac Vice)
Craig N. Tolliver (Pro Hac Vice)
McKOOL SMITH PC
300 West 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744
E-mail: *phubert@mckoolsmith.com;*
*ctolliver@mckoolsmith.com*

Attorneys for Defendant and Counterclaim-
Plaintiff RAMBUS INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC.; HYNIX SEMICONDUCTOR AMERICA, INC.; HYNIX SEMICONDUCTOR U.K. LTD.; and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH, <br><br> Plaintiff, <br><br> vs. <br><br> RAMBUS INC., <br><br> Defendant. | CASE NO. CV 00-20905 RMW <br><br> **RAMBUS'S PROPOSED JURY INSTRUCTIONS (POST-EVIDENCE)** <br><br> Pretrial Date:  December 13-14, 2007 <br> Time:  2:00 p.m. <br> Trial Date:  January 22, 2008 <br> Time:  1:30 p.m. <br> Location:  Courtroom 6 <br> Judge:  Hon. Ronald M. Whyte |

| | |
|---|---|
| RAMBUS INC., | CASE NO. C 05-00334 RMW |
|            Plaintiff, | |
|     v. | |
| HYNIX SEMICONDUCTOR INC., et al., | |
|            Defendants. | |

| | |
|---|---|
| RAMBUS INC., | CASE NO. C 06-00244 RMW |
|            Plaintiff, | |
|     vs. | |
| MICRON TECHNOLOGY, INC., and MICRON SEMICONDUCTOR PRODUCTS, INC., | |
|            Defendant. | |

1    Defendant and Counterclaim-Plaintiff Rambus Inc. ("Rambus") respectfully submits the

2    following proposed jury instructions.  The standard instructions were taken from the Ninth Circuit

3    Manual of Model Civil Jury Instructions, available at http://www.ce9.uscourts.gov.  The

4    substantive instructions were drawn largely from the Model Jury Instructions published by the

5    ABA Section of Antitrust Law (2005 edition) (hereinafter "ABA Model Instructions") and BAJI

6    (Fall 2007 edition).  The substantive instructions relate to the Plaintiffs' monopolization,

7    attempted monopolization and fraud claims.[1]

8    Rambus's proposed post-evidence instructions 3-8, 58 and 59 are now agreed-upon and

9    are being filed as such by the Manufacturers.

10

11   DATED:   December 7, 2007               MUNGER, TOLLES & OLSON LLP

12                                          SIDLEY AUSTIN LLP

13                                          McKOOL SMITH PC

14

15                                          By:              /s/ Steven M. Perry
                                                           Steven M. Perry
16
                                            Attorneys for Defendant and Counterclaim-Plaintiff
17                                          RAMBUS INC.

18

19

20

21

22

23

24

25
     _____

26   [1] Rambus continues to assert that the Plaintiffs have no right to a jury on any of their claims.  By
     submitting these instructions, Rambus does not waive that argument or its objections to the use of a jury.
27   Rambus reserves the right to amend or supplement these instructions prior to the close of trial.  In the
     instructions that follow, where Rambus has substituted the parties' names for the words "defendant" or
28   "plaintiff," or made similarly minor changes, it has not indicated that the instruction has been modified.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INSTRUCTION NO. 1**

## **DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW**

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case.  A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important.  You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return— that is a matter entirely up to you.

## INSTRUCTION NO. 2

## WHAT IS EVIDENCE

The evidence from which you are to decide what the facts are consists of:

(1)     the sworn testimony of any witness;

(2)     the exhibits which have been received into evidence; and

(3)     any facts to which the lawyers have agreed or stipulated.

1

**<u>INSTRUCTION NO. 9</u>**

2

**MONOPOLIZATION - GENERAL**

3  *Elements*

4       The plaintiffs allege that each of them was injured by the defendant's unlawful

5  monopolization of a worldwide market for DRAM interface technology.  To prevail on this claim,

6  each plaintiff must prove each of the following elements:

7       **First**, that the alleged market is a valid antitrust market;

8       **Second**, that the defendant possessed monopoly power in that market;

9       **Third**, that the defendant "willfully" acquired or maintained monopoly power in that

10 market by engaging in anticompetitive conduct;

11      **Fourth**, that the defendant's conduct occurred in or affected interstate [*or foreign*]

12 commerce; and

13      **Fifth**, that that plaintiff was injured in its business or property because of the defendant's

14 anticompetitive conduct.

15      If you find that a plaintiff has failed to prove any of these elements, then you must find for

16 defendant and against that plaintiff on this claim.  If you find that a plaintiff has proved each of

17 these elements, then you must find for that plaintiff and against defendant on this claim.

18

19 Authority:     ABA Section of Antitrust Law, Model Jury Instructions in Civil Antitrust Cases

20                  (2005) (hereinafter "ABA Model Instructions"), p. C-2 (modified).

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>INSTRUCTION NO. 10</u>**

**MONOPOLIZATION – GENERAL**

*Monopoly Power Defined*

Monopoly power is the power to control prices and exclude competition in a relevant antitrust market.  More precisely, a firm is a monopolist if it can profitably raise prices substantially above the competitive level for a significant period of time.  To prove its monopolization claim, one of the elements plaintiff must prove is that defendant has monopoly power in a relevant antitrust market.  However, monopoly power, in and of itself, is not unlawful.

I will provide further instructions about how you may determine whether the plaintiffs have met their burden of proving monopoly power in a relevant market.

Authority:       ABA Model Instructions, p. C-4.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 11**

**MONOPOLIZATION – GENERAL**

*Relevant Market – General*

The Plaintiffs must prove by a preponderance of the evidence that the defendant had monopoly power in a relevant market.  Defining the relevant market is essential because you are required to make a judgment about whether Rambus has monopoly power in a properly defined economic market.  To make this judgment, you must be able to determine what, if any, economic forces restrain Rambus's freedom to set royalty rates for or restrict the output of certain elements of DRAM interface technology.  The most likely and most important restraining force will be actual and potential competition from other firms and their products.  This includes all firms and products that act as restraints on Rambus's power to set rates as it pleases.  All the firms and products that exert this restraining force are within what is called the relevant market.

There are two aspects you must consider in determining whether plaintiffs have met their burden to prove the relevant market by a preponderance of the evidence.  The first is the relevant product market; the second is the relevant geographic market.

Authority:      ABA Model Instructions, p. C-6 (modified).

**INSTRUCTION NO. 12**

**MONOPOLIZATION - GENERAL**

*Relevant Product Market*

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other from the buyer's point of view; that is, the products compete with each other.  In other words, the relevant product market includes the products that a consumer believes are reasonably interchangeable or reasonable substitutes for each other.  This is a practical test with reference to actual behavior of buyers and marketing efforts of sellers.  Products need not be identical or precisely interchangeable as long as they are reasonable substitutes.  Thus, for example, if consumers seeking to cover leftover food for storage considered certain types of flexible wrapping material – such as aluminum foil, cellophane, or even plastic containers – to be reasonable alternatives, then all those products would be in the same relevant product market.

To determine whether products are reasonable substitutes for each other, you should consider whether a small but significant permanent increase in the price of one product would result in a substantial number of consumers switching from that product to another.  Generally speaking, a small but significant permanent increase in price is approximately a five percent increase in price not due to external cost factors, but you may conclude in this case that some other percentage is more applicable to the product at issue.  If you find that such switching would occur, then you may conclude that the products are in the same product market.

In evaluating whether various products are reasonably interchangeable or are reasonable substitutes for each other, you may also consider:  (1) consumers' views on whether the products are interchangeable; (2) the relationship between the price of one product and sales of another; (3) the presence or absence of specialized vendors; (4) the perceptions of either industry or the public as to whether the products are in separate markets; (5) the views of the plaintiffs and Rambus regarding who their respective competitors are; and (6) the existence or absence of different customer groups or distribution channels.

In this case, the plaintiffs contend that the relevant product markets are markets that include the particular elements of DRAM interface technology as to which Rambus has obtained

-9-

1   patents, and any technologies that are reasonable substitutes for that patented technology.  By

2   contrast, Rambus asserts that the plaintiffs have failed to prove that such markets exist or that

3   Rambus has monopoly power in them.  If you find that the plaintiffs have proven a relevant

4   product market comprised of products that are reasonably interchangeable, then you should

5   continue to evaluate the remainder of the plaintiffs' claim.  However, if you find that the plaintiffs

6   have failed to prove such a market, then you must find in Rambus's favor on this claim.

