Gregory P. Stone (State Bar No. 078329)
Steven M. Perry (State Bar No. 106154)
Sean Eskovitz (State Bar No. 241877)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
Telephone:  (213) 683-9100;
Facsimile:  (213) 687-3702
Email:  *gregory.stone@mto.com;*
*steven.perry@mto.com; sean.eskovitz@mto.com*

Peter A. Detre (State Bar No. 182619)
Carolyn Hoecker Luedtke (State Bar No. 207976)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, California  94105
Telephone:  (415) 512-4000;
Facsimile:  (415) 512-4077
Email:  *peter.detre@mto.com;*
*carolyn.luedtke@mto.com*

Rollin A. Ransom (State Bar No. 196126)
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013-1010
Telephone:  (213) 896-6000;
Facsimile:  (213) 896-6600
Email:  *rransom@sidley.com*

Pierre J. Hubert (Pro Hac Vice)
Craig N. Tolliver (Pro Hac Vice)
McKOOL SMITH PC
300 West 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700;
Facsimile: (512) 692-8744
E-mail: *phubert@mckoolsmith.com;*
*ctolliver@mckoolsmith.com*

Attorneys for Plaintiff and Counterclaim-Defendant
RAMBUS INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RAMBUS INC.,<br><br>Defendant. | CASE NO.:  CV 00-20905 RMW<br><br>**RAMBUS INC.'S OBJECTIONS TO THE MANUFACTURERS' PROPOSED PRELIMINARY JURY INSTRUCTIONS**<br><br>Pretrial Date:  December 13-14, 2007<br>Time:  2:00 p.m.<br>Trial Date:  January 22, 2008<br>Time:  1:30 p.m.<br>Location:  Courtroom 6<br>Judge:  Hon. Ronald M. Whyte |
| RAMBUS INC.,<br><br>Plaintiff,<br><br>v.<br><br>HYNIX SEMICONDUCTOR INC., et al.,<br><br>Defendants. | CASE NO.:  C 05-00334 RMW |

| | |
|---|---|
| RAMBUS INC.,<br><br>          Plaintiff,<br><br>     vs.<br><br>MICRON TECHNOLOGY INC. and<br>MICRON SEMICONDUCTOR<br>PRODUCTS, INC.,<br><br>          Defendants. | CASE NO.:  C-06-00244 RMW |

Rambus Inc. ("Rambus") submits the following objections to the Manufacturers' proposed preliminary jury instructions. By submitting these objections, Rambus does not waive its argument that the Manufacturers have no right to a jury on any of their claims or Rambus's objection to the use of a jury. Rambus's objections, and (where applicable) its request that the Court issue alternative instructions proposed by Rambus, are without waiver of Rambus's previously asserted objections to the validity of the Manufacturers' claims and/or defenses. Rambus reserves the right to amend or supplement its objections to the Manufacturers' proposed instructions prior to the close of trial.

DATED:   December 7, 2007

MUNGER, TOLLES & OLSON LLP

SIDLEY AUSTIN LLP

McKOOL SMITH PC

By:  _____*/s/ Steven M. Perry*_____
                Steven M. Perry

Attorneys for Plaintiff and Counterclaim-Defendant RAMBUS INC.

**MANUFACTURERS' PROPOSED PRELIMINARY JURY INSTRUCTION NO. 1**

**Summary of the Case**

I will now give a summary of each party's contentions and defenses in this case. I will then tell you what each party must prove to win on each of its contentions and defenses.

First, Hynix, Micron, and Nanya have each asserted claims against Rambus for Monopolization and Attempted Monopolization under Section 2 of the Sherman Act based on their contention that Rambus engaged in a course of anticompetitive and exclusionary conduct with the specific intent of monopolizing certain markets related to DRAM interface technology. Specifically, Hynix, Micron, and Nanya claim that Rambus engaged in a deceptive course of conduct inside and outside of JEDEC known as a "patent hold up" by using its membership in JEDEC, a standard-setting organization that develops industry standards for DRAM interface technologies, to find out what technologies were being incorporated into the industry standards so that it could patent those technologies and then file patent infringement lawsuits against the manufacturers producing products in compliance with the standards after JEDEC had adopted the standards, the industry was in full volume production and using products compliant with the standards, and the industry was therefore "locked in" to the JEDEC standards.

