IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR U.K. LTD., and HYNIX SEMICONDUCTOR DEUTSCHLAND GmbH,<br><br>Plaintiffs,<br><br>v.<br><br>RAMBUS INC.,<br><br>Defendant. | No. CV-00-20905 RMW<br><br>ORDER DENYING THE MANUFACTURERS' MOTION *IN LIMINE* TO ADMIT THE FTC'S OPINION INTO EVIDENCE; AND GRANTING THE MANUFACTURERS' MOTION *IN LIMINE* NO. 4 TO EXCLUDE REFERENCE TO THE *INFINEON* DECISION, THE INITIAL DECISION OF THE FTC ALJ, AND THE APPEAL OF THE FTC FINAL DECISION<br><br>**[Re Docket Nos. 2893, 2982]** |

| | |
|---|---|
| RAMBUS INC., | No. C-05-00334 RMW |
| Plaintiff, | **[Re Docket Nos. 901, 1013]** |
| v. | |
| HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR MANUFACTURING AMERICA INC., | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P., | |
| NANYA TECHNOLOGY CORPORATION, NANYA TECHNOLOGY CORPORATION U.S.A., | |
| Defendants. | |
| RAMBUS INC., | No. C-06-00244 RMW |
| Plaintiff, | **[Re Docket Nos. 507, 637]** |
| v. | |
| MICRON TECHNOLOGY, INC., and MICRON SEMICONDUCTOR PRODUCTS, INC. | |
| Defendants. | |

This order addresses the Motion *In Limine* of Hynix, Micron, and Nanya ("the Manufacturers") to admit into evidence the FTC's liability opinion from *In the Matter of Rambus, Inc.*, Docket No. 9302 FTC (2006) ("*FTC Rambus*"), now on appeal, as well as the Manufacturers' Motion *In Limine* No. 4 to exclude reference to the Federal Circuit's opinion in *Rambus Inc. v. Infineon Technologies AG*, 318 F.3d 1081 (Fed. Cir. 2003), and the proceedings in *FTC Rambus*, other than the Commission's liability opinion. The court has read the briefing of the parties, read the

ORDER DENYING THE MANUFACTURERS' MOTION IN LIMINE TO ADMIT THE FTC'S OPINION INTO EVIDENCE; GRANTING THE MANUFACTURERS' MOTION IN LIMINE NO. 4 TO EXCLUDE REFERENCE TO THE INFINEON DECISION, THE INITIAL DECISION OF THE FTC ALJ, AND THE APPEAL OF THE FTC FINAL DECISION
C-00-20905; C-05-00334; C-06-00244 RMW
TSF                              2

various opinions at issue and heard the arguments of counsel. The motion to admit the Commission's opinion in *Rambus FTC* into evidence is denied and the motion to exclude reference to the ALJ's opinion in *Rambus FTC*, the pending appeal of the Commission's opinion in *Rambus FTC* and the Federal Circuit's opinion in *Infineon* is granted. These orders are subject to review as the trial develops as such evidence may become admissible if a party needs to admit the evidence to rebut or put in context evidence offered by the other side. If a party believes that such a circumstance has developed, that party must first raise the issue outside the presence of the jury.

## I. THE FTC'S *IN RE RAMBUS* LIABILITY OPINION

On August 2, 2006, a unanimous FTC entered its decision on liability in *In the Matter of Rambus, Inc.*, described by the Third Circuit as a "landmark, 120-page opinion." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 311 (3d Cir. 2007). The Administrative Law Judge ("ALJ") had previously decided in favor of Rambus, and the FTC appealed "challeng[ing] virtually all of the ALJ's rulings and ask[ing] that the Initial Decision be set aside in its entirety." *In re Rambus, Inc.*, Docket No. 9302 at 16.[1] The FTC's opinion granted this relief, reversed the ALJ's decision and found that Rambus had engaged in exclusionary conduct that significantly contributed to Rambus's acquisition of monopoly power. The opinion has now been stayed pending appeal to the D.C. Circuit. The Manufacturers seek to admit this opinion into evidence.