7

8   Authority:      ABA Model Instructions, pp. C-7–C-9 (modified).

**INSTRUCTION NO. 13**

**MONOPOLIZATION - GENERAL**

*Relevant Geographic Market*

The relevant geographic market is the area in which defendant faces competition from other firms that compete in the relevant product market and to which customers can reasonably turn for purchases.  When analyzing the relevant geographic market, you should consider whether changes in prices or product offerings in one area have substantial effects on prices or sales in another area, which would tend to show that both areas are in the same relevant geographic market.  The geographic market may be as large as global or nationwide, or as small as a single town or even smaller.

Plaintiffs have the burden of proving the relevant geographic market by a preponderance of the evidence.  In this case, plaintiffs claim that the relevant geographic market is worldwide.  Rambus asserts that the plaintiffs will not show that such a market exists or that Rambus has monopoly power in it.  In determining whether plaintiffs have met their burden and demonstrated that their proposed geographic market is proper, you may consider several factors, including:

- the geographic area in which Rambus licenses its patents and where Rambus's customers are located;

- the geographic area to which customers turn for supply of the product;

- the geographic area to which customers have turned or have seriously considered turning;

- the geographic areas that suppliers view as potential sources of competition;

- whether governmental licensing requirements, taxes, or quotas have the effect of limiting competition in certain areas.

Authority:     ABA Model Instructions, pp. C-13–C-14.

-11-

1

**INSTRUCTION NO. 14**

2

**MONOPOLIZATION - GENERAL**

3

*Relevant Market – Necessity of Proof*

4          If, after considering all the evidence, you find that the plaintiffs have proven by a

5   preponderance of the evidence both a relevant product market and a relevant geographic market,

6   then you must find that plaintiffs have met the relevant market requirement and you must

7   consider the remaining elements of this claim.

8          If you find that the plaintiffs have failed to prove by a preponderance of the evidence

9   either a relevant product market or a relevant geographic market, then you must find for Rambus

10  and against the plaintiffs on this claim.

11

12  Authority:        ABA Model Instructions, p. C-15.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 15**

**MONOPOLIZATION – GENERAL**

*Exercise of Monopoly Power – Indirect Proof*

If you find that plaintiffs have proven a relevant market, then you should determine whether Rambus has monopoly power in that market. As I instructed you earlier, monopoly power is the power to control prices and exclude competition in a relevant antitrust market.

**Market Share**

The first factor that you should consider is Rambus's market share.

A market share above 50 percent may be sufficient to support an inference that a defendant has monopoly power, but in considering whether a defendant has monopoly power it is also important to consider other aspects of the relevant market, such as market share trends, the existence of barriers to entry, the entry and exit by other companies, and the number and size of competitors. Along with a defendant's market share, these factors should inform you as to whether the defendant has monopoly power. The likelihood that a company has monopoly power is stronger the higher that company's share is above 50 percent.

A market share below 50 percent is ordinarily not sufficient to support a conclusion that a defendant has monopoly power. However, if you find that the other evidence demonstrates that defendant does, in fact, have monopoly power despite having a market share below 50 percent, you may conclude that the defendant has monopoly power.

**Market Share Trends**

The trend in a defendant's market share is something you may consider. An increasing market share may strengthen an inference that a company has monopoly power, particularly where that company has a high market share, while a decreasing share might show that a company does not have monopoly power.

**Barriers to Entry**

You may also consider whether there are barriers to entry into the relevant market. Barriers to entry make it difficult for new competitors to enter the relevant market in a meaningful and timely way. Barriers to entry might include intellectual property rights (such as

-13-

1    patents or trade secrets), specialized marketing practices, and the reputation of the companies

2    already participating in the market (or the brand name recognition of their products).

3        Evidence of low or no entry barriers may be evidence that defendant does not have

4    monopoly power, regardless of defendant's market share, because new competitors could enter

5    easily if the defendant attempted to raise prices for a substantial period of time.  By contrast,

6    evidence of high barriers to entry along with high market share may support an inference that

7    defendant has monopoly power.

8                    ***Entry and Exit by Other Companies***

9        The history of entry and exit in the relevant market may be helpful to consider.  Entry of

10   new competitors or expansion of existing competitors may be evidence that defendant lacks

11   monopoly power.  On the other hand, departures from the market, or the failure of firms to enter

12   the market, particularly if prices and profit margins are relatively high, may support an inference

13   that defendant has monopoly power.

14                   ***Number and Size of Competitors***

15       You may consider whether the defendant's competitors are capable of effectively

16   competing.  In other words, you should consider whether the financial strength, market shares and

17   number of competitors act as a check on the defendant's ability to price its products.  If the

18   defendant's competitors are vigorous or have large or increasing market shares, this may be

19   evidence that the defendant lacks monopoly power.  On the other hand, if you determine that the

20   defendant's competitors are weak or have small or declining market shares, this may support an

21   inference that the defendant has monopoly power.

22                         ***Conclusion***

23       If you find that Rambus has monopoly power in the relevant market, then you must

24   consider the remaining elements of the plaintiffs' monopolization claim.  If you find that Rambus

25   does not have monopoly power, then you must find for Rambus and against the plaintiffs on this

26   claim.

27

28   Authority:        ABA Model Instructions, pp. C-16–C-19.

**INSTRUCTION NO. 16**

**MONOPOLIZATION - GENERAL**

*Willful Acquisition or Maintenance of Monopoly Power*

The next element plaintiffs must prove is that Rambus willfully acquired *or maintained* monopoly power through anticompetitive acts or practices. Anticompetitive acts are acts, other than competition on the merits, that have the effect of preventing or excluding competition or frustrating the efforts of other companies to compete for customers within the relevant market. Harm to competition is to be distinguished from harm to a single competitor or group of competitors, which does not necessarily constitute harm to competition. In addition, you should distinguish the acquisition of monopoly power through anticompetitive acts from the acquisition of monopoly power by supplying better products or services, possessing superior business skills, or because of luck, which is not unlawful.

Mere possession of monopoly power, if lawfully acquired, does not violate the antitrust laws. A monopolist may compete aggressively without violating the antitrust laws, and a monopolist may charge monopoly prices without violating the antitrust laws. A monopolist's conduct only becomes unlawful where it involves anticompetitive acts.

The difference between anticompetitive conduct and conduct that has a legitimate business purpose can be difficult to determine. This is because all companies have a desire to increase their profits and increase their market share. These goals are an essential part of a competitive marketplace, and the antitrust laws do not make these goals – or the achievement of these goals – unlawful, as long as a company does not use anticompetitive means to achieve these goals.

In determining whether Rambus's conduct was anticompetitive or whether it was legitimate business conduct, you should determine whether the conduct is consistent with competition on the merits, whether the conduct provides benefits to consumers, and whether the conduct would make business sense apart from any effect it has on excluding competition or harming competitors.

For example, suppose there are five firms that make printers for home computers and that

1    these printers comprised a relevant product market.  Suppose also that Firm A developed a more

2    efficient manufacturing process that allowed it to sell profitably at a lower price than its

3    competitors.  If Firm A grew its market share and achieved monopoly power by selling profitably

4    at a lower price, it would not be unlawful for Firm A to achieve monopoly power in this way.

5    Developing more efficient processes and developing the ability to sell profitably at lower prices is

6    competition on the merits and benefits consumers, and it therefore is not anticompetitive conduct

7    even if it has a negative effect on competitors.

8         Similarly, in the same example, suppose Firm B developed and patented a revolutionary

9    new printer and consumers so preferred Firm B's printer that Firm B achieved monopoly power.

10   It would not be unlawful for Firm B to achieve monopoly power in this way.  Firm B "built a

11   better mousetrap," which is competition on the merits and benefits consumers, and it therefore is

12   not anticompetitive conduct.

13        By contrast, in the same example, suppose not only that Firm C makes printers, but also

14   that Firm C is the world's only manufacturer of computers and that there are barriers to entry in

15   the computer market such that no other firm will be able to enter that market.  Suppose also that

16   Firm C altered its computers in such a way that only Firm C's printers would work with its

17   computers, and that the alteration does not improve the design of Firm C's computers or provide

18   any benefits to competition or consumers – the only effect of the alteration is to exclude

19   competing printer makers from the marketplace.  If Firm C thereby prevented its printer

20   competitors from competing and achieved monopoly power, it would be unlawful for Firm C to

21   achieve monopoly power in the printer market in this way.