Rambus denies that it engaged in a course of anticompetitive or exclusionary conduct and contends that the DRAM manufacturers are not "locked in" to the JEDEC industry standards. Rambus also asserts a defense to the Monopolization claims based on its contention that it had a legitimate, pro-competitive justification for its conduct.

In order to win on their Monopolization claims, Hynix, Micron, and Nanya must show by a preponderance of the evidence: (1) that at least one relevant antitrust market exists; (2) that Rambus acquired monopoly power in at least one relevant antitrust market; (3) that Rambus willfully acquired, increased, or maintained its monopoly power in that antitrust market through a course of anticompetitive or exclusionary conduct; (4) that Rambus's conduct occurred in or affected interstate commerce; and (5) that Hynix, Micron, and Nanya were injured in their business or property because of Rambus's anticompetitive conduct.

Rambus has a valid defense to these Monopolization claims if it can show, by a preponderance of the evidence, that it had a legitimate, pro-competitive justification for its conduct that was made in good faith and is not an after-the-fact excuse.  Hynix, Micron, and Nanya may overcome this defense by showing by a preponderance of the evidence that the anticompetitive effect of Rambus's conduct outweighed the pro-competitive benefits of that conduct.

In order to win on their Attempted Monopolization claims, Hynix, Micron, and Nanya must prove by a preponderance of the evidence: (1) that Rambus engaged in anticompetitive or exclusionary conduct; (2) that Rambus had a specific intent to achieve monopoly power in a relevant antitrust market; (3) that there was a dangerous probability that Rambus would achieve its goal of acquiring monopoly power in the relevant market; (4) that Rambus's conduct occurred in or affected interstate commerce; and (5) that Hynix, Micron, and Nanya were injured in their business or property by Rambus's anticompetitive conduct.  To prevail on their Attempted Monopolization claims, Hynix, Micron, and Nanya need not prove that Rambus actually monopolized a relevant market, but must show that Rambus engaged in anticompetitive or exclusionary conduct, coupled with an intent to monopolize, and a dangerous probability that Rambus would succeed.

Hynix, Micron, and Nanya also have each asserted a claim of intentional fraud against Rambus premised on their contention that Rambus made certain false or misleading representations and/or concealed material facts in the course of its membership in JEDEC as well as in the course of its dealings with Hynix, Micron, and Nanya individually.  Specifically, Hynix, Micron, and Nanya contend that Rambus communicated false and/or misleading information, or failed to reveal information that it was under a duty to reveal, relating to the scope of its intellectual property, such as whether Rambus believed that it had patents relating to the JEDEC standards or was seeking to obtain patents relating to the JEDEC standards.  Hynix, Micron, and Nanya contend that Rambus's duty to disclose certain information arose due to Rambus's voluntary participation in JEDEC and the JEDEC rules requiring the disclosure of known patents or patent applications that might affect the decisions of JEDEC as to which standards to adopt.

Hynix also separately alleges that a duty to disclose information pertaining to the scope of Rambus's intellectual property arose during the course of negotiations relating to a RDRAM licensing agreement between Rambus and Hynix. Rambus denies that it engaged in any intentional deceptive conduct.

To win on a claim of intentional fraud based on false and/or misleading representations, Hynix, Micron, and Nanya must prove by a preponderance of the evidence: (1) that Rambus represented that an important fact was true; (2) that Rambus's representation was false; (3) that Rambus knew that the representation was false when it made it, or that Rambus made the representation recklessly and without regard for its truth; (4) that Rambus intended for JEDEC and/or Hynix, Micron, or Nanya to rely on the representation; (5) that JEDEC and/or Hynix, Micron, or Nanya reasonably relied on Rambus's representation; (6) that Hynix, Micron, or Nanya were harmed; and (7) that Hynix, Micron, or Nanya's reliance on Rambus's representation was a substantial factor in causing the harm.