Federal Rule of Evidence ("FRE") 803 permits certain types of hearsay to be introduced as evidence. The Manufacturers invoke Rule 803(8)(C) to permit them to introduce the FTC opinion. The rule allows into evidence: "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of

---

[1] The slip opinion is available at: http://www.ftc.gov/os/adjpro/d9302/index.shtm. It is also available without pagination on Westlaw. 2006 WL 2330117 (F.T.C.). This order cites to the page numbers in the slip opinion.

trustworthiness."

### A. Factual Investigation

The first hurdle to admitting a public record into evidence is whether it "results from an investigation." The Fourth Circuit has held that "[a] judge in a civil trial is not an investigator, rather a judge." *Nipper v. Snapes*, 7 F.3d 415, 417 (1993). Accordingly, another judge's findings of fact were not made pursuant to an investigation, and it was reversible error for the district court to admit them into evidence. *Id.* at 417-18. The Fourth Circuit buttressed its argument by invoking the values underlying Rule 403, noting that "judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." *Id.* (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1185 (E.D. Pa. 1980) (opinion of Judge Becker excluding another judge's findings of fact)). On the other hand, various circuits have distinguished judicial findings of fact from agency findings of fact. *See Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238 (4th Cir. 1999) (admitting NTSB findings of fact and citing case law from the Second, Third, and Sixth Circuits).

In *Zeus*, the ALJ for the National Transportation Safety Board held twelve days of hearings, heard testimony, examined engineering reports, and generally "conducted an extensive factual inquiry into the airworthiness of Zeus's airplane." 190 F.3d at 241. "After the hearing the ALJ issued his decision that included detailed factual findings and determined that the airplane was not airworthy." *Id.* The court agrees with the Fourth Circuit; this ALJ conducted a factual investigation that resulted in an evaluative report, i.e., exactly the type of public record properly admitted under Rule 803(8)(C). While the holding in *Zeus* and the cases it cites all seem correct, the court finds that the blanket rule in *Zeus* distinguishing judicial findings from agency findings is too simple to capture the nuance intended by Rule 803(8)(C) and declines to follow it.

The advisory committee note to Rule 803(8) observes that permitting "evaluative reports" to come into evidence is the most "controversial" aspect of Rule 803(8). Advisory Committee Note, 56

F.R.D. 183, 312 (1973). The note contains examples of "evaluative reports" that have been admitted and examples that have not been, *see id.,* though the examples are not particularly enlightening with respect to the question here. The note also lists four factors that may be useful in helping courts apply 803(8)(C), namely, "(1) the timeliness of the investigation, (2) the special skill or experience of the official, (3) whether a hearing was held and the level at which conducted, (4) possible motivation problems." *Id.* at 313 (citations omitted). Combined, the cases and rationale behind FRE 803(8)(C) suggest a sliding scale for considering admissibility. The more the fact finding is based upon percipient observations or from the gathering of investigative facts pursuant to a legally-imposed investigatory duty, the more likely the report is admissible. At the other end of the scale is the report that is more in the nature of a judge's interpretation of, and opinions drawn from, facts observed or gathered by others. In this category of reports, the agency making the report deals with a factual record that is presented to it and cannot draw conclusions regarding credibility.

The Manufacturers argue that the FTC's 120 page liability opinion is more akin to an "evaluative report" than to judicial findings of fact. The court cannot agree. *But see Rambus, Inc. v. Infineon Technologies AG*, 222 F.R.D. 101, 106-07 (E.D. Va. 2004) (holding that an FTC ALJ decision is an "investigation" for the purposes of 803(8)(C), but excluding the evidence under Rule 403).[2] The opinion the Manufacturers seek to admit arises from the five commissioners of the Federal Trade Commission sitting in an appellate capacity, reviewing the findings of fact and conclusions of law of an administrative law judge. An agency sitting in such a capacity is not conducting a "factual investigation" as that term seems to require in FRE 803(8)(C). The Manufacturers correctly pointed out at oral argument that the Commission did take additional evidence[3] and was required to conduct a *de novo* review of the evidence. Nevertheless, the

---

[2] Rambus argued that the ALJ's opinion should come into evidence under FRE 803(8)(C) at the *Infineon* trial. Now that the Commission has ruled against Rambus, it now objects to the admission of the Commission's opinion under FRE 803(8)(C).