22        As these examples show, the acts or practices that result in the acquisition of monopoly

23   power must represent something more than the conduct of business that is part of the normal

24   competitive process or commercial success.  They must represent conduct that has made it very

25   difficult or impossible for competitors to compete and that was taken for no legitimate business

26   reason.  You may not find that a company willfully acquired monopoly power if it has acquired

27   that power solely through the exercise of superior foresight and skill; or because of natural

28   advantages such as unique geographic access to raw materials or markets; or because of economic

1   or technological efficiency, including efficiency resulting from scientific research; or by

2   obtaining a lawful patent; or because changes in cost or taste have driven out all but one supplier.

3         If you find that plaintiffs have proven by clear and convincing evidence that Rambus

4   willfully acquired monopoly power through anticompetitive acts, then you must consider whether

5   the plaintiffs have proved the remaining elements of their monopolization claim.  If, however,

6   you find that the plaintiffs did not prove this element by clear and convincing evidence, then you

7   must find for the Rambus and against the plaintiffs on this claim.

8   Authority:      ABA Model Instructions, pp. C-26–C-30 (modified based upon *Golan v. Pingel*

9                *Enter., Inc.,* 310 F.3d 1360, 1370-72 (Fed. Cir. 2002); *Nobelpharma AB v. Implant*

10             *Innovations, Inc.*, 141 F.3d 1059, 1068-73 (Fed. Cir. 1998), *Handgards, Inc. v.*

11             *Ethicon, Inc.*, 601 F.2d 986, 996 (9th Cir. 1979)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 17**

**MONOPOLIZATION – REFUSAL TO COOPERATE**

As stated before, one of the elements plaintiff must prove is that defendant engaged in anticompetitive conduct.  Plaintiffs claim that this element is satisfied in this case because they claim that Rambus unlawfully refused to cooperate with plaintiff, a competitor.

Ordinarily, a company may cooperate or refuse to cooperate with whomever it pleases, as long as it acts independently.  Even a company with monopoly power in a relevant market has no general duty to cooperate with its business rivals and ordinarily may refuse to deal with them.

A refusal to cooperate with a competitor constitutes anticompetitive conduct only where the refusal is contrary to the short-run best interest of defendant, and where it makes sense for defendant only because it harms competitors and helps defendant achieve or maintain monopoly power in the long run.  In other words, if the refusal to cooperate results in or is expected to result in short-run benefits to defendant – such as more profits, a higher market share, or avoiding the loss of customers – then it is not anticompetitive and you must find for defendant on this element. On the other hand, if the refusal to cooperate hurts defendant in the short run and was expected to hurt defendant in the short run, and is undertaken only because defendant expects it to harm competitors and enhance its monopoly power in the long run, then you must find for plaintiff on this element.

If you find that Rambus had mixed motives for its refusal to cooperate – that is, that the conduct was expected to result in some short run benefits for Rambus as well as harm competitors – then you must find for Rambus on this element.  A refusal to deal is only anticompetitive where it is hurts a defendant in the short run and benefits the defendant only by harming competitors.

Authority:    ABA Model Instructions, pp. C-36–C-37 (modified to replace "deal" with "cooperate").  *See also Verizon Communs., Inc. v. Law Offices of Curtis V. Trinko, LLP*, 124 S.Ct. 872, 879 (2004) (holding that the antitrust laws do not recognize a general "duty to deal"); *Schor v. Abbott Laboratories*, ____ F.3d ____ (7th Cir. 2006) ("[A]ntitrust law does not require monopolists to cooperate with rivals by

1    selling them products that would help the rivals to compete.  *See Verizon*

2    *Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398

3    (2004).  Cooperation is a *problem* in antitrust, not one of its obligations.”);

4    *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1358 (Fed. Cir. 1999) (explaining

5    that “no case has held that the divulgation of proprietary information” is required

6    “on a ‘refusal to deal’ antitrust premise” and that “the owner of proprietary

7    information has no obligation to provide it, whether to a competitor, customer, or

8    supplier.”).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

**INSTRUCTION NO. 18**

**MONOPOLIZATION - REFUSAL TO COOPERATE - LEGITIMATE**

**BUSINESS PURPOSE DEFINED**

4   Rambus has introduced evidence that its refusal to cooperate was based on legitimate

5   business purposes.  A refusal to cooperate that is designed to protect or further the legitimate

6   business purposes of defendant does not violate the antitrust laws, even if that refusal injures

7   competitors.  In general, the desire, to maintain monopoly power or to block entry of competitors

8   is not a legitimate business purpose.  A legitimate business purpose is one that benefits the actor

9   regardless of any harmful effect on competitors, such as a purpose to promote efficiency or

10  quality, offer a better product or service, or increase short run profits.  Thus, a refusal to cooperate

11  that harms defendant's independent interests and makes sense only to obtain or maintain

12  monopoly power is not based on legitimate business purposes.  A refusal to cooperate that is

13  based in part on legitimate business reasons, even if it is also motivated by the desire to harm

14  competitors, does not violate the antitrust laws.  It is the plaintiffs' burden to prove that Rambus's

15  refusal to cooperate was not motivated by legitimate business purposes.

16

17  Authority:      ABA Model Instructions, p. C-39 (modified to replace "deal" with "cooperate"

18                          and to reflect the Ninth Circuit's holding regarding burden of proof in *City of*

19                          *Vernon v. Southern California Edison Co.*, 955 F.2d 1361, 1366 (9th Cir. 1992).

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 19**

**PATENTS - GENERAL**

This case involves, at least in part, patents issued by the United States Patent Office to evaluate plaintiff's contentions, some general information about patents is necessary.

The U.S. Constitution gives Congress the power "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their discoveries." To carry out this provision of the Constitution, Congress has enacted the patent laws. The basic policy of the patent laws is to encourage inventors to reveal new, useful, and unobvious technology to the public, in exchange for the grant by the U.S. government of a patent on their inventions.

To receive a patent, an inventor pays a fee and submits an application to the U.S. Patent Office. The Patent Office reviews the application and, if it finds that the application adequately describes a new and useful invention, it grants, or "issues," a patent to the inventor. The patent provides an inventor the right, for a specified number of years, to exclude others from making, using, offering for sale, or selling the patented invention throughout the United States without the permission of the owner of the patent. This potential economic reward gives people an incentive to invest time, money, and effort in research and development efforts.

A patent benefits the public as well as the patent owner. This is because every inventor who applies for a patent must provide the details of his or her invention to the Patent Office. When the Patent Office issues a patent, a full description of the invention is included in a publicly filed document that precisely defines what the patent covers. This public filing allows anyone to find out exactly what was invented and how it works. Thus, other researchers can learn from a patent owner's work, and can make other inventions of their own.

A person may obtain from the Patent Office a separate patent for each invention that qualifies for a patent. There is no maximum number of patents that a person may obtain.

Sometimes an inventor will obtain a patent on part of a commercial process or product, and another inventor will obtain a patent on another part of the same process or product. Under the patent laws, neither inventor has the right to use the process commercially without the

1  permission of the other inventor.  When this happens, the inventors are said to have "blocking

2  patents."

3      An inventor who receives a patent may sell, or "assign," his or her patent to someone else.

4  Frequently, employees working for a corporation agree to assign any patents they receive to their

5  employer.  The buyer of a patent acquires all of the rights that the original patent holder had.

6      Using a patented invention within the applicable time period without the patent owner's

7  permission is called patent infringement or infringing the patent.  As mentioned above, for a

8  specified number of years, the patent owner has the right to exclude anyone else from using the

9  patented invention.  He or she may enforce this right by bringing a lawsuit to stop the alleged

10  infringement, to recover damages for the alleged infringement, or both.

11      A patent owner may give someone else permission to use the patented invention.  This is

12  called licensing the patent, and the permission usually is formally set out in a patent license

13  agreement.  The firm or person receiving permission to use the patent is called the licensee or

14  license holder.  Sometimes, there is what is known as a "cross-license."  A cross-license occurs

15  when two entities or persons both own separate patents, and give each other permission to use the

16  other's patented inventions.

17

18  Authority:      ABA Model Instructions, pp. D-2–D-5 (modified to delete extraneous language).

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 20**

**WHEN PATENT RIGHTS ARE CREATED**

When a patent applicant files for a patent, the applicant cannot know whether it will be awarded a patent or, if it is awarded a patent, how broad the patent will be or what it will cover. In other words, until a patent is formally allowed by the United States Patent and Trademark Office, a patent applicant cannot know with certainty what legal rights, if any, the patent applicant will receive.