To win on a claim of intentional fraud based on concealment, Hynix, Micron, and Nanya must prove by a preponderance of the evidence that: (1) that Rambus uttered a half-truth by disclosing some facts to JEDEC, Hynix, Micron, or Nanya but failing to disclose other important facts, making the disclosure deceptive; or that Rambus intentionally failed to disclose an important fact that was known only to Rambus and that JEDEC, Hynix, Micron, or Nanya could not have discovered; or that Rambus actively concealed an important fact from JEDEC, Hynix, Micron, or Nanya or prevented them from discovering the fact; (3) that JEDEC and/or Hynix, Micron, or Nanya did not know of the concealed fact; (4) that Rambus intended to deceive JEDEC and/or Hynix, Micron, or Nanya by concealing the fact; (5) that JEDEC and/or Hynix, Micron, or Nanya reasonably relied on Rambus' deception; (6) that Hynix, Micron, and Nanya were harmed; and (7) that Rambus's concealment was a substantial factor in causing Hynix, Micron, and Nanya's harm. Hynix, Micron, and Nanya may also win on this claim even if Rambus can show that it was under no duty to speak, if Hynix, Micron, and Nanya can show that Rambus did speak, but did not speak honestly, or made misleading statements, or suppressed facts which would have materially qualified the facts stated.

Additionally, Micron has separately asserted a claim against Rambus for negligent misrepresentation based on its contention that Rambus misrepresented a material fact to JEDEC in a negligent manner. Rambus denies that it made any negligent misrepresentations to JEDEC. To win on this claim, Micron must prove by a preponderance of the evidence: (1) that Rambus represented to JEDEC that an important fact was true; (2) that Rambus's representation was not true; (3) that Rambus had no reasonable grounds for believing the representation was true when it made it; (4) that Rambus intended that JEDEC and/or Micron rely on this representation; (5) that JEDEC and/or Micron reasonably relied on Rambus's representation; (6) that Micron was harmed; and (7) that Micron's reliance on Rambus's representation was a substantial factor in causing it harm.

Micron has also asserted a separate claim against Rambus for breach of contract based on its contention that Rambus breached its contract with JEDEC by failing to disclose to JEDEC the patents and patent applications it believed it had or intended to file covering the standards being adopted by JEDEC and/or by failing to disclose that it intended to assert those patents against DRAM manufacturers producing products in compliance with the JEDEC standard. Rambus denies that it had any contractual obligation to JEDEC to disclose patents and patent applications relating to the standards being adopted by JEDEC.

In order to prevail on its breach of contract claim, Micron must prove by a preponderance of the evidence: (1) that Rambus and JEDEC entered into a contract that required its members to disclose patents and patent applications involved in JEDEC work; (2) that JEDEC did all, or substantially all, of the significant things that the contract required it to do; (3) that Rambus breached the contract by failing to disclose patents or patents applications owned by it that related to the work of JEDEC and/or by failing to disclose that it intended to assert those patents against DRAM manufacturers producing products in compliance with the JEDEC standards; and (4) that Micron was harmed by Rambus's breach of the contract.

In a separate part of this case, Rambus has asserted patent infringement claims against Hynix, Samsung, and Nanya based on its contention that Hynix, Micron, and Nanya make, use, sell, import and/or offer for sale certain DRAM memory products that infringe patents owned by

1   Rambus.  For ease of reference, I will sometimes refer to these patents collectively as the
2   "Patents-in-Suit" and the DRAM products accused of infringement as the "Accused Products."
3   Hynix, Micron, Nanya, and Samsung have denied that the Accused Products infringe the
4   Patents-in-Suit and claim that the Patents-in-Suit are invalid and unenforceable.  I have
5   determined that the issues of validity, enforceability, and infringement will be decided in separate
6   proceedings.  For the purposes of this trial, you are to assume that the Patents-in-Suit are valid
7   and enforceable and that the Accused Products infringe the Patents-in-Suit.
8   As part of this trial, however, I will ask you to provide me with advisory findings on
9   certain defenses that Hynix, Micron, and Nanya have asserted that relate to Rambus's patent
10  infringement claims.  These are the defenses of equitable estoppel, waiver, and implied license.
11  Hynix, Micron, and Nanya have all asserted a defense of equitable estoppel.  A defense of
12  equitable estoppel may be used to bar or prevent someone from taking a position that is
13  inconsistent with an earlier position where doing so would be prejudicial and unfair to the other
14  parties.  In this case, Hynix, Micron, and Nanya allege that it would be unfair and prejudicial to
15  them to allow Rambus to proceed with its patent infringement lawsuits after misleading JEDEC,
16  and/or Hynix, Micron, and Nanya individually, into believing that it did not intend to assert any
17  patents that it believed covered the JEDEC industry standard.  To prevail on this equitable
18  estoppel defense, Hynix, Micron and Nanya must establish by a preponderance of the evidence:
19  (1) that Rambus engaged in misleading conduct; (2) that Hynix, Micron, and Nanya relied on
20  Rambus's misleading conduct; and (3) that Hynix, Micron, and Nanya will be materially
21  prejudiced if Rambus is allowed to proceed with its patent claims.
22  Hynix, Micron, and Nanya have also asserted a waiver defense based on their contention
23  that Rambus waived its right to enforce its patents against them.  To prevail on this defense,
24  Hynix, Micron, and Nanya must show by clear and convincing evidence either that Rambus, with
25  full knowledge of the materials facts, intentionally relinquished its rights to enforce its patents, or
26  that its conduct was so inconsistent with an intent to enforce its rights that it induced a reasonable
27  belief that such right had been relinquished.
28