[3] The additional evidence taken consisted of Rambus's newly found back-up tapes. *FTC Rambus* at 21 fn 98.

additional evidence taken does not appear to have been particularly significant and the Commission essentially based its review upon the record before the ALJ. Thus, the commissioners were sitting as an agency acting in a judicial capacity issuing a written "report" more akin to a circuit court opinion than an admissible evaluative report. The emphasis on "timeliness" in the advisory committee note suggests a government agent checking out a scene, not an appellate body considering a record four years after the complaint was filed.

Contrary to the Manufacturers' argument, this case is not like *Zeus*. While the FTC did consider a voluminous record, the amount of material considered by the agency does not mean that a record results from an investigation. In addition, as noted in footnote 3 of *FTC Rambus*, Rambus did not contest in the FTC proceeding the definition of the four relevant product markets delineated by the Complaint Counsel or that the geographic market was worldwide. *FTC Rambus*, at 5, fn 3 & 72. The proper scope of 803(8)(C) depends of the meaning of the word "investigation." In *Zeus*, the NTSB investigated whether an airplane was airworthy. In this case, the FTC heard an appellate argument between the FTC's complaint counsel and Rambus and then issued its opinion interpreting the antitrust laws and applying them to the record developed before the ALJ. This seems more like judging than "investigating." In making this distinction, the court emphasizes the Fourth Circuit's reasoning in *Nipper*. There, the court highlighted the problem of undue prejudice laden in admitting "judicial" findings because juries would give them undue weight. That rationale is equally, if not more of, a concern here.

**B. "Trustworthiness"**

A second hurdle to admitting a public record under 803(8)(C) is whether "the sources of information or other circumstances indicate lack of trustworthiness." Rambus points to two factors indicating a lack of trustworthiness: (1) that the FTC had a "motivation problem" because the case presented the opportunity to make policy, and (2) that the pending appeal, coupled with the fact that the FTC largely reversed the ALJ's findings and conclusions, suggest that the opinion is not reliable. The court finds it unnecessary to reach the first point, but notes that the FTC's decision to stay its

ORDER DENYING THE MANUFACTURERS' MOTION IN LIMINE TO ADMIT THE FTC'S OPINION INTO EVIDENCE; GRANTING THE MANUFACTURERS' MOTION IN LIMINE NO. 4 TO EXCLUDE REFERENCE TO THE INFINEON DECISION, THE INITIAL DECISION OF THE FTC ALJ, AND THE APPEAL OF THE FTC FINAL DECISION
C-00-20905; C-05-00334; C-06-00244 RMW
TSF

opinion pending appeal was based upon, and reflects the difficulty in applying applicable law to, a complex set of facts and drawing legal conclusions therefrom. *FTC Rambus,* Stay Order, Docket No. 9302 at 2-3. Another problem, as noted above, is that various issues in the FTC proceedings were conceded, and hence appear as "facts" in the FTC opinion, while being vigorously contested in this case. *E.g.*, *FTC Rambus*, at 72 ("Rambus accepts these market definitions."). The opinion is not "trustworthy" as to issues that were conceded in the FTC litigation but that are contested here.

### C. Double Hearsay

The FTC liability opinion contains hearsay within hearsay which, of course, requires its own exception to be admissible. FRE 805. In this case, the jury will hear directly from the witnesses and they can evaluate for themselves the significance of the witnesses' testimony and credibility. The Commission's stayed opinion does not offer otherwise unavailable information.