Authority:    *GAF Building Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 482-83 (Fed. Cir. 1996) (explaining that prior to issuance, "[t]he district court did not know with certainty whether a patent would issue or, if so, what legal rights it would confer upon Elk . . . .  Patent rights are created only upon the formal issuance of the patent . . . ."). *Accord*, *Black & Decker Inc. v. Robert Bosch Tool Corp.*, 371 F.Supp. 2d 965, 971 (N.D. Ill. 2005) (explaining that when "claims have yet to issue, there is no way for the Court to determine whether the '492 application does in fact 'cover' the same inventions as the patents-in-suit"); *Bell Sports, Inc. v. Graber Prods., Inc.*, 29 U.S.P.Q. 2d 1211, 1215-6 (W.D. Wis. 1993) (no estoppel arises from failure to disclose patent application during settlement of an infringement claim, for "[a]t the time of those negotiations plaintiff could not have known that its [currently asserted] patent would even issue. . . .").

1

## INSTRUCTION NO. 21

2

## PATENTS - GENERAL

3      The patent laws complement the antitrust laws in promoting competition.  The basic

4  purpose of both sets of laws is to promote innovation, industry, and competition.  In general, the

5  antitrust laws seek to promote competition by prohibiting the abuse of monopoly power and

6  restraints on trade that unduly interfere with the competitive process.

7      The patent laws seek to promote competition by encouraging people to invest in scientific

8  research and product development.  These investments can lead to new and better products, better

9  ways of making things, new jobs, and entirely new industries.  But a patent necessarily involves a

10  restraint of trade – the right to exclude others from using the patented invention for the duration

11  of the patent.  This right to exclude is not an antitrust violation.

12

13  Authority:      ABA Model Instructions, p. D-8.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INSTRUCTION NO. 22

2

### PATENTS

3       You already have been instructed generally about monopolization under the Sherman Act.

4   The following explains monopolization in the context of some of the contentions made in this

5   case by plaintiff.

6       A patent does not always create monopoly power.  As previously stated, a patent gives the

7   patent owner the legal right to exclude others from using the patented invention.  But this legal

8   right to exclude is not always the same thing as monopoly power.  For example, there may be

9   products not covered by the patent that compete with products covered by the patent, and the

10  competition from those other products may prevent the patent holder from having monopoly

11  power.  The patent owner's right to exclude can lead to monopoly power in two ways:

12      **First**, when a single product is so commercially successful that there are no effective

13  competing products, then the patent may confer monopoly power on its owner.  When the

14  patented product represents merely one of many products that effectively compete in a given

15  relevant product market, no monopoly power is created by the patent.

16      **Second**, there may be a series of patented inventions for which, as a whole, there are no

17  substitutes.  In this circumstance, if one person acquires all of these patents, that person would

18  have monopoly power.

19      However, even if a patent or group of patents gives monopoly power to the owner of the

20  patent, it is not usually a violation of the law to own the patent or patents.  For example, it is not a

21  violation of the antitrust laws to invent and obtain a patent on a product or products that gives the

22  inventor monopoly power.

23

24  Authority:      ABA Model Instructions, pp. D-21–D-22.

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 23**

**ASSUMPTIONS REGARDING PATENTS**

You should assume in deciding this case that the patents issued to Drs. Farmwald and Horowitz that are involved in this case are valid and that the Patent Office correctly issued the patents.

It also has already been determined that certain memory-related products made and sold by Hynix, including SDRAM, DDR SDRAM, DDR2 SDRAM, GDDR SDRAM, GDDR2 SDRAM, GDDR3 SDRAM, SGRAM, DDR SGRAM, and Handy SDRAM, infringe claims of the Rambus patents involved in this case.  Specifically, it has been determined that:  Hynix's SDRAM, SGRAM, Handy SDRAM and Mobile SDRAM products infringe claim 24 of U.S. Patent No. 6,034,918, claim 33 of U.S. Patent No. 6,324,120, claims 9 and 28 of U.S. Patent No. 6,426,916, and claim 16 of U.S. Patent No. 6,452,863; and Hynix's DDR SDRAM, DDR2 SDRAM, GDDR SDRAM, GDDR2 SDRAM, GDDR3 SDRAM, DDR SGRAM, and Mobile DDR SDRAM products infringe claim 34 of U.S. Patent No. 5,915,105, claims 24 and 33 of U.S. Patent No. 6,034,918, claim 33 of U.S. Patent No. 6,324,120, claims 32 and 36 of U.S. Patent No. 6,378,020, claims 9, 28 and 40 of U.S. Patent No. 6,426,916, and claim 16 of U.S. Patent No. 6,452,863.  In deciding this case, you must assume that these products made and sold by Hynix infringe Rambus's patents.

You must further assume that Mike Farmwald and Mark Horowitz made the inventions described in these patent claims prior to April 18, 1990.  It was on that date, April 18, 1990, that Mike Farmwald and Mark Horowitz filed their original patent application with the United States Patent and Trademark Office describing their inventions.  The application includes what is called a "specification," which must contain a written description of the claimed inventions, telling, among other things, what the inventions are and how they work.  That "specification" may then be carried forward into later patent applications that are based on the original application.  The claims in those later applications may be amended claims from the original application or new claims and those amended or new claims may narrow or broaden the scope of the originally filed claims.  The patents that Hynix has been found to infringe all stem from applications that are

1    based on the original April 18, 1990 patent application.

2          You are further instructed to assume that Mike Farmwald and Mark Horowitz described

3    the full scope of the inventions in the Rambus patent claims that Hynix has been found to infringe

4    in that original patent application, and that an engineer of ordinary skill in the field of integrated

5    circuit memory design, upon reading the specification or written description that is part of the

6    original patent application, would have recognized that the specification describes the inventions

7    in the Rambus patent claims.

8          You are further instructed to assume that the inventions of Mike Farmwald and Mark

9    Horowitz, as described in the patent claims infringed by Hynix, were new and novel as of April

10   18, 1990.  In other words, these inventions had not been in a previous prior art reference; that is,

11   they had not been in a previous product and had not been described in a previous patent or

12   publication.

13         You are further instructed to assume that the inventions of Mike Farmwald and Mark

14   Horowitz would not have been obvious to a person of ordinary skill in the field of integrated

15   circuit memory design as of April 18, 1990.  That is, such a person of ordinary skill who knew

16   about the prior art in the field would not have come up with the claimed inventions.

17

18   Authority:           Final Phase II Jury Instruction No. 14 ("The application includes what is

19                        called a "specification," which must contain a written description of the

20                        claimed invention, telling, among other things, what the invention is and

21                        how it works.  That "specification" may then be carried forward into later

22                        patent applications that are based on the original application.  The claims in

23                        those later applications may be amended claims from the original

24                        application or new claims and those amended or new claims may narrow or

25                        broaden the scope of the originally filed claims. The purpose of the written

26                        description requirement is to make sure that the inventor had in mind, that

27                        is, had invented at the time the original patent application was filed, the full

28                        scope of the invention as finally claimed in a later patent which is based

-27-

1   upon the original specification. . . . The written description requirement is

2   not satisfied if it is shown that a person of ordinary skill in the field reading

3   the original specification would not recognize that the specification

4   describes the invention as finally claimed in the amended or new claims.").

5   Final Phase II Jury Instruction No. 15 ("For a claim to be invalid because it

6   is not new (in other words "anticipated"), all of its requirements must be in

7   a single previous product or method, or described in a single previous

8   publication or patent.  We call these things 'prior art references.'").

9   Final Phase II Jury Instruction No. 16 ("A patent claim is invalid if the

10  claimed invention would have been obvious to a person of ordinary skill in

11  the field at the time the application was filed (in this case, April 18, 1990

12  for all the Rambus Patents-in-Suit).  This means that even if all the

13  requirements of the claim cannot be found in a single prior art reference

14  that would anticipate the claim, a person of ordinary skill in the field (in

15  this case the field of integrated circuit memory design), who knew about all

16  this prior art would not have come up with the claimed invention.").

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 24

### PRIOR DETERMINATIONS REGARDING JEDEC

Certain issues regarding JEDEC and its rules have already been determined. I am going to describe some of those now. You must follow these determinations in deciding this case.