1 | Finally, Micron has asserted a defense of implied license. In order to prove the defense of implied license, Micron must establish by a preponderance of the evidence: (1) that Rambus's overall course of conduct gave rise to a reasonable inference that Rambus assented to the activities of Micron that Rambus has accused of patent infringement; and (2) that Rambus provided its assent in exchange for valuable consideration.

**RAMBUS'S OBJECTIONS TO THE MANUFACTURERS' PROPOSED PRELIMINARY JURY INSTRUCTION NO. 1**

The proposed instruction is argumentative, erroneous and confusing. The Court's Standing Order directs the parties to give "a neutral and concise summary" of their claims. The proposed instruction instead is written like the Manufacturers' opening argument to the jury or the introduction to a trial brief. It uses incendiary language (*e.g.*, "patent hold up") and is a completely one-sided description of the facts.

The proposed instruction also misstates the legal elements of the various claims and defenses. The Manufacturers' misstatement of elements are repeated in their substantive instructions on the various claims and defenses, and Rambus incorporates herein its objections to the Manufacturers' description of those elements in the subsequent instructions.

Rambus requests that the Court issue Rambus's proposed preliminary jury instructions 5 and 6, which summarize neutrally and concisely the parties' positions.

**MANUFACTURERS' PROPOSED PRELIMINARY JURY INSTRUCTION NO. 2**

**Patents – What A Patent Is and How One Is Obtained**

As I have just mentioned, Hynix, Micron, and Nanya contend in this case that Rambus has used its patents to violate the antitrust laws. To evaluate Hynix, Micron, and Nanya's contentions, some general information about patents is necessary, including an explanation of what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called the "PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right for up to 20 years from the date the patent application was filed or for 17 years from the date the patent issued to prevent others from making, using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent, one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a specification, which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are called the patent claims. When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries. During the application process, the patent applicant may also amend its claims prior to issuance of the patent. After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as prior art. The examiner also will review prior art if it is submitted to the PTO by the applicant. In general, prior art includes things that existed before the claimed invention, that were publicly

known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art. A patent lists the prior art that the examiner considered; this list is called the cited references.

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be allowed. This writing from the patent examiner is called an office action. If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the prosecution history. All of this material becomes available to the public after the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information necessary to fully evaluate the patent application. A person accused of infringement has the right to argue in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

**Authorities:** Adapted from Northern District of California Model Patent Rules (2007), Model Rule A-1.

**RAMBUS'S OBJECTIONS TO THE MANUFACTURERS' PROPOSED PRELIMINARY JURY INSTRUCTION NO. 2**

This single instruction, by itself, is insufficient to provide the jury a proper understanding of the patent system at the outset of the case. The Manufacturers' case is predicated upon urging the jury to ignore the procedures and rights granted under the patent system. It is imperative that the jury have an adequate overview of the patent system prior to the presentation of the evidence. To that end, Rambus requests that the Court show the jury the video on the patent system produced by the Federal Judicial Center and that it further instruct the jury that patent rights are not known until the patent issues. Rambus therefore requests that the Court issue Rambus's proposed preliminary jury instructions 2 and 3.