### D. Rule 403

The Manufacturers argue that the FTC's discussion is "probative of the validity of the Manufacturers' claims." For example, the Manufacturers suggest "it would be reasonable for a jury to consider the fact that the Commissioners agreed that four relevant technology markets exist and that Rambus's claims over the technologies at issue give Rambus market power in those markets." However, this is minimally probative of the element of market definition given that the issue was not contested before the FTC.

The court is also very concerned about the undue weight or even *de facto* collateral estoppel effect that a jury would accord to the FTC's liability opinion. The court is also concerned that the case involves the question of Rambus's to liability to each party (Hynix, Micron and Nanya) and the FTC opinion might mislead the jury into treating the liability questions as one group issue. Finally, the FTC's decision to stay its opinion pending appeal was based upon, and reflects the difficulty in applying applicable law to, a complex set of facts and drawing legal conclusions therefrom. *FTC Rambus*, Stay Order, Docket No. 9302 at 2-3. There is no guarantee that the Commission's opinion will survive Rambus's appeal and, thus, since the evidence considered by the FTC will be presented

in this case, the jury will have a full picture without knowledge of the FTC's opinion. The court concludes that the probative value of the commission's opinion is substantially outweighed by the danger of prejudice and confusion of the issues. FRE 403. *See also* Order Denying Manufacturers' Motion for *Prima Facie* Effect and Denying Manufacturers' Motion for Collateral Estoppel, Docket No. 654, 06-00244 RMW (N.D. Cal. Jan. 9, 2008).

The Manufacturers have recently proposed only offering certain factual findings from the Commission's opinion. The court sees no benefit to be gained from that as the jury will be presented essentially the same evidence that was presented to the ALJ and Commission. Therefore, admitting facts from the opinion would add nothing except knowledge that Rambus was the subject of FTC proceedings, a prejudicial fact.

## II.  OTHER ASPECTS OF THE FTC PROCEEDINGS

The Manufacturers move *in limine* to exclude any reference to the pending appeal of the FTC's opinion or to the ALJ's findings and conclusions that the FTC reversed. Rambus conceded in its opposition that it would not seek to introduce such evidence if the Manufacturers could not introduce evidence about the full commission's opinion. Accordingly, neither side may introduce evidence of any aspect of the FTC proceedings absent further order of the court. Any request to offer any aspect of the FTC proceedings must first be raised outside the presence of the jury.

## III.  THE *INFINEON* DECISION

The Manufacturers also move to exclude any reference to "the *Infineon* litigation in any way: the arguments, the decisions, or the opinions." Rambus argues that while it does not seek to offer the *Infineon* decision into evidence, "it is appropriate for Rambus's experts to consider and testify regarding the Federal Circuit's decision in support of their own opinions. Moreover, Rambus has the clear right to cross-examine Hynix's experts using the Federal Circuit opinion in light of the fact that those experts considered, *but then rejected*, the Federal's Circuit's views in the course of arriving at their own opinions."

Rule 703 governs the admissibility of the underlying basis of an expert's testimony. While

Rule 703 permits an expert to form an opinion on facts or data that are otherwise inadmissible, "facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." FRE 703. The Manufacturers argue that this rule prevents Rambus from introducing the *Infineon* decision by having its experts explain the basis for their opinions. The court agrees and, at this point, finds that the jury would not be assisted in their evaluation of an expert's opinions by knowing that he relied on the *Infineon* decision.

However, Rule 703 only prevents the proponent of the expert's opinion from disclosing the expert's otherwise-inadmissible basis for his opinion. By emphasizing the bar on the proponent, the rule implies that the opposing party may freely cross-examine an expert on the otherwise-inadmissible basis for his or her opinion. The advisory committee note further explains that "[n]othing in this Rule restricts the presentation of underlying expert facts or data when offered by an adverse party." FRE 703, adv. committee note (2000). Furthermore, Rule 705 provides that "[t]he expert may in any event be required to disclose the underlying facts or data on cross-examination." Such cross-examination, however, remains subject to the limits of Rule 403. *See* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 705.05 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2007). The court finds that in general the prejudicial effect of disclosing the contents of the *Infineon* decision far outweighs its minimal probative value. The Manufacturers were not parties in the *Infineon* litigation and the court's comments on the JEDEC related disclosure obligations are not binding on them. The court can instruct as to what duty, if any, the written policies and procedures of JEDEC create. Reference to the opinion and its comments on disclosure would carry substantial risk that the jury would treat certain statements in the *Infineon* decision as facts applicable to this case and not just in evaluating the credibility of the experts' testimony.