-29-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 25**

**JEDEC'S RULES**

During the time that Rambus was a JEDEC member, JEDEC's rules were not definite

enough to make clear to JEDEC members, such as Rambus, what disclosures, if any, JEDEC

members were required to make about patents or patent applications.


Authority:        7/17/06 Order at 10:3-4 ("The alleged agreement between JEDEC and Rambus

                  or JEDEC members and Rambus was not definite enough to make clear to

                  Rambus what disclosures it was required to make, if any.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 26**

**JEDEC MEMBERSHIP**

Rambus's membership in JEDEC did not create a contract or agreement between Rambus and JEDEC, or between Rambus and Hynix, or between Rambus and Micron, or between Rambus and any other JEDEC member.


Authority:     7/17/06 Order at 10:10-12 ("Rambus's membership in JEDEC did not, as a matter of law, create a contract between JEDEC and Rambus or JEDEC members and Rambus.").

1

## INSTRUCTION NO. 27

2

## DISCLOSURE AT JEDEC

3          If there was any duty of disclosure imposed on JEDEC members, that duty did not require

4    a JEDEC member to disclose its beliefs about its patent applications, its intentions to file or

5    amend its patent applications, or its hopes about what its patents would ultimately cover.

6

7    Authority:        7/17/06 Order at 17:18-19 ("The court concludes that the JEDEC disclosure duty

8                          did not extend to Rambus's beliefs, hopes or intentions to file or amend its patent

9                          applications.").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTION NO. 28**

2

**DISCLOSURE AT JEDEC**

3
     If there was any duty of disclosure imposed on JEDEC members, that duty ended once a

4
member formally withdrew from JEDEC.

5

6
Authority:     7/17/06 Order at 17:26-27 ("The court grants as unopposed Rambus's motion for

7
           summary adjudication that the JEDEC duty to disclose ends once a member

8
           formally withdraws from JEDEC.").

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTION NO. 29**

2

**AMENDMENTS TO COVER A COMPETITOR'S PRODUCTS**

3      You have heard some evidence that Rambus filed patent claims in the Patent Office for

4   the purpose of obtaining patent rights over products that it learned others were introducing, or

5   planning to introduce, into the marketplace.  I instruct you that there is nothing improper, illegal

6   or inequitable in filing a patent application for the purpose of obtaining a right to exclude a

7   competitor's product from the market.  It also is not in any manner improper to amend, broaden

8   or add claims intended to cover a competitor's product that the applicant has learned about during

9   the prosecution of a patent application, as long as the written description in the original patent

10  application supports the additional claims.  In this case, you should assume that Rambus's

11  original description did support the additional claims in question.

12

13   Authority:        *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 909 n.2 (Fed. Cir. 2004);

14                     *PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1247 (Fed. Cir. 2002);

15                     *Multiform Desiccants, Inc. v. Medzam Ltd.*, 133 F.3d 1473, 1482 (Fed. Cir. 1998);

16                     *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 871 F.2d 1054, 1064-65 (Fed.

17                     Cir. 1989); *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 874

18                     (Fed. Cir. 1988).

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 30**

**PATENT LICENSING**

A patent owner's unilateral refusal to license a patent is ordinarily not properly viewed as exclusionary conduct.  A patent owner's desire to exclude others from use of its patented technology is, without more, a presumptively valid business justification for any immediate harm to consumers.

Authority:     ABA Model Instructions, p. D-47 (modified).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 31**

**LITIGATION CONDUCT PROTECTED**

The right to bring a lawsuit is one of the freedoms protected by the Constitution.  You should not infer that filing a lawsuit, by itself, violates the antitrust laws.


Authority:  *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993) ("Those who petition government for redress are generally immune from antitrust liability."); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition."); *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961) ("The right of petition is one of the freedoms protected by the Bill of Rights, . . . .").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 32**

**ATTEMPT TO MONOPOLIZE**

Each plaintiff alleges that Rambus engaged in an unlawful attempt to monopolize.  To prevail on its claim of attempted monopolization, each plaintiff must prove each of the following elements by a preponderance of the evidence:

**First**, that Rambus engaged in anticompetitive conduct.

**Second**, that Rambus had a specific intent to achieve monopoly power in a relevant market;

**Third**, that there was a dangerous probability that Rambus would achieve its goal of monopoly power in the relevant market;

**Fourth**, that Rambus's conduct occurred in or affected interstate commerce; and

**Fifth**, that that plaintiff was injured in its business or property by Rambus's anticompetitive conduct.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for Rambus and against the plaintiff on the plaintiff's claim of attempted monopolization.  If you find that the evidence is sufficient to prove all five elements as to defendant, then you must find for the plaintiff and against Rambus on the plaintiff's claim of attempted monopolization.

Authority:      ABA Model Instructions, pp. C-84–C-85 (modified).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INSTRUCTION NO. 33

### ANTICOMPETITIVE CONDUCT

It is not sufficient for a plaintiff to prove that a defendant intended to monopolize the relevant market. A plaintiff must also show that a defendant engaged in anticompetitive conduct, coupled with an intent to monopolize and a dangerous probability that defendant would succeed.

I have previously instructed you with respect to plaintiffs' burden to establish relevant markets and its burden to show that Rambus engaged in anticompetitive conduct. Those instructions apply to this claim as well.

Authority:      ABA Model Instructions, p. C-88.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 34**

**SPECIFIC INTENT**

The second element that plaintiffs must prove is that Rambus had a specific intent to monopolize a relevant market. To do so, each plaintiff must first prove the market it is talking about is a relevant market for antitrust purposes. The plaintiff must then prove that Rambus had a specific intent to monopolize that market. The Court will begin by instructing you on the relevant market, and the Court will then discuss specific intent. If a plaintiff proves both the relevant market and that Rambus had a specific intent to monopolize that market, you must find that the plaintiff has proven this element of its attempted monopolization claim and you should consider the other elements of the claim. If you find that a plaintiff fails to prove either of these points, then you must find for Rambus on the plaintiff's attempted monopolization claim.

If you find that a plaintiff has proven a relevant market, you must then decide whether Rambus had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that Rambus acted with the conscious aim of acquiring the power to control prices and to exclude or destroy competition in the relevant market.

There are several ways in which a plaintiff may prove that a defendant had the specific intent to monopolize. There may be evidence of direct statements of a defendant's intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of defendant at or about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of defendant. You must be careful, however, to distinguish between a defendant's intent to compete aggressively (which is lawful), which may be accompanied by aggressive language, and a true intent to acquire monopoly power by using anticompetitive means.

Even if you decide that the evidence does not prove directly that defendant actually intended to obtain a monopoly, specific intent may be inferred from what defendant did. For example, if the evidence shows that the natural and probable consequence of defendant's conduct in the relevant market was to give defendant control over prices and to exclude or destroy competition, and that this was plainly foreseeable by defendant, then you may (but are not

1    required to) infer that the defendant specifically intended to acquire monopoly power.

2

3    Authority:        ABA Model Instructions, p. C-90–C-91.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INSTRUCTION NO. 35**

### **DANGEROUS PROBABILITY OF SUCCESS**

If you find that Rambus had the specific intent to achieve a monopoly and engaged in significant anticompetitive conduct, you also must determine if the evidence shows the next element of attempt to monopolize:  namely, that there was a dangerous probability that Rambus would succeed in achieving monopoly power if it continued to engage in the same or similar conduct.

In determining whether there was a dangerous probability that Rambus would acquire the ability to control price in the market, you should consider such factors as:

**First**, Rambus's market share;

**Second**, the trend in Rambus's market share;

**Third**, whether the barriers to entry into the market made it difficult for competitors to enter the market; and

**Fourth**, the likely effect of any anticompetitive conduct on Rambus's share of the market.

Again, the purpose of looking at these and other factors is to determine whether there was a dangerous probability that Rambus would ultimately acquire monopoly power.  A dangerous probability of success need not mean that success was nearly certain, but it does mean that there was a substantial and real likelihood that Rambus would ultimately acquire monopoly power.

Authority:     ABA Model Instructions, pp. C-95–C-96.

4013165.2

-41-

1

## INSTRUCTION NO. 36

2

### FRAUD AND DECEIT – INTRODUCTORY INSTRUCTION

3      Each plaintiff seeks to recover damages based upon a claim of fraud.

4      Conduct may be fraudulent because of an intentional misrepresentation, concealment or a

5  negligent misrepresentation.