The Manufacturers' presentation may, however, allow Rambus to examine the

Manufacturers' experts on aspects of the *Infineon* decision. For example, if McAlexander testifies as to the scope of the term "bus" based upon the disclosure in Rambus's specification disclosed at JEDEC, he may be subject to cross-examination on whether he considered the *Infineon* decision (which held that one skilled in the art would not read the specification's example as limiting the invention). Nevertheless, Rambus must request outside the presence of the jury permission to cross-examine regarding any expert's consideration of the *Infineon* decision before doing so.

## IV. ORDER

For the foregoing reasons, the motion to admit the Commission's opinion in *Rambus FTC* into evidence is denied and the motion to exclude reference to the ALJ's opinion in *Rambus FTC*, the pending appeal of the Commission's opinion in *Rambus FTC* and the Federal Circuit's opinion in *Infineon* is granted. These orders are subject to review as the trial develops as such evidence may become admissible if a party needs to admit the evidence to rebut or put in context evidence offered by the other side. If a party believes that such a circumstance has developed, that party must first raise the issue outside the presence of the jury.

DATED: 1/28/2008

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

| | |
|---|---|
| Craig N. Tolliver | ctolliver@mckoolsmith.com |
| Pierre J. Hubert | phubert@mckoolsmith.com |
| Brian K. Erickson | berickson@dbllp.com, |
| David C. Vondle | dvondle@akingump.com |
| Gregory P. Stone | gregory.stone@mto.com |
| Carolyn Hoecker Luedtke | luedtkech@mto.com |
| Peter A. Detre | detrepa@mto.com |
| Burton Alexander Gross | burton.gross@mto.com, |
| Steven McCall Perry | steven.perry@mto.com |
| Jeannine Y. Sano | sanoj@howrey.com |

**Counsel for Defendant(s):**

| | |
|---|---|
| Matthew D. Powers | matthew.powers@weil.com |
| David J. Healey | david.healey@weil.com |
| Edward R. Reines | Edward.Reines@weil.com |
| John D Beynon | john.beynon@weil.com |
| Jared Bobrow | jared.bobrow@weil.com |
| Leeron Kalay | leeron.kalay@weil.com |
| Theodore G. Brown, III | tgbrown@townsend.com |
| Daniel J. Furniss | djfurniss@townsend.com |
| Jordan Trent Jones | jtjones@townsend.com |
| Kenneth L. Nissly | kennissly@thelenreid.com |
| Geoffrey H. Yost | gyost@thelenreid.com |
| Susan Gregory van Keulen | svankeulen@thelenreid.com |
| Patrick Lynch | plynch@omm.com |
| Jason Sheffield Angell | jangell@orrick.com |
| Vickie L. Feeman | vfeeman@orrick.com |
| Mark Shean | mshean@orrick.com |
| Kai Tseng | hlee@orrick.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 1/28/2008

TSF
**Chambers of Judge Whyte**

ORDER DENYING THE MANUFACTURERS' MOTION IN LIMINE TO ADMIT THE FTC'S OPINION INTO EVIDENCE; GRANTING THE MANUFACTURERS' MOTION IN LIMINE NO. 4 TO EXCLUDE REFERENCE TO THE INFINEON DECISION, THE INITIAL DECISION OF THE FTC ALJ, AND THE APPEAL OF THE FTC FINAL DECISION
C-00-20905; C-05-00334; C-06-00244 RMW
TSF         11