6

7  Authority:      BAJI 12.30

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## INSTRUCTION NO. 37

2

### FRAUD AND DECEIT – INTENTIONAL MISREPRESENTATION

3      The essential elements of a claim of fraud by an intentional misrepresentation are:

4      1.      The defendant must have made a representation as to a past or existing material

5              fact;

6      2.      The representation must have been false;

7      3.      The defendant must have known that the representation was false when made or

8              must have made the representation recklessly without knowing whether it was true

9              or false;

10     4.      The defendant must have made the representation with an intent to defraud the

11             plaintiff, that is, it must have made the representation for the purpose of inducing

12             the plaintiff to rely upon it and to act or to refrain from acting in reliance thereon;

13     5.      The plaintiff must have been unaware of the falsity of the representation; must

14             have acted in reliance upon the truth of the representation and must have been

15             justified in relying upon the representation;

16     6.      And, finally, as a result of the reliance upon the truth of the representation, the

17             plaintiff must have sustained damage.

18

19     Authority:      BAJI 12.31

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INSTRUCTION NO. 38

### FRAUD AND DECEIT – CONCEALMENT

The essential elements of a claim of fraud by concealment are:

1.      The defendant concealed or suppressed a material fact;

2.      The defendant was under a duty to disclose the fact to the plaintiff;

3.      The defendant intentionally concealed or suppressed the fact with the intent to defraud the plaintiff;

4.      The plaintiff was unaware of the fact and would not have acted as it did if it had known of the concealed or suppressed fact;

5.      And, finally, the concealment or suppression of the fact caused the plaintiff to sustain damage.

Authority:      BAJI 12.35

## INSTRUCTION NO. 39

### FRAUD AND DECEIT – NEGLIGENT MISREPRESENTATION

The essential elements of a claim of fraud by a negligent misrepresentation are:

1.      The defendant must have made a representation as to a past or existing material fact;

2.      The representation must have been untrue;

3.      Regardless of its actual belief the defendant must have made the representation without any reasonable ground for believing it to be true;

4.      The representation must have been made with the intent to induce plaintiff to rely upon it;

5.      The plaintiff must have been unaware of the falsity of the representation; must have acted in reliance upon the truth of the representation and must have been justified in relying upon the representation;

6.      And, finally, as a result of the reliance upon the truth of the representation, the plaintiff must have sustained damage.

Authority:      BAJI 12.45

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>INSTRUCTION NO. 40</u>**

**FRAUD AND DECEIT – EXPRESSION OF OPINION**

Ordinarily, expressions of opinion are not treated as representations of fact upon which to base actionable fraud.

However, when one party possesses or holds itself out as possessing superior knowledge or special information regarding the subject of a representation, and the other party is so situated that it may reasonably rely upon such supposed superior knowledge or special information, a representation made by the party possessing or holding itself out as possessing such knowledge or information will be treated as a representation of fact although if made by any other person it might be regarded as an expression of opinion.

When a party states an opinion as a fact, in such a manner that it is reasonable to rely and act upon it as a fact, it may be treated as a representation of fact.

Authority:     BAJI 12.32

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 41**

**FRAUD AND DECEIT – NONDISCLOSURE OF KNOWN FACTS**

Except as you may otherwise be instructed, where material facts are known to one party and not to the other, failure to disclose them is not actionable fraud unless there is some relationship between the parties which gives rise to a duty to disclose such known facts.

Authority:     BAJI 12.36 (modified to delete instructions related to fiduciary or confidential relationships).

## INSTRUCTION NO. 42

### FRAUD AND DECEIT – ACTIVE CONCEALMENT OF KNOWN FACTS

Intentional concealment exists where a party:

While under no duty to speak, nevertheless does so, but does not speak honestly or makes misleading statements or suppresses facts which materially qualify those stated.


Authority:     BAJI 12.37

1

## INSTRUCTION NO. 43

2

## FRAUD AND DECEIT – PERSONS IN/NOT IN PRIVITY WITH DEFENDANT

3          The misrepresentation or concealment must have been made with the intent to induce

4    some person or persons to act in reliance upon it, and the party making the representation or

5    concealing is liable only to those persons to whom the representation was made or from whom a

6    material fact was concealed with such intent.

7          One who makes a misrepresentation or conceals a material fact is subject to liability if it

8    intends or has reason to expect that the misrepresentation or concealment of material fact will be

9    passed on to another person and influence such person's conduct in the transaction involved.

10         A person has reason to expect that a misrepresentation or nondisclosure of material fact

11   will be passed on to other persons and influence that person's conduct if it has information that

12   would lead a reasonable person to conclude that there is a likelihood that it will reach such person

13   and will influence its conduct in the transaction involved.

14         "Subject to liability" means that the defendant is liable if all of the other essential

15   elements of the claim of fraud are established.

16         One who makes a misrepresentation or conceals a material fact with the intent to defraud

17   the public or a particular class of persons is deemed to have intended to defraud every individual

18   in that category who is actually misled thereby.

19

20   Authority:       BAJI 12.50.

21

22

23

24

25

26

27

28

4013165.2

-49-

1

## INSTRUCTION NO. 44

2

## ACTUAL RELIANCE

3         In order to prove its claim for intentional misrepresentation, or to prove that defendant is

4    liable for concealing facts based on its partial disclosure of other facts, the plaintiff must prove, in

5    addition to the other elements I have listed, that it had actual knowledge of the defendant's

6    statements.  The plaintiff must prove that:

7         1.        It heard or read that factual statement; or

8         2.        If the plaintiff did not directly hear or read the factual statement, that the terms or

9    substance of that factual statement were repeated to it.

10

11    Authority:        *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095-97 (1993); *Shapiro v. Sutherland*, 64

12                      Cal.App.4th 1534, 1548 (1998).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 45

## FRAUD AND DECEIT – RELIANCE

To establish fraud by a false representation, the plaintiff must establish reliance upon the representation; that is, the representation must have caused plaintiff's conduct in entering into the transaction and without this representation plaintiff would not have entered into the transaction.

The fraud, if any, need not be the sole cause if it appears that reliance upon the representation substantially influenced such party's action, even though other influences operated as well.

Authority:     BAJI 12.51.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 46**

**FRAUD AND DECEIT – RIGHT TO RELY**

To establish fraud by a false representation, plaintiff must not only act in reliance on it, but must be justified in that reliance, that is, it was reasonable in the light of the circumstances and plaintiff's intelligence, experience and knowledge, to accept the representation without making an independent inquiry or investigation.

Authority:      BAJI 12.52.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 47**

**DAMAGES**

I am now going to instruct you on the issue of damages.  The fact that I am giving you instructions concerning the issue of plaintiffs' damages does not mean that I believe the plaintiffs should, or should not, prevail in this case.

If, for any reason, you reach a verdict for Rambus  on the issue of liability, you should not consider the issue of damages, and you may disregard the damages instructions that I am about to give.  Instructions as to the measure of damages are given for your guidance in the event you should find in favor of the plaintiffs based on a preponderance of the evidence in accordance with the other instructions 1 have given you.  You should only consider calculating damages if you first find that Rambus violated the antitrust laws and that this violation caused injury to plaintiffs.

Authority:       ABA Model Instructions, p. F-11.

1

**INSTRUCTION NO. 48**

2

**CAUSATION AND INJURY**

3      If you find that Rambus has violated section 2 of the Sherman Act as alleged by plaintiff,

4   then you must decide if plaintiffs are entitled to recover damages from Rambus.

5      Plaintiffs are entitled to recover damages for an injury to their business or property if they

6   can establish three elements of injury and causation:

7      **First**, that the plaintiff was in fact injured as a result of Rambus's alleged violation of the

8   antitrust laws;

9      **Second**, that Rambus's alleged illegal conduct was a material cause of the plaintiff's

10  injury; and

11     **Third**, that the plaintiff's injury is an injury of the type that the antitrust laws were

12  intended to prevent.

13     The first element is sometimes referred to as "injury in fact" or "fact of damage." For a

14  plaintiff to establish that it is entitled to recover damages, it must prove that it was injured as a

15  result of defendant's alleged violation of the antitrust laws. Proving the fact of damage does not

16  require a plaintiff to prove the dollar value of its injury. It requires only that a plaintiff prove that

17  it was in fact injured by defendant's alleged antitrust violation. If you find that a plaintiff has

18  established that it was in fact injured, you may then consider the amount of that plaintiff's

19  damages. It is important to understand, however, that injury and amount of damage are different

20  concepts and that you cannot consider the amount of damage unless and until you have concluded

21  that a plaintiff has established that it was in fact injured.

22     Plaintiff must also offer evidence that establishes as a matter of fact and with a fair degree

23  of certainty that defendant's alleged illegal conduct was a material cause of plaintiff's injury.

24  This means that plaintiff must have proved that some damage occurred to it as a result of

25  defendant's alleged antitrust violation, and not some other cause. Plaintiff is not required to

26  prove that defendant's alleged antitrust violation was the sole cause of its injury; nor need

27  plaintiff eliminate all other possible causes of injury. It is enough if plaintiff has proved that the

28  alleged antitrust violation was a material cause of its injury. However, if you find that plaintiff's

1    injury was caused primarily by something other than the alleged antitrust violation, then you must

2    find that plaintiff has failed to prove that it is entitled to recover damages from defendant.

3          Finally, plaintiff must establish that its injury is the type of injury that the antitrust laws

4    were intended to prevent.  This is sometimes referred to as "antitrust injury."  If plaintiff's

5    injuries were caused by a reduction in competition, acts that would lead to a reduction in

6    competition, or acts that would otherwise harm consumers, then plaintiff's injuries are antitrust

7    injuries.  On the other hand, if plaintiff's injuries were caused by heightened competition, the

8    competitive process itself, or by acts that would benefit consumers, then plaintiff's injuries are

9    not antitrust injuries and plaintiff may not recover damages for those injuries under the antitrust

10   laws.  You should bear in mind that businesses may incur losses for many reasons that the

11   antitrust laws are not designed to prohibit or protect against – such as where a competitor offers

12   better products or services or where a competitor is more efficient and can charge lower prices

13   and still earn a profit – and the antitrust laws do not permit a plaintiff to recover damages for

14   losses that were caused by the competitive process or conduct that benefits consumers.

15         However, if plaintiff can establish that it was in fact injured by defendant's conduct, that

16   defendant's conduct was a material cause of plaintiff's injury, and that defendant's injury was the

17   type that the antitrust laws were intended to prevent, then plaintiff is entitled to recover damages

18   for the injury to its business or property.

19

20   Authority:      ABA Model Instructions, pp. F-2–F-5.

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

**INSTRUCTION NO. 49**

**CAUSATION AND INJURY**

Plaintiff must establish that the injury it claims to have suffered was an injury to its "business or property."  The term "business" includes any commercial interest or venture, and you are instructed that plaintiff has been injured in its "business" if you find that it has suffered injury to any of its commercial interests or enterprises as a result of defendant's alleged antitrust violation.  The term "property" includes anything of value plaintiff owns, possesses, or in which plaintiff has a protectable legal interest.  You are instructed that plaintiff has been injured in its "property" if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of defendant's alleged antitrust violation.  You are further instructed that plaintiff has been injured in its "property" if you find that it has paid an inflated price for goods, services, any legal interest of value, or has lost money as a result of defendant's alleged antitrust violation.

14

15

Authority:      ABA Model Instructions, p. F-7.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 50**

**DAMAGES**

If you find that defendant violated the antitrust laws and that this violation caused injury to plaintiff, then you must determine the amount of damages, if any, plaintiff is entitled to recover.  The law provides that plaintiff should be fairly compensated for all damages to its business or property that were a direct result or likely consequence of the conduct that you have found to be unlawful.

The purpose of awarding damages in an antitrust action is to put an injured plaintiff as near as possible in the position in which it would have been if the alleged antitrust violation had not occurred.  The law does not permit you to award damages to punish a wrongdoer – what we sometimes refer to as punitive damages – or to deter defendant from particular conduct in the future, or to provide a windfall to someone who has been the victim of an antitrust violation.  You are also not permitted to award to the plaintiff an amount for attorneys fees or the costs of maintaining this lawsuit.  Antitrust damages are compensatory only.  In other words, they are designed to compensate a plaintiff for the particular injuries it suffered as a result of the alleged violation of the law.

Authority:      ABA Model Instructions, p. F-12.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 51**

**DAMAGES**

Damages may not be based on guesswork or speculation.  If you find that a damages calculation cannot be based on evidence and reasonable inferences, and instead can only be reached through guesswork or speculation, then you may not award damages.  If the amount of damages attributable to an antitrust violation cannot be separated from the amount of harm caused by factors other than the antitrust violation except through guesswork or speculation, then you may not award damages.

You are permitted to make reasonable estimates in calculating damages.  It may be difficult for you to determine the precise amount of damage suffered by the plaintiff.  If plaintiff establishes with reasonable probability the existence of an injury proximately caused by the defendant's antitrust violation, you are permitted to make a just and reasonable estimate of the damages.  So long as there is a reasonable basis in the evidence for a damages award, plaintiff should not be denied a right to be fairly compensated just because damages cannot be determined with absolute mathematical certainty.  The amount of damages must, however, be based on reasonable, non-speculative assumptions and estimates.  Plaintiff must prove the reasonableness of each of the assumptions upon which the damages calculation is based.  If you find that plaintiff has failed to carry its burden of providing a reasonable basis for determining damages, then your verdict must be for defendant.  If you find that plaintiff has provided a reasonable basis for determining damages, then you may award damages based on a just and reasonable estimate supported by the evidence.

Authority:      ABA Model Instructions, pp. F-15–F-16.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 52**

**DAMAGES**

If you find that defendant violated the antitrust laws and that plaintiff was injured by that violation, plaintiff is entitled to recover for such injury that was the direct and proximate result of the unlawful acts of defendant.  Plaintiff is not entitled to recover for injury that resulted from other causes.

Plaintiff bears the burden of showing that its injuries were caused by defendant's alleged antitrust violation – as opposed to any other factors, such as those that I just described to you.  If you find that plaintiff's alleged injuries were caused by factors other than defendant's alleged antitrust violation, then you must return a verdict for defendant.  If you find that plaintiff's alleged injuries were caused in part by defendant's alleged antitrust violation and in part by other factors, then you may award damages only for that portion of plaintiff's alleged injuries that were caused by defendant's alleged antitrust violation.  Plaintiff bears the burden of proving damages with reasonable certainty, including apportioning damages between lawful and unlawful causes. If you find that there is no reasonable basis to apportion plaintiff's alleged injury between lawful and unlawful causes, or that apportionment can only be accomplished through speculation or guesswork, then you may not award any damages at all.  If you find that plaintiff has proven with reasonable certainty the amount of damage caused by defendant's alleged antitrust violation, then you must return a verdict for the plaintiff.


Authority:      ABA Model Instructions, pp. F-18–F-20.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 53**

**DAMAGES**

Plaintiff may not recover damages for any portion of its injuries that it could have avoided through the exercise of reasonable care and prudence.  Plaintiff is not entitled to increase any damages through inaction.  The law requires an injured party to take all reasonable steps it can to avoid further injury and thereby reduce its loss.  If plaintiff failed to take reasonable steps available to it, and the failure to take those steps results in greater harm to plaintiff than it would have suffered had it taken those steps, then plaintiff may not recover any damages for that part of the injury it could have avoided.

Defendant has the burden of proof on this issue.  Defendant must prove by a preponderance of the evidence that plaintiff acted unreasonably in failing to take specific steps to minimize or limit its losses, that the failure to take those specific steps resulted in its losses being greater than they would have been had it taken such steps, and the amount by which plaintiff's loss would have been reduced had plaintiff taken those steps.

In determining whether plaintiff failed to take reasonable measures to limit its damages, you must remember that the law does not require plaintiff to have taken every conceivable step that might have reduced its damages.  The evidence must show that plaintiff failed to take commercially reasonable measures that were open to it.  Commercially reasonable measures mean those measures that a prudent businessperson in the plaintiff's position would likely have adopted, given the circumstances as they appeared at that time.  Plaintiff should be given a wide latitude in deciding how to handle the situation, so long as what plaintiff did was not unreasonable in light of the existing circumstances.

Authority:     ABA Model Instructions, pp. F-47–F-48.

**INSTRUCTION NO. 54**

**PUNITIVE DAMAGES—RECOVERY OF AND MEASURE—**

**TRIAL NOT BIFURCATED**

If you find that plaintiff suffered actual injury, harm, or damage caused by fraud, you should then consider whether you should award punitive damages against defendant, for the sake of example and by way of punishment. You should in your discretion award punitive damages, if, but only if, you find by clear and convincing evidence that the defendant was guilty of oppression, fraud, or malice in the conduct on which you base your finding of liability.

"Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard for the rights or safety of others. A party acts with conscious disregard of the rights or safety of others when it is aware of the probable dangerous consequences of its conduct and willfully and deliberately fails to avoid those consequences.

"Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

"Despicable conduct" is conduct which is so vile, base, contemptible, miserable, wretched, or loathsome that it would be looked down upon and despised by ordinary decent people.

"Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

The law provides no fixed standards as to the amount of such punitive damages, but leaves the amount to the jury's sound discretion, exercised without passion of prejudice.

In arriving at any award of punitive damages, consider the following factors:

1.  The reprehensibility of the conduct of the defendant;

2.  The amount of punitive damages which will have a deterrent effect on the defendant in the light of defendant's financial condition;

3.  That the punitive damages must bear a reasonable relation to the injury, harm, or

1        damage actually suffered by the plaintiff.

2            The phrase "injury, harm, or damage" includes not only that actually caused by the

3    defendant's conduct but also potential injury, harm or damage caused by the defendant's

4    wrongful conduct.

5            If you find that defendant had a practice of engaging in, and profiting from wrongful

6    conduct occurring in California similar to that which injured the plaintiff, that evidence may be

7    considered in deciding the issues of reprehensibility, whether punitive damages should be

8    assessed, and if so, the amount of punitive damages to be awarded.  Do not include in your award

9    of damages any sum that represents damages for injuries to any person other than the plaintiffs.

10            If you find that plaintiff is entitled to an award of punitive damages, you must state the

11    amount of punitive damage separately in your verdict.

12

13    Authority:      BAJI No. 14.71 (2007 revision)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTION NO. 55**

2

**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

3

   "Clear and convincing" evidence means evidence of such convincing force that it

4

demonstrates, in contrast to the opposing evidence, a high probability of the truth of the facts for

5

which it is offered as proof.  Such evidence requires a higher standard of proof than proof by a

6

preponderance of the evidence.

7

   You should consider all of the evidence bearing upon every issue regardless of who

8

produced it.

9

Authority:      BAJI No. 2.62

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 56**

**DUTY TO DELIBERATE**

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. You verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

RAMBUS'S PROPOSED JURY INSTRUCTIONS
(POST-EVIDENCE), CASE NOS. CV 00-20905 RMW,
05-00334 RMW, 06-00244 RMW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 57**

**USE OF NOTES**

Some of you have taken notes during the trial.  Whether or not you took notes, you should rely on your own memory of what was said.  Notes are only to assist your memory.  You should not be overly influenced by the notes.

-65-

# TABLE OF CONTENTS

**Page**

INSTRUCTION NO. 1
 DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW ......................................... 4
INSTRUCTION NO. 2
 WHAT IS EVIDENCE ...................................................................... 5
INSTRUCTION NO. 9
 MONOPOLIZATION - GENERAL.................................................... 6
INSTRUCTION NO. 10
 MONOPOLIZATION – GENERAL ................................................ 7
INSTRUCTION NO. 11
 MONOPOLIZATION – GENERAL ................................................ 8
INSTRUCTION NO. 12
 MONOPOLIZATION - GENERAL.................................................... 9
INSTRUCTION NO. 13
 MONOPOLIZATION - GENERAL.................................................. 11
INSTRUCTION NO. 14
 MONOPOLIZATION - GENERAL.................................................. 12
INSTRUCTION NO. 15
 MONOPOLIZATION – GENERAL ............................................... 13
INSTRUCTION NO. 16
 MONOPOLIZATION - GENERAL.................................................. 15
INSTRUCTION NO. 17
 MONOPOLIZATION – REFUSAL TO COOPERATE ................................... 18
INSTRUCTION NO. 18
 MONOPOLIZATION - REFUSAL TO COOPERATE - LEGITIMATE
  BUSINESS PURPOSE DEFINED ....................................... 20
INSTRUCTION NO. 19
 PATENTS - GENERAL ............................................................. 21
INSTRUCTION NO. 20
 WHEN PATENT RIGHTS ARE CREATED................................................ 23
INSTRUCTION NO. 21
 PATENTS - GENERAL ............................................................. 24

1

**TABLE OF CONTENTS**
(continued)

2

Page

3 INSTRUCTION NO. 22

4      PATENTS ................................................................................................ 25

INSTRUCTION NO. 23

5      ASSUMPTIONS REGARDING PATENTS ................................................ 26

6 INSTRUCTION NO. 24

7      PRIOR DETERMINATIONS REGARDING JEDEC ..................................... 29

8 INSTRUCTION NO. 25

9      JEDEC'S RULES ................................................................................... 30

INSTRUCTION NO. 26

10      JEDEC MEMBERSHIP............................................................................ 31

11 INSTRUCTION NO. 27

12      DISCLOSURE AT JEDEC........................................................................ 32

13 INSTRUCTION NO. 28

14      DISCLOSURE AT JEDEC........................................................................ 33

INSTRUCTION NO. 29

15      AMENDMENTS TO COVER A COMPETITOR'S PRODUCTS.................................. 34

16 INSTRUCTION NO. 30

17      PATENT LICENSING ............................................................................. 35

18 INSTRUCTION NO. 31

19      LITIGATION CONDUCT PROTECTED ..................................................... 36

INSTRUCTION NO. 32

20      ATTEMPT TO MONOPOLIZE .................................................................. 37

21 INSTRUCTION NO. 33

22      ANTICOMPETITIVE CONDUCT .............................................................. 38

23 INSTRUCTION NO. 34

24      SPECIFIC INTENT ................................................................................ 39

INSTRUCTION NO. 35

25      DANGEROUS PROBABILITY OF SUCCESS ............................................. 41

26 INSTRUCTION NO. 36

27      FRAUD AND DECEIT – INTRODUCTORY INSTRUCTION .................................... 42

28

**TABLE OF CONTENTS**
**(continued)**

Page

INSTRUCTION NO. 37

    FRAUD AND DECEIT – INTENTIONAL MISREPRESENTATION .......................... 43

INSTRUCTION NO. 38

    FRAUD AND DECEIT – CONCEALMENT ................................................................ 44

INSTRUCTION NO. 39

    FRAUD AND DECEIT – NEGLIGENT MISREPRESENTATION.............................. 45

INSTRUCTION NO. 40

    FRAUD AND DECEIT – EXPRESSION OF OPINION ............................................... 46

INSTRUCTION NO. 41

    FRAUD AND DECEIT – NONDISCLOSURE OF KNOWN FACTS .......................... 47

INSTRUCTION NO. 42

    FRAUD AND DECEIT – ACTIVE CONCEALMENT OF KNOWN FACTS.............. 48

INSTRUCTION NO. 43

    FRAUD AND DECEIT – PERSONS IN/NOT IN PRIVITY WITH DEFENDANT...... 49

INSTRUCTION NO. 44

    ACTUAL RELIANCE ..................................................................................................... 50

INSTRUCTION NO. 45

    FRAUD AND DECEIT – RELIANCE .......................................................................... 51

INSTRUCTION NO. 46

    FRAUD AND DECEIT – RIGHT TO RELY ................................................................ 52

INSTRUCTION NO. 47

    DAMAGES ...................................................................................................................... 53

INSTRUCTION NO. 48

    CAUSATION AND INJURY ......................................................................................... 54

INSTRUCTION NO. 49

    CAUSATION AND INJURY ......................................................................................... 56

INSTRUCTION NO. 50

    DAMAGES ...................................................................................................................... 57

INSTRUCTION NO. 51

    DAMAGES ...................................................................................................................... 58

1

**TABLE OF CONTENTS**
(continued)

2
**Page**

3    INSTRUCTION NO. 52

4        DAMAGES ................................................................................................................ 59

5    INSTRUCTION NO. 53

        DAMAGES ................................................................................................................ 60

6    INSTRUCTION NO. 54

7        PUNITIVE DAMAGES—RECOVERY OF AND MEASURE— TRIAL NOT

8            BIFURCATED ................................................................................................ 61

    INSTRUCTION NO. 55

9        BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE ............................ 63

10   INSTRUCTION NO. 56

11       DUTY TO DELIBERATE ................................................................................ 64

12   INSTRUCTION NO. 57

13       USE OF NOTES ........................................................................................ 65

